FILED

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In the Matter of the Extradition of           Case No. 3:19-mc-27-J-39JRK
ALEKSANDR ROTKO

**COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARD EXTRADITION (18 U.S.C. § 3184)**

      I, David B. Mesrobian, being duly sworn, state on information and belief that the following is true and correct:

1.     I am an Assistant United States Attorney for the Middle District of Florida. In this matter, I represent the United States in fulfilling its treaty obligation to Estonia.

2.     There is an extradition treaty in force between the United States and Estonia, the Treaty Between the United States and Estonia for Extradition of Fugitives from Justice, U.S.-Est., Nov. 8, 1923, 43 Stat 1849, *as amended by* the Extradition Treaty Between the United States of America and Estonia, U.S.-Est. February 8, 2006 S. Treaty Doc. No. 109-16 (2006) (collectively referenced hereafter as the "Treaty").

3.     Pursuant to the Treaty, the Government of Estonia has submitted a formal request through diplomatic channels for the extradition of ALEKSANDR ROTKO ("ROTKO").

4.     According to the information provided by the Government of Estonia, ROTKO was charged with using the movable property of another, in violation of §

201 (2) (4) of the Estonian Penal Code; and damage and destruction of government property in violation of § 203 of the same code.

5. These offenses were committed within the jurisdiction of Estonia. A warrant for ROTKO's arrest was issued on August 25, 2007, by the Harju County Court, in Tallinn, Estonia.

6. The warrant was issued on the basis of the following facts:

ROTKO served as the Supervisory Board Member of three companies (AS Verest, OÜ Agrin Partion, and AS BPV), as well as a board member of a fourth company, ELA Tolli AS. ROTKO was also the sole shareholder of the holding company that owned OÜ Agrin Partion. All four of these companies conducted business at Kuti 17 and Kuti 17a in the Seaplane Harbor district of Tallinn, Estonia. That property housed, *inter alia*, a seaplane hangar, a saw-mill building, an administrative building, a wharf with a pier covered in concrete slabs, and train tracks.

According to the government of Estonia, the four companies, along with another company, OÜ B & E, illegally possessed those buildings and property. Therefore, in 1997, Estonia filed an action with the Tallinn City Court against three of the companies, asking the Court to recognize Estonia's ownership of the buildings and property. In February 2005, Estonia submitted a supplemental claim seeking to evict the defendant companies from the buildings. Shortly thereafter, Estonia added the remaining two companies as defendants in the action.

On July 4, 2005, the Tallinn City Court ruled in favor of Estonia in all respects except that it dismissed the action against defendant AS BPV. On March 1, 2006, an appellate court affirmed the decision, except that it reversed the dismissal with respect to AS BPV, and thus ruled in favor of Estonia in all respects. On June 7, 2006, the Supreme Court of Estonia refused to grant leave for the defendants to appeal further. Accordingly, the companies were ordered to vacate Kuti 17 and Kuti 17a by July 31, 2006.

Prior to complying with that order, the companies, which operated under the direction of ROTKO, removed certain property located at the premises. Some of the property was destroyed in the process, and other property was sold. According to the bookkeeper for one of the companies, Olga Novoseltseva ("Novoseltseva"), ROTKO tried to sell anything he had installed that could be sold because of the order to vacate.

In June and July 2006, several witnesses saw workmen removing concrete slabs from the pier as well as railroad tracks and a boiler, and saw cranes being dismantled. The roof was removed from the boiler room in order to take out the boiler. Pursuant to contracts executed by ROTKO, the rails were sold to AS Kuusakoski, a company that purchases scrap metal, for 204,328.80 kroons (approximately $14,650 at the current exchange rate), and the concrete slabs were sold to another company, Paldiski Sadamate AS, for 2,528,727.20 kroons (approximately $181,310 at the current exchange rate). At AS BPV's direction,

Paldiski Sadamate AS transferred the latter amount, less VAT, to a bank account for a Danish company, Merimpex Co. Ltd., which was managed by ROTKO. ROTKO was also the sole director and shareholder of that company.

When Estonia took possession of the property at Kuti 17 and Kuti 17a on August 1, 2006, the government observed that railway tracks, berth cover plates, boilers, hatches to the openings of the seaplane hangar canopy, and gates had been removed. The government further observed that the administrative building had sustained damage due to the water, heat, and power—which had previously been supplied—having been cut off. In addition, locks had been destroyed. As a result of the above, Estonia incurred approximately 1,988,260 kroons (approximately $142,500 at the current exchange rate) in damages.

After Estonia had taken possession of Kuti 17 and Kuti 17a, ROTKO took steps to avoid prosecution by leaving the country at least as of the fall of 2006, after Novoseltseva had informed him of the pending criminal case against him. He was subsequently discovered to be living in the United States.

7. ROTKO may be found within the jurisdiction of this Court at 54 Sugar Sand Lane, St. John's, Florida 32259, according to both St. John's County Property Appraiser records and civil litigation recently filed in this District by ROTKO.

8. Virginia P. Prugh, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was

made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of Estonia, in accordance with Article 9 of the Treaty, so as to enable them to be received into evidence.

9. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Estonia and a copy of the Treaty, and certified documents submitted in support of the request (marked collectively as Government's Exhibit #1), are filed with this complaint and incorporated by reference herein.

10. ROTKO would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the ALEKSANDR ROTKO be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Estonia, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality

may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
DAVID B. MESROBIAN
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 19 day of November, 2019, at Jacksonville, Florida.

_____
JAMES R. KLINDT
United States Magistrate Judge