# GOVERNMENT'S EXHIBIT 1



DISTRICT OF COLUMBIA, ss:

## DECLARATION OF VIRGINIA P. PRUGH

I, Virginia P. Prugh, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of Alexsandr Rotko. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Estonia are found in the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Estonia, signed on February 8, 2006 (the "Extradition Treaty"). A copy of the Extradition Treaty is attached to this declaration.

3. In accordance with the provisions of the Extradition Treaty, the Embassy of Estonia has submitted Diplomatic Note 6-2/25, dated April 9, 2013, formally requesting the extradition of Alexsandr Rotko. The Ministry of Justice of Estonia submitted additional information relating to this request to the United States Department of Justice by letters dated June 4, 2014 and December 22, 2017. Copies of the diplomatic note and letters are attached to this declaration.

4. In accordance with Article 19 of the Extradition Treaty, the United States represents the interests of Estonia in proceedings in U.S. courts arising out of extradition requests made by Estonia, and Estonia provides similar representation in its courts for extradition requests made by the United States.

5. The offenses for which extradition is sought are covered by Article 2 of the Extradition Treaty.

19054168-3

# United States of America



## DEPARTMENT OF STATE

## *To all to whom these presents shall come, Greetings:*

C         That Virginia P. Prugh, whose name is subscribed to the document hereunto annexed, was
   t      f subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of
   U      States of America, and that full faith and credit are due to her acts as such.

*This certificate is not valid if it is removed or altered in any way whatsoever*



In testimony whereof, I, Michael R. Pompeo, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this ninth day of August, 2019.

Secretary of State

By

Assistant Authentication Officer,
Department of State

*Issued pu         to CHXIV, Sta*
*Sept. 15,        1 Stat. 68-69;*
*USC 265        SC 2651a; 5 U*
*301; 28 U       33 et. seq.; 8 U*
*1443(f); R       4 Federal Rules*
*Civil Proc*

-2-

6. In accordance with Article 9 of the Extradition Treaty, documents that bear the certificate or seal of the Ministry or Department of Justice, or the Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification, authentication, or other legalization. Therefore, such documents satisfy the authentication requirements without the need for certification by the U.S. Embassy in Tallinn. Estonia, in submitting documents in the instant case that bear the certificate or seal of the Ministry of Justice, has complied with the Extradition Treaty requirements with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July **25**ᵀᴴ, 2019.

_____
VIRGINIA P. PRUGH

Attachments:
    1.  Copies of Note and Letters
    2.  Copy of Extradition Treaty

*Embassy of the Republic of Estonia*
*Washington, D.C.*

No. 6-2/25

The Embassy of the Republic of Estonia presents its compliments to the Department of Justice of the United States of America and forwards the extradition request coming from the Ministry of Justice of the Republic of Estonia based on the extradition treaty between the Government of Estonia and the Government of the United States of America, signed on February 8, 2012. The Government of Estonia requests the extradition of Estonian citizen Mr Alexandr Rotko, born February 27, 1949 for the continuation of criminal proceedings in the criminal case No 06730000427.

The Embassy of the Republic of Estonia avails itself of this opportunity to renew to the Department of Justice of the Unites States of America the assurances of its highest considerations.

April 09, 2013
Washington, D.C.



U.S. Department of Justice
Criminal Division
Office of International Affairs
WASHINGTON, D.C.

EXT-ROTKO-000004





Départment of Justice
Criminal Division
Office of International Affairs
1301 New York Ave, NW 9th floor
Washington D.C. 20530
U.S.A.

04.06.2014

Your ref.
Our ref.  12-1/14-4837-2

Re: Extradition of Aleksandr Rotko

Ministry of Justice of Estonia hereby presents the original of the confirmation of Estonian Police and
Border Guard Board National Criminal Police.

Yours sincerely

Astrid Laurendt-Hanioja
Head of International Judicial Co-operation Unit

Enc: on 1 page.

95-100-22808

**Justits**ministeerium
MINISTRY OF JUSTICE

Tõnismägi 5A, 15191 Tallinn, ESTONIA
Reg. no. 70000898
phone +372 620 8100
fax +372 620 8109

e-mail: info@just.ee
www.just.ee
a/a 10220027669012
viitenumber 1200004180

EXT-ROTKO-000005

  

REPUBLIC OF ESTONIA
**MINISTRY OF JUSTICE**

Estonia's Presidency
of the Council of the
European Union

EU2017.EE

**FOR INTERNAL USE**
Notation made on: 22.12.2017.
Restriction on access valid until:
22.12.2022
Basis: AvTS § 35 lg 1 p 1 , AvTS § 35 lg 1 p 3
Holder of information: Ministry of Justice

Department of Justice                    22.12.2017          Our ref.    12-1/8926-2
Criminal Division
Office of International Affairs
1301 New York Ave, NW 9th floor
Washington D.C. 20530
U.S.A.

Re: Extradition of Aleksandr Rotko

Ministry of Justice of Estonia hereby presents additional information in the extradition case of Aleksandr Rotko.

Yours sincerely

Astrid Laurendt-Hanioja
Head of International Judicial Co-operation Unit

Enclosures.

Ministry of Justice/ Suur-Ameerika 1 / 10122 Tallinn / ESTONIA/ +372 620 8100 /fax +372 620 8109/
info@just.ee / www.just.ee
Reg.no 70000898

| 109TH CONGRESS 2d Session | SENATE | TREATY DOC. 109–16 |
| --- | --- | --- |

## EXTRADITION TREATY WITH ESTONIA

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMER-
ICA AND THE GOVERNMENT OF THE REPUBLIC OF ESTONIA,
SIGNED ON FEBRUARY 8, 2006, AT TALLINN



SEPTEMBER 29, 2006.—Treaty was read the first time, and together with
the accompanying papers, referred to the Committee on Foreign Rela-
tions and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

49–118          WASHINGTON : 2006

EXT-ROTKO-000007

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *September 29, 2006.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Extradition Treaty between the United States of America and the Government of the Republic of Estonia, signed on February 8, 2006, at Tallinn. I also transmit, for the information of the Senate, the report of the Department of State with respect to the treaty.

The new extradition treaty with Estonia would replace the outdated extradition treaty between the United States and Estonia, signed on November 8, 1923, at Tallinn, and the Supplementary Extradition Treaty, signed on October 10, 1934, at Washington. The treaty also fulfills the requirement for a bilateral instrument between the United States and each European Union (EU) Member State in order to implement the Extradition Agreement between the United States and the EU. Two other comprehensive new extradition treaties with EU Member States—Latvia and Malta—likewise also serve as the requisite bilateral instruments pursuant to the U.S.-EU Agreement, and therefore also are being submitted separately and individually.

The treaty follows generally the form and content of other extradition treaties recently concluded by the United States. It would replace an outmoded list of extraditable offenses with a modern "dual criminality" approach, which would enable extradition for such offenses as money laundering and other newer offenses not appearing on the list. The treaty also contains a modernized "political offense" clause. It further provides that extradition shall not be refused based on the nationality of the person sought; in the past, Estonia has declined to extradite its nationals to the United States. Finally, the new treaty incorporates a series of procedural improvements to streamline and speed the extradition process.

I recommend that the Senate give early and favorable consideration to the treaty.

GEORGE W. BUSH.

(III)

## LETTER OF SUBMITTAL

————

DEPARTMENT OF STATE,
*Washington, August 3, 2006.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Extradition Treaty between the United States and Estonia, signed on February 8, 2006. Upon its entry into force, the Treaty would replace the outdated Extradition Treaty between the United States and Estonia, signed on November 8, 1923, and the Supplementary Extradition Treaty, signed on October 10, 1934. It also fulfills the requirement for a bilateral instrument between the United States and each member state of the European Union implementing the Extradition Agreement between the United States and the European Union signed on June 25, 2003, which is being separately submitted. A detailed, article-by-article analysis is enclosed with this report. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification. The Treaty is self-executing and will not require implementing legislation.

Respectfully submitted.

CONDOLEEZZA RICE.

Enclosures: As stated.

### U.S.-ESTONIA EXTRADITION TREATY

OVERVIEW

The U.S.-Estonia Extradition Treaty replaces an outdated 1923 Treaty and 1934 Supplementary Treaty. It also serves to implement between the United States and Estonia the provisions of the U.S.-EU Extradition Agreement.

The following is an Article-by-Article description of the provisions of the Treaty.

Article 1 obligates each Party to extradite to the other, pursuant to the provisions of the Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offense.

Article 2 concerns extraditable offenses and is taken from Article 4 of the U.S.-EU Extradition Agreement. Article 2(1) defines an offense as extraditable if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of more than one year or by a more severe penalty. Use of a pure "dual criminality" clause, rather than categories of offenses listed in the 1923 Treaty, obviates the need to renego-

(V)

tiate or supplement the Treaty as additional offenses become punishable under the laws in both States.

Article 2(2) further defines an extraditable offense as an attempt or a conspiracy to commit, or participation in the commission of an extraditable offense. The Parties intended to include the offenses of aiding, abetting, counseling or procuring the commission of an offense, as well as being an accessory to an offense, under the broad description of participation.

Additional flexibility is provided by Article 2(3), which provides that an offense shall be an extraditable offense: a) whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; b) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being jurisdictional only; or c) in criminal cases relating to taxes, customs duties, currency control or commodities.

With regard to offenses committed outside the territory of the Requesting State, Article 2(4) provides that extradition shall be granted for an extraditable offense regardless of where the act or acts constituting the offense were committed.

Article 2(5) provides that if extradition is granted for an extraditable offense, it shall also be granted for any other offense specified in the request if the latter offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

Article 3 provides that extradition shall not be refused based on the nationality of the person sought.

Article 4 sets forth bases for the denial of extradition. As is customary in extradition treaties, paragraph I provides that extradition shall not be granted if the offense for which extradition is requested constitutes a political offense.

Article 4(2) specifies six categories of offenses that shall not be considered to be political offenses: (a) a murder or other violent crime against a Head of State of one of the Parties, or of a member of the Head of State's family; (b) an offense for which both Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; (c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm; (d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage; (e) placing or using an explosive, incendiary, or destructive device capable of endangering life, of causing substantial bodily harm, or of causing grievous property damage; and (f) a conspiracy or attempt to commit any of the foregoing offenses, or participation in the commission of such offenses.

Article 4(3) provides that extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

Article 4(4) provides that offenses under military law that are not offenses under ordinary criminal law (e.g., desertion) are excluded from the scope of the Treaty.

Article 5(1) provides that extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. Article 5(2) provides that extradition shall not be precluded by the fact that the competent authorities of the Requested State: (a) have decided not to prosecute the person sought for the acts for which extradition is requested; (b) have decided to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or (c) have decided to investigate the person sought for the same acts.

Article 6 provides that extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.

Article 7 concerns capital punishment, and is taken from Article 13 of the U.S.-EU Extradition Agreement. When an offense for which exadition is sought is punishable by death under the laws in the Requesting State but not under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

Article 8 establishes the procedures and describes the documents that are required to support a request for extradition. Paragraph 1, which is taken from Article 5(1) of the U.S.-EU Extradition Agreement, provides that all requests for extradition must be submitted through the diplomatic channel, which shall include transmission under Article 11(4). Among other requirements, Article 8(3) provides that a request for the extradition of a person sought for prosecution must be supported by: (a) a copy of the warrant or order of arrest issued by a judge, court, or other competent authority; (b) a copy of the charging document; and (c) such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is sought.

Pursuant to Article 8(4), a request for extradition of a person who has been convicted in absentia must be supported by the documents required in a request for a person who is sought for prosecution.

Article 8(5), which is taken from Article 8 of the U.S.-EU Extradition Agreement, authorizes the furnishing of additional information, if the Requested State deems it necessary to support an extradition request, and specifies that such information may be requested and supplied directly between the United States Department of Justice and the Ministry of Justice of the Republic of Estonia. Article 8(6), which is taken from Article 14 of the U.S.-EU Extradition Agreement, addresses the submission of sensitive information in extradition requests.

Article 9, which is taken from Article 5 of the U.S.-EU Extradition Agreement, concerns admissibility of documents. It provides that documents bearing the certificate or seal of either the Ministry

of Justice or foreign affairs Ministry or Department of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification.

Article 10 provides that all documents submitted under the Treaty by the Requesting State shall be translated into the language of the Requested State.

Article 11 sets forth procedures and describes the information that is required for the provisional arrest and detention of the person sought, in an urgent situation, pending presentation of the formal request for extradition. Paragraph 1, which sets forth procedures for transmission of a request for provisional arrest, is taken from Article 7 of the U.S.-EU Extradition Agreement. Article 11(4) provides that if the Requested State's executive authority has not received the request for extradition and supporting documents within sixty days from the date of provisional arrest, the person may be discharged from custody. Paragraph 4 also provides an alternative channel for receipt of extradition requests with respect to persons who have been provisionally arrested, taken from Article 6 of the U.S.-EU Extradition Agreement. Article 11(5) explicitly provides that the discharge of a person from custody pursuant to Article 11(4) does not prejudice the person's subsequent rearrest and extradition if the extradition request and supporting documents are delivered at a later date.

Article 12 specifies the procedures governing a decision on the extradition request and the surrender of the person sought. It requires the Requested State to promptly notify the Requesting State of its decision regarding a request. If the request is denied in whole or in part, the Requested State must provide an explanation for the denial and, upon request, copies of pertinent judicial decisions. If extradition is granted, the States shall agree on the time and place for the surrender of the person sought. If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, the person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense(s).

Article 13 addresses temporary and deferred surrender. Paragraph 1, on temporary surrender, is taken from Article 9 of the U.S.-EU Extradition Agreement. It provides that if a person whose extradition is sought is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person to the Requesting State for the purpose of prosecution. The Requesting State shall keep the person so surrendered in custody and shall return that person to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the States.

Paragraph 2, on deferred surrender, provides that the Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that state.

Article 14, which is taken from Article 10 of the U.S.-EU Extradition Agreement, provides a non-exclusive list of factors to be considered by the executive authority of the Requested State in determining to which State to surrender a person whose extradition is sought by more than one State. It includes, in paragraph 2, lan-

guage establishing the applicability of this analysis to competing requests from the United States and from a member state of the European Union made to Estonia under the European Arrest Warrant.

Article 15 provides that the Requested State may, to the extent permitted under its law, seize and surrender to the Requesting State all items, including articles, documents, and evidence, that are connected with the offense in respect of which extradition is granted. Such items may be surrendered even if the extradition cannot be effected due to the death, disappearance, or escape of the person sought, and prior to the extradition, if requested pursuant to the mutual legal assistance treaty between the parties. The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State. The rights of third parties in such items are to be respected in accordance with the laws of the Requested State.

Article 16 sets forth the rule of speciality under international law. Paragraph 1 provides, subject to specific exceptions set forth in paragraph 3, that a person extradited under the Treaty may not be detained, tried, or punished in the Requesting State except for: (a) any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense for which extradition was granted, provided such offense is extraditable, or is a lesser included offense; (b) any offense committed after the extradition of the person; or (c) any offense for which the executive authority of the Requested State waives the rule of speciality and thereby consents to the person's detention, trial, or punishment.

Article 16(2) provides that a person extradited under the Treaty may not be the subject of onward extradition to a third State or an international tribunal for any offense committed prior to the extradition to the Requesting State unless the Requested State consents.

Under Article 16(3), these restrictions shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of a person to a third State, if the extradited person leaves the territory of the Requesting State after extradition and voluntarily returns to it or fails to leave the territory of the Requesting State within ten days of being free to do so.

Article 17 permits surrender as expeditiously as possible if the person sought consents to be surrendered to the Requesting State.

Article 18, which is taken from Article 12 of the U.S.-EU Extradition Agreement, governs the transit through the territory of one State of a person surrendered to the other State by a third country.

Article 19 contains provisions on representation and expenses. Specifically, the Requested State is required to advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition. The Requested State also bears all expenses incurred in that State in connection with the extradition proceedings, except that the Requesting State pays expenses related to translation of

extradition documents and the transportation of the person surrendered. Article 19(3) specifies that neither State shall make any pecuniary claim against the other arising out of the arrest, detention, examination, or surrender of persons under the Treaty.

Article 20 provides that the United States Department of Justice and the Ministry of Justice of the Republic of Estonia may consult in connection with the processing of individual cases and in furtherance of efficient implementation of the Treaty.

Article 21 makes the Treaty applicable to offenses committed before as well as on or after the date it enters into force.

Article 22 contains final clauses dealing with the Treaty's entry into force and termination. It provides that the Treaty is subject to ratification and that the Treaty shall enter into force upon the exchange of the instruments of ratification. Article 22(3) provides that, upon entry into force of the Treaty, the Treaty of Extradition between the United States of America and the Republic of Estonia, signed at Tallinn on November 8, 1923, and the Supplementary Extradition Treaty signed at Washington on October 10, 1934, shall cease to have any effect. Either State may terminate the Treaty with six months written notice to the other State through the diplomatic channel.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at the earliest possible date.

EXTRADITION TREATY

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNMENT OF THE REPUBLIC OF ESTONIA

1

(1)

2

## TABLE OF CONTENTS

Article 1 ................................................................ Obligation to Extradite

Article 2 ................................................................ Extraditable Offenses

Article 3 ................................................................ Nationality

Article 4 ................................................................ Political and Military
Offenses

Article 5 ................................................................ Prior Prosecution

Article 6 ................................................................ Lapse of Time

Article 7 ................................................................ Capital Punishment

Article 8 ................................................................ Extradition Procedures
and Required Documents

Article 9 ................................................................ Admissibility of
Documents

Article 10 ............................................................... Translation

Article 11 ............................................................... Provisional Arrest

Article 12 ............................................................... Decision and Surrender

Article 13 ............................................................... Temporary and Deferred
Surrender

Article 14 ............................................................... Requests for Extradition
Made by Several States

Article 15 ............................................................... Seizure and Surrender of
Property

Article 16 ............................................................... Rule of Speciality

Article 17 ............................................................... Consent to Waiver of
Extradition Proceedings

Article 18 ............................................................... Transit

2

Article 19.................................................................... Representation and Expenses

Article 20.................................................................... Consultation

Article 21.................................................................... Application

Article 22.................................................................... Ratification, Entry into Force, and Termination

3

EXT-ROTKO-000017

The Government of the United States of America and the Government of the Republic of Estonia (hereinafter referred to as "the Parties");

Recalling the Treaty of Extradition between the United States of America and the Republic of Estonia, signed at Tallinn on November 8, 1923, and the Supplementary Extradition Treaty, signed at Washington on October 10, 1934;

Noting that both the Government of the United States of America and the Government of the Republic of Estonia currently apply the terms of that Treaty;

Mindful of obligations set forth in the Agreement on Extradition between the United States of America and the European Union signed at Washington, D.C. on June 25, 2003; and

Desiring to provide for more effective cooperation between the Parties in the fight against crime, and, for that purpose, to conclude a new treaty for the extradition of offenders;

Have agreed as follows:

4

EXT-ROTKO-000018

### Article 1

### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offense.

### Article 2

### Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both States by deprivation of liberty for a period of more than one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of any offense described in paragraph 1.

3. For the purposes of this Article, an offense shall be an extraditable offense:

   (a) whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology;

5

6

(b)   whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States Federal court; and

(c)   in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the Requesting and Requested States provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

4.   Extradition shall be granted for an extraditable offense regardless of where the act or acts constituting the offense were committed.

5.   If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request even if the latter offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

Article 3
Nationality

Extradition shall not be refused based on the nationality of the person sought.

6

Article 4

Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2. For the purposes of this Treaty, the following offenses shall not be considered political offenses:

(a) a murder or other violent crime against a Head of State of one of the Parties, or of a member of the Head of State's family;

(b) an offense for which both Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

(d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

(e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing grievous property damage; and

(f) a conspiracy or attempt to commit any of the foregoing offenses, or participation in the commission of such offenses.

3. Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4. The executive authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.

7

Article 5

Prior Prosecution

1.      Extradition shall not be granted when the person sought has been
convicted or acquitted in the Requested State for the offense for which extradition is
requested.

2.      Extradition shall not be precluded by the fact that the competent
authorities of the Requested State have decided:

(a)     not to prosecute the person sought for the acts for which
extradition is requested;

(b)     to discontinue any criminal proceedings which have been
instituted against the person sought for those acts; or

(c)     to investigate the person sought for the same acts.

Article 6

Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the
penalty for the offence for which extradition has been sought has become barred by
lapse of time according to the law of the Requesting State.

Article 7

Capital Punishment

Where the offense for which extradition is sought is punishable by death under
the laws in the Requesting State and is not punishable by death under the laws in the
Requested State, the Requested State may grant extradition on the condition that the
death penalty shall not be imposed on the person sought, or if for procedural reasons
such condition cannot be complied with by the Requesting State, on condition that the

8

death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to the condition attached pursuant to this Article, it shall comply with the condition. If the Requesting State does not accept the condition, the request for extradition may be denied.

Article 8

Extradition Procedures and Required Documents

1.    All requests for extradition shall be submitted through the diplomatic channel, which shall include transmission as provided for in Article 11(4).

2.    All requests shall include:

(a)    documents, statements, or other types of information which describe the identity and probable location of the person sought;

(b)    information describing the facts of the offense and the procedural history of the case;

(c)    a statement of the relevant text of the provisions of the laws describing the essential elements of the offense for which extradition is requested;

(d)    a statement of the relevant text of the provisions of law prescribing punishment for the offense;

(e)    a statement of the provisions of law describing any time limit on the prosecution; and

(f)    the documents, statements, or other types of information specified in paragraphs 3 or 4 of this Article, as applicable.

3.    A request for extradition of a person who is sought for prosecution also shall include:

(a)    a copy of the warrant or order of arrest issued by a judge, court, or other authority competent for this purpose;

(b)    a copy of the charging document; and

9

        (c)    such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is sought.

4.    A request for extradition relating to a person who has been convicted of the offense for which extradition is sought also shall include:

        (a)    a copy of the judgment of conviction, or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

        (b)    information establishing that the person sought is the person to whom the finding of guilt refers;

        (c)    a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

        (d)    in the case of a person who has been convicted in absentia, the documents required by paragraph 3.

5.    The Requested State may require the Requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Article.  Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Republic of Estonia.

6.    Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

10

Article 9

Admissibility of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or the Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Estonia, the Ministry of Justice of the Republic of Estonia.

Article 10

Translation

All documents submitted by the Requesting State shall be accompanied by a translation into the language of the Requested State.

Article 11

Provisional Arrest

1.    In case of urgency, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Estonia. The facilities of the International Criminal Police Organization (Interpol) also may be used to transmit such a request.

2.    The application for provisional arrest shall contain:

    (a)    a description of the person sought;

    (b)    the location of the person sought, if known;

    (c)    a brief statement of the facts of the case, including, if possible, the time and location of the offense;

11

EXT-ROTKO-000025

12

     (d)   a description of the law(s) violated;

     (e)   a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

     (f)   a statement that the documents supporting the extradition request for the person sought will follow within the time specified in this Treaty.

3.    The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.    A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the request for extradition required in Article 8.   For this purpose, receipt of the request for extradition by the Embassy of the Requested State in the Requesting State, by the date specified in this paragraph, shall constitute receipt by the executive authority of the Requested State.

5.    The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

### Article 12
### Decision and Surrender

1.    The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2.    If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial.  The Requested State shall provide

12

copies of pertinent judicial decisions upon request.

3.   If the request for extradition is granted, the authorities of the Requesting and Requested  States shall agree on the time and place for the surrender of the person sought.

4.   If the person sought is not removed from the territory of the Requested State by the Requesting State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense.

### Article 13
### Temporary and Deferred Surrender

1.   If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Requesting and Requested States.

2.   The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State.  The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

13

Article 14

Requests for Extradition Made by Several States

1.     If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.     If the Republic of Estonia receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.     For purposes of clarity, the Parties confirm that this Article shall also apply where the Republic of Estonia receives an extradition request from the United States of America, from a third State and a request for surrender pursuant to the European arrest warrant.

4.     In making its decision under paragraphs 1-3 of this Article, the Requested State shall consider all relevant factors, including but not limited to, the following:

    (a)    whether the requests were made pursuant to a treaty;

    (b)    the places where each of the offenses was committed;

    (c)    the respective interests of the Requesting States;

    (d)    the gravity of the offenses;

    (e)    the nationality of the victim;

    (f)    the possibility of any subsequent extradition between the Requesting States; and

    (g)    the chronological order in which the requests were received from the Requesting States.

14

EXT-ROTKO-000028

Article 15

Seizure and Surrender of Property

1.    To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items, including articles, documents, and evidence, that are connected with the offense in respect of which extradition is granted.  The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought and prior to the extradition, if requested pursuant to the mutual legal assistance treaty between the Parties.

2.    The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable.  The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

3.    The rights of third parties in such items shall be duly respected in accordance with the laws of the Requested State.

Article 16

Rule of Speciality

1.    A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

   (a)    any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense for which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

   (b)    any offense committed after the extradition of the person; or

15

(c)   any offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. For the purpose of this subparagraph:

  (i)   the Requested State may require the submission of the documentation called for in Article 8; and

  (ii)  the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.     A person extradited under this Treaty may not be extradited to a third State or extradited or surrendered to an international tribunal for any offense committed prior to extradition unless the Requested State consents.

3.     Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

  (a)   that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

  (b)   that person does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave.

Article 17

Consent to Waiver of Extradition Proceedings

If the person sought consents to be surrendered to the Requesting State, and does so in writing, the Requested State may surrender the person as expeditiously as possible.

16

EXT-ROTKO-000030

17

### Article 18
### Transit

1.      Either State may authorize transportation through its territory of a person surrendered to the other State by a third State.  A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Estonia.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request to the above-mentioned authorities.  The request for transit shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit may be detained in custody during the period of transit.

2.      Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State.  If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 1, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 48 hours of the unscheduled landing.

### Article 19
### Representation and Expenses

1.      The Requested State shall advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition.

2.      The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

17

18

3.    Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.


Article 20
Consultation


1.    The United States Department of Justice and the Ministry of Justice of the Republic of Estonia may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

2.    Where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.


Article 21
Application


This Treaty shall apply to offenses committed before, on, as well as after the date it enters into force.


Article 22
Ratification, Entry into Force, and Termination


1.    This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged as soon as possible.


2.    This Treaty shall enter into force upon the exchange of the instruments of ratification.

18

3.     Upon the entry into force of this Treaty, the Treaty of Extradition between the United States of America and the Republic of Estonia, signed at Tallinn on November 8, 1923, and the Supplementary Extradition Treaty signed at Washington on October 10, 1934, shall cease to have any effect.  Nevertheless, the prior Treaties shall apply to any extradition proceedings in which the extradition documents have already been submitted to the courts of the Requested State at the time this Treaty enters into force, except that Article 17 of this Treaty shall be applicable to such proceedings, and Article 16 of this Treaty shall apply to persons found extraditable under the prior Treaty.

4.     With respect to any extradition proceedings in which the request for extradition was received by the Requested State but not submitted to its courts before the entry into force of this Treaty, the Requesting State, after entry into force of this Treaty, may amend or supplement the request for extradition as necessary in order for it to be submitted to the courts of the Requested State under this Treaty.

5.     Either State may terminate this Treaty at any time by giving written notice to the other State through the diplomatic channel, and the termination shall be effective six months after the date of receipt of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE at Tallinn, in duplicate, this 6th day of February, 2006, in the English and Estonian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:           REPUBLIC OF ESTONIA:

19



Teie                              nr

Meie    13.03.2013        nr 12-1/13-2063-3

U. S. Department of Justice
Criminal Division
Office of International Affairs
1301 New York Avenue, NW
9th floor
Washington D.C. 20530
USA

**Eesti Vabariigi kodaniku Aleksandr Rotko
väljaandmistaotlus**

Eesti Vabariigi Justiitsministeerium, tuginedes Eesti Vabariigi valitsuse ja Ameerika Ühendriikide valitsuse
vahelisele 08.02.2006. a allakirjutatud väljaandmislepingule, esitab taotluse Eesti kodaniku Aleksandr
Rotko (sünd 27.02.1949, ik 34902270228) väljaandmiseks.

Põhja Ringkonnaprokuratuur taotleb Aleksandr Rotko väljaandmist kriminaalmenetluse edasiseks
jätkamiseks kriminaalasjas nr 06730000427.

Tagaotsitavat Aleksandr Rotko'd kahtlustatakse isikute grupi poolt toime pandud enda valduses oleva
võõra vallasasja enda ja kolmanda isiku kasuks pööramises, s.o kuriteos, mis on kvalifitseeritav Eesti
Vabariigi karistusseadustiku § 201 lg 2 p 4 järgi ning võõra asja rikkumises ja hävitamises, millega on
tekitatud asja omanikule, Eesti Vabariigile, olulist kahju, s.o. kuriteos, mis on kvalifitseeritav Eesti
Vabariigi karistusseadustiku § 203 järgi.

25.08.2007.a. väljastas Harju Maakohus määruse nr 06730000427 tagaotsitavaks kuulutatud Aleksandr
Rotko vahistamiseks, Politseiinformatsiooni kohaselt on A. Rotko praegune asukoht – Ameerika
Ühendriigid, West Virgina osariik, Huntington.

Ülaltoodut arvesse võttes taotleme Eesti Vabariigi kodaniku Aleksandr Rotko (sünd 27.02.1949)
väljaandmist Eesti Vabariigi ametivõimudele.

Lugupidamisega

Hanno Pevkur
Minister

CC Q06644

Lisa: 65 lehel

Astrid Laurendt-Hanioja
Astrid.Laurendt@just.ee



U.S. Department of Justice
Criminal Division
Office of International Affairs
1301 New York Avenue, NW
9th floor
Washington D.C. 20530
USA

13.03.2013

Your ref.
Our ref.  12-1/13-2063-2

**Request for extradition of a citizen of the
Republic of Estonia Aleksandr Rotko**

Ministry of Justice of Estonia based on the extradition treaty between the Government of the Republic of Estonia and the Government of United States of America, signed 08.02.2006, hereby presens the request for extradition of Estonian citizen Aleksandr Rotko (born 27.02.1949, ID 34902270228).

The Northern District Prosecutor's Office requests the extradition of Aleksandr Rotko for the continuation of criminal proceedings in the criminal case No 06730000427.

The requested person Aleksandr Rotko is suspected of using a movable of another in his possession for his own benefit and for the benefit of a third person committed by a group of persons, that is a criminal offense which is classified pursuant to the Estonian Penal Code § 201, 2 (4) and of damaging and destroying of a thing of another, by which he has caused to the owner of the thing, the Republic of Estonia, significant damage, which is a criminal offense which is classified pursuant to the Estonian Penal Code § 203.

On 25.08.2007, Harju County Court issued a Ruling No 06730000427 to arrest the fugitive suspect Aleksandr Rotko. According to the police information the current location of A. Rotko – the United States of America, West Virginia State, Huntington.

Taking into account the aforementioned facts, we request the extradition of Estonian citizen Aleksandr Rotko (born 27.02.1949).

Yours sincerely

Hanno Pevkur
Minister

Encl: on 65  pages

Astrid Laurendt-Hanioja
Astrid.Laurendt@just.ee



# PÕHJA  RINGKONNAPROKURATUUR

Ameerika Ühendriikide pädev õigusasutus

Isiku väljaandmistaotlus                          30.01.2013 nr. PRP- 6/12/7720
Eesti Vabariigi Prokuratuurilt

Tuginedes Eesti Vabariigi valitsuse ja Ameerika Ühendriikide valitsuse vahelisele
väljaandmislepingule, alla kirjutatud 08.02.2006, esitame Teile väljaandmistaotluse,
millega palume Ameerika Ühendriikidel anda välja Eesti Vabariigile **Aleksandr
Rotko** (isikukood 34902270228, sündinud 27.02.1949 Ukrainas).

Väljaandmistaotluse esitab Põhja Ringkonnaprokuratuur.

Tagaotsitavat Aleksander Rotko'd kahtlustatakse isikute grupi poolt toime pandud
enda valduses oleva võõra vallasasja enda ja kolmanda isiku kasuks pööramises, s.o
kuriteos, mis on kvalifitseeritud  Eesti Vabariigi karistusseadustiku § 201 lg 2 p 4
järgi ning võõra asja rikkumises ja hävitamises, millega on tekitatud asja omanikule,
Eesti Vabariigile, oluline kahju, s.o. kuriteos, mis on kvalifitseeritav Eesti Vabariigi
karistusseadustiku § 203 järgi.

/allkiri/

Põhja ringkonnaprokuratuuri vanemprokurör
Maria Entsik



# PÕHJA RINGKONNAPROKURATUUR

**Aleksandr Rotko väljaandmistaotlus**              30.01.2013 nr. PRP- 6/12/7720

## I SISSEJUHATUS

Mina, Maria Entsik, olen Eesti Vabariigi kodanik ja olen olnud alates 11.09.200
prokurör Eesti Vabariigis. Minu ametiülesanneteks on juhtida kohtueelset
kriminaalmenetlust, tagades selle seaduslikkuse ja tulemuslikkuse, ning esindada
kohtus riiklikku süüdistust isikute vastu, kes on toime pannud kuriteo Eesti Vabariigi
seaduste kohaselt.

Vanemprokurörina oma tööülesannetega seoses olen ma tutvunud **kriminaalasja nr
06730000427** materjalidega, mille raames on kogutud tõendid ja milles kahtlustatakse
**Aleksandr Rotko'd** (isikukood 34902270228) koos Olga Kotova'ga (isikukood
47711285211) selles, et nemad rikkusid ja hävitasid tahtlikult Eesti Vabariigi omandis
olevaid ehitisi ja rajatisi Tallinnas Küti 17 ja 17a territooriumil, millega tekitasid Eesti
Vabariigile olulist varalist kahju summas 1 988 260 EEK-i. Kriminaalasi on
kohtueelse menetluse staadiumis. Aleksandr Rotko on asunud kriminaalmenetlusest
kõrvale hoidma ja lahkunud Eesti Vabariigist.

Vastavalt KrMS § 457 lg 3 koostab välisriigile esitatava taotluse isik välja anda
kohtueelses menetluses prokuratuur.

Käesolev väljaandmistaotlus on koostatud esitatud Ameerika Ühendriikidele palvega
anda välja Eesti Vabariigile kahtlustatav Aleksandr Rotko eesmärgiga esitada talle
süüdistus Eesti Vabariigi karistusseadustiku § 201 lg 2 p 4 ja § 203 järgi ning saata
Aleksandr Rotko kohtu alla vastust kandma tema poolt toime pandud kuritegude eest.

## II ASJAOLUDE KIRJELDUS

Kriminaalmenetlust käesolevas asjas alustati 22.09.2006 alljärgnevate asjaolude
pinnal.

14.11.1997 esitas Eesti Vabariik Justiitsministeeriumi kaudu Tallinna Linnakohtule
hagi OÜ B ja E, AS Verest ja OÜ Agrin Partion vastu nõudega tunnistada Eesti
Vabariigi omandiõigust Tallinnas, Küti 17 ja Küti 17a (Lennusadama territoorium)
asuvatele ehitistele ja nõuda need välja kostjate ebaseaduslikust valdusest (endise
Nõukogude Armee valduses olnud vara).

EXT-ROTKO-000037

14.02.2005 esitas Eesti Vabariik hagiavalduse täienduse ja palus tunnustada Eesti Vabariigi omandiõigust ka Tallinnas, Küti 17 ja Küti 17a asuvale maatükile ja mõista see välja kostjate ebaseaduslikust valdusest.

09.03.2005 esitas Eesti Vabariik Tallinna Linnakohtule taotluse AS BPV ja ELA Tolli AS kaasamiseks kostjatena ning täiendas hagiavalduse nõudeid eelviidatud nõuetega AS BPV ja ELA Tolli AS vastu.

AS Verest, OÜ Agrin Partion, ELA Tolli AS ja AS BPV asusid kõik kuriteo toimepanemise perioodil (2006.a juuli) adressil Küti 17, Tallinn ning nende juhtorganitesse kuulusid nõukogu ja juhatuse liikmetena 'Aleksandr Rotko ja Olga Kotova. Seda kinnitavad äriregistri väljatrükid nimetatud äriühingute kohta.

04.07.2005 tegi Tallinna Linnakohus otsuse, millega rahuldas Eesti Vabariigi hagi OÜ B ja E, AS Verest, OÜ Agrin Partion ja ELA Tolli AS vastu, kuid jättis rahuldamata Eesti Vabariigi hagi AS BPV vastu. 01.03.2006 tegi Tallinna Ringkonnakohus otsuse, millega rahuldas Eesti Vabariigi apellatsioonikaebuse ja rahuldas Eesti Vabariigi hagi ka täiendavalt AS BPV vastu. 07.06.2006 keeldus Riigikohus andmast kostjate kassatsioonidele menetlusluba ja Tallinna Ringkonnakohtu 01.03.2006 kohtuotsus jõustus.

Kohtutäitur määras kostjatele vabatahtliku täitmise tähtajaks 31.07.2006.

17.07.2006 käisid Justiitsministeeriumi esindajad naaberkinnistult olukorda vaatlemas, mille tulemusel esitati 19.07.2006 täiendav sissenõudja avaldus, kus sissenõudja avaldab täiturile, et ebaseaduslikud valdajad (sh AS BPV) on asunud üleandmisele kuuluvatest ehitistest eraldama nende olulisi osi, mis kuuluvad ehitiste ja kinnisasja koosseisus Eesti Vabariigile üleandmisele. Nii on asutud eraldama kai betoonist katteplaate ja tehtud muid lammutustöid. Nimetatud tähelepanekuid on teinud naaberkinnisasjal tegutseva Meremuuseumi esindaja Tiit Einberg. 27.07.2006 tegi Harju Maakohus määruse kohtutäituri taotluse kohta viibida Küti 17 ja Küti 17a territooriumil ja ehitistes ning sissenõudja kulul mehitatud valve sisseseadmiseks. Nimetatud määruse alusel sisenes 28.07.2006 kohtutäitur koos Justiitsministeeriumi esindajatega Lennusadama territooriumile ja tutvus Lennusadama vara olukorraga. Täitur tuvastas Lennusadamast mitmesuguse vara lõhkumise ja äraviimise, mis on fikseeritud vastavas protokollis.

01.08.2006 toimunud täitetoimingu tulemusena võttis Eesti Vabariik Küti 17 ja Küti 17a asuvad ehitised ja territooriumi oma valdusse.

Lõhutud ja ära viidud esemetega Eesti Vabariigile tekitatud varaline kahju esialgse kuriteoteate kohaselt seisnes järgnevas:

1) Kai katteplaatide eemaldamine                                1 680 000 krooni
2) Raudteerelsside eemaldamine                                  156 060 krooni
3) Katlamaja hoone kahjustamine ja katelde eemaldamine          12 500 krooni
4) Puidutööstushoonest katelde eemaldamine                      25 000 krooni
5) Administratiivhoone vee-, sooja- ja
   elektrivarustuse katkestamine 54 300 krooni                  54 300 krooni
6) Vesilennukite angaari kupli avade luukide eemaldamine        20 000 krooni

Samuti kahtlustatakse Aleksandr Rotko'd  KarS  201 lg 2 p 4 järgi kvalifitseeritava kuriteo toimepanemises. Nimelt tema, olles OÜ Agrin Partion, AS Verest,  AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova´ga kes on OÜ Agrin Partion, AS Verest,  AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, teostasid alates 2000.a aastast kuni 01.08.2006 ebaseaduslikku valdust Eesti Vabariigile kuuluval territooriumil Küti 17 ja 17a Tallinn. Ajavahemikul 07.06.2006 kuni 01.08.2006 eemaldati Aleksandr Rotko korraldusel ja Olga Kotova teadmisel ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn asuvalt territooriumilt Eesti Vabariigile kuulunud raudteerelsid kokku kaaluga 66,6ⁱ tonni. Olga Kotova ja Aleksandr Rotko müüsid 26.07.2006a ebaseaduslikult eemaldatud relsid AS BPV nimelt AS Kuusakoskile summas 204 328,8 krooni, millega pöörasid nende ebaseaduslikus valduses oleva võõra vallasasja, s.o Eesti Vabariigile kuulunud raudteerelsid, ebaseaduslikult kolmanda isiku kasuks. Raudtee relsside müügist sai AS BPV tulu 204 328,8 krooni.

Samuti kahtlustatakse Aleksandr Rotko'd KarS  201 lg 2 p 4 järgi kvalifitseeritava kuriteo toimepanemises, mis seisnes selles, et tema,  olles OÜ Agrin Partion, AS Verest,  AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova´ga kes on OÜ Agrin Partion, AS Verest,  AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, korraldasid ajavahemikul 07.06.2006.a kuni 01.08.2006.a ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, territooriumilt: Tallinn, Küti 17 ja 17a, mille üle teostasid alates aastast 2000 kuni 01.08.2006.a ebaseaduslikku valdust, katlamajast katla (kaaluga kuni 6,4 tonni ning maksumusega vähemalt 13 120 krooni) eemaldamise ja omastasid selle, toimetades selle territooriumilt minema ning omaniku kasutus- ja käsutusalast välja.

Eelkirjeldatud tegevusega tekitasid Olga Kotova ja Aleksandr Rotko Eesti Vabariigile varalise kahju kokku summas 217 448 krooni.

*Seega on Aleksandr Rotko grupi poolt toime pannud enda valduses oleva võõra vallasasja enda ja kolmanda isiku kasuks pööramised, s.o kuriteod, mis on kvalifitseeritavad  KarS § 201 lg 2 p 4 järgi.*

Aleksander Rotko asus kriminaalmenetlusest koheselt kõrvale hoidma. On tuvastatud, et A. Rotko võõrandas endale kuulunud korteri aadressil Lõime 12-7, Tallinn ning oma Eestis olevas endises elukohas aadressil Kungla 4-44, Rakvere ei ela enam alates 2006.a sügisest. Tunnistaja Olga Novoseltseva andis ütlusi, et ta on informeerinud Aleksander Rotko'd tema suhtes käimas olevast kriminaalmenetlusest. Samuti andis tunnistaja Novoseltseva ütlusi, et Rotko ja Kotova asuvad alates 2006.a sügisest väljaspool Eesti Vabariiki. Kuna Aleksandr Rotko on kuulutatud tagaotsitavaks, on tema suhtes avatud ka jälitustoimik nr 0723000349. Selle raames tehtud jälitustoimingutega on kindlaks tehtud Aleksandr Rotko käesolev asukoht – Ameerika Ühendriigid, West Virgina osariik, Huntingtoni linn.

25.08.2007.a. väljastas Harju Maakohus määruse nr 06730000427 vahistada tagaotsitavaks kuulutatud kahtlustatav Aleksandr Rotko (isikukood 34902270228), keda kahtlustatakse KarS § 201 lg 2 p 4 ja § 203 sätestatud kuritegude toimepanemises. Kinnitatud koopia nimetatud dokumendist lisatakse käesolevale taotlusena Lisana 1.

29.08.2007.a. väljastas Põhja Ringkonnaprokuratuur Euroopa vahistamismääruse kahtlustatav Aleksandr Rotko suhtes.

Mõlemad vahistamismäärused on jõustunud ja kehtivad.

Käesolevale taotlusele lisatakse A. Rotko kahtlustust kinnitavate tõenditena tunnistajate Olga Novoseltseva, Valdo Seiler, Tiit Einberg, Olga Savitskaja, Aleksei Bassenkov ja Tõnu Rinaldi   ülekuulamise protokollid tõlgituna inglise keelde. Dokumendid on vormistatud lisana 2.


## III ASJASSEPUUTUVAD KARISTUSÕIGUSLIKUD NORMID

Järgnevalt on ära toodud Eesti Vabariigi karistusseadustiku   vastavad paragrahvid, mille järgi on A. Rotko poolt toime pandu käsitletav kuriteona. Mõlemad paragrahvid (KarS § 201 lg 2 p 4 ja § 203) olid kehtivad nii kuritegude toimepanemise ajal kui ka tänasel päeval.

KarS § 201 lg 2 p 4 sätestab, et valduses oleva võõra vallasasja või isikule usaldatud muu võõra vara ebaseaduslikult enda või kolmanda isiku kasuks pööramise eest, kui see on toime pandud grupi või kuritegeliku ühenduse poolt, – karistatakse rahalise karistuse või kuni viieaastase vangistusega.

KarS § 203 sätestab, et võõra asja rikkumise või hävitamise eest, kui sellega on tekitatud oluline kahju, – karistatakse rahalise karistuse või kuni viieaastase vangistusega.

Kuna KarS § 201 lg 2 p 4 ja § 203 on teise astme kuriteod, on nende aegumistähtaeg kriminaalmenetluse seadustiku § 81 lg 1 p 2 kohaselt 5 aastat kuriteo toimepanemisest. Vastavalt KrMS § 81 lg 7 p 1 peatub kuriteo aegumine kahtlustatava kõrvalehoidumisel kohtueelsest menetlusest kuni isiku kinnipidamiseni või tema ilmumiseni menetleja juurde. KrMS § 81 lg 8 sätestab, et sama seaduse § 81 lg 7 p 1 sätestatud juhul ei uuene aegumine, kui kuriteo toimepanemisest on möödunud 15 aastat. Kuna antud juhul asus A. Rotko kriminaalmenetlusest kõrvale hoiduma hiljemalt 2006.a detsembrist, mil talle sooviti kutset kätte toimetada, on aegumine sellest hetkest alates peatunud. Rotko'd ei ole õnnestunud senini kinni pidada, samuti ei ole ta vabatahtlikult ilmunud menetleja juurde.


## IV TAGAOTSITAVA KIRJELDUS

Lisame taotlusele A. Rotko foto Lisana 3. Foto on võetud 19.04.2005 ID-kaardi väljastamise eesmärgil.

Tagaotsitavat Aleksandr Rotko'd identifitseerivad andmed on järgmised.

Nimi:            Aleksandr Rotko

Alias:           ei ole teada

Sünniaeg:        27.02.1949

Sünnikoht:       Ukraina

Passinumber:     viimane Eesti Vabariigis väljastatud pass nr K2015608 on tänaseks
                 kehtetu. Kehtis ajavahemikul 25.03.2002 - 25.03.2012.

ID-kaardi nr:    A1150472, välja antud 19.04.2005 Eesti Vabariigi poolt. Kehtivusaeg
                 19.04.2005 - 19.04.2015

Kodakondsus: EestiVabariigi kodanik

Ema nimi:        Olga Rotko (sünd 09.07.1924), neiupõlvenimi pole teada

Isa nimi:        Mihhail Rotko (sünd. 21.05.1921)

Emakeel:         vene keel

Sugu:            meessoost

Rass:            europiidne

Juuksevärv:      tumedad

Silmavärv:       ei ole teada

Pikkus:          ei ole teada

Kaal:            ei ole teada

Aadress:         teadaolevalt Huntingtoni linn, West Virginia osariik, USA


## V KOKKUVÕTE

Kinnitan, et kõik eeltoodu vastab tõele minu parima teadmise kohaselt. Eelkirjeldatut
silmas pidades, palun Eesti Vabariigi nimel välja anda Aleksandr Rotko Eesti
Vabariigile tema suhtes kriminaalmenetluse läbiviimiseks, süüdistuse esitamiseks ja
tema kohtu alla andmiseks.

Olen teinud on parima, et esitada tõendeid väljaandmistaotluse rahuldamiseks. Juhul
kui USA pädevad ametiasutused vajavad täiendavat inforatsiooni taotl

lahendamiseks, kinnitan kogu lugupidamisega, et olen valmis esitama vajalikku lisainformatsiooni enne otsuse langetamist.



Maria Entsik
Vanemprokurör

Lisad:

1) 25.08.2007 Harju Maakohus määrus nr 06730000427 A. Rotko vahistamiseks;
2) Tunnistajate Olga Novoseltseva, Valdo Seiler, Tiit Einberg, Olga Savitskaja, Aleksei Bassenkov ja Tõnu Rinaldi  ülekuulamise protokollid tõlgituna inglise keelde;
3) A. Rotko foto.