*/Translation from Estonian/*

To the competent authority of the United States:

Request for extradition of a person                    30.01.2013 No PRP-6/12 /7720
From the Prosecutor's Office of the Republic of Estonia

Based on the extradition treaty between the Government of the Republic of Estonia and the United States Government, signed 08.02.2006, we are hereby presenting you a request for extradition requesting the United States to extradite to the Republic of Estonia **Aleksandr Rotko** (personal identification number 34902270228, born on 27.02.1949 in Ukraine).

The request for extradition is issued by the Northern District Prosecutor's Office.

The requested person Aleksandr Rotko is suspected of using a movable of another in his possession for his own benefit and for the benefit of a third person committed by a group of persons, that is a criminal offense which is classified pursuant to the Estonian Penal Code § 201, 2 (4) and of damaging and destroying of a thing of another, by which he has caused to the owner of the thing, the Republic of Estonia, significant damage, which is a criminal offense which is classified pursuant to the Estonian Penal Code § 203.

.....................................................................
(Signature)
Senior Prosecutor of the Northern District
Prosecutor's Office Maria Entsik

## NORTHERN DISTRICT PROSECUTOR'S OFFICE

**Request for extradition of Aleksandr Rotko**          30.01.2013 No PRP- 6/12/7720

## 1 INTRODUCTION

I, Maria Entsik, a citizen of the Republic of Estonia and a prosecutor in Estonia since 11.09.2000, hereby declare the following: My function is to manage the pre-trial criminal proceedings, ensuring its legality and effectiveness and to represent in court the state indictments against persons who have committed a crime under the laws of the Republic of Estonia.

In the capacity of the Senior Prosecutor's professional duties, I am familiar with the materials of the **criminal case No 06730000427**, in the framework of which have been collected evidence and in which is suspected **Aleksandr Rotko** (personal identification number 34902270228) together with Olga Kotova (personal identification number 47711285211) in that they deliberately violated and destroyed buildings and facilities in the ownership of the Republic of Estonia in Tallinn in the territory of Küti 17 and 17a, which with they caused significant property damage to the Republic of Estonia in the amount of 1,988,260.00 EEK (Estonian Kroon) (Please note that Estonia is currently in the Euro Zone and the permanent exchange rate of EEK to Euro is 15.64 kroon to one euro) The criminal case is the pre-trial stage of the proceedings. Aleksandr Rotko, in order to avoid criminal proceedings, has left the Republic of Estonia.

Pursuant to CCP § 457 Section 3, in pre-trial proceedings the Prosecutor's Office shall prepare for a foreign state a request to extradite a person.

This request for extradition has been prepared and submitted to the United States of America with the request to arrest and issue to the Estonian Republic, the suspect Aleksandr Rotko with a view to bring charges against him pursuant to the Estonian Penal Code § 201 subsection 2 clause 4 and § 203 and prosecute Aleksandr Rotko to bear liability for the crimes committed by him.

## II DESCRIPTION OF THE FACTS

The criminal procedure in this case was started on 22.09.2006 with the following facts.

On 14.11.1997, the Republic of Estonia submitted through the Estonian Ministry of Justice to the Tallinn City Court an action against OÜ B & E, AS Verest and OÜ Agrin Partion to recognize the right of ownership of the Republic of Estonia in the buildings located in Tallinn, Küti 17 and Küti 17a (in the territory of the Seaplane Harbor) and reclaim them from the defendants' illegal possession (the asset formerly was in the possession of the Soviet Army).

Translated by Anna Yastrebova.
The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for 2
provision of ...          EXT-ROTKO-000044

On 14.02.2005 Estonia submitted a supplement to the statement of claim and asked to recognize the property rights of the Republic of Estonia also on the plot located in Tallinn, Küti 17 and Küti 17a and to order delivery thereof from the illegal possession of the defendants.

On 09.03.2005 the Republic of Estonia submitted to the Tallinn City Court for involvement of AS BPV and ELA Tolli AS, as defendants and complemented the statement of claim with the above claims against AS BPV and ELA Tolli AS.

AS Verest, OÜ Agrin Partion, ELA Tolli AS and AS BPV, were all during the period of committing the crime (July, 2006) at the address Küti 17 in Tallinn and their management bodies included Aleksandr Rotko and Olga Kotova in the capacity of the Council and Board Members. This is confirmed by the print out of the commercial register on the above companies.

On 04.07.2005 Tallinn City Court made a decision, which upheld the action of the Republic of Estonia against OÜ B and E, AS Verest, OÜ Agrin Partion and ELA Tolli AS, but dismissed the action of the Republic of Estonia against AS BPV. On 01.03.2006 the Tallinn Circuit Court made a decision, which upheld the appeal of the Republic of Estonia and upheld the action of the Republic of Estonia additionally also against AS BPV. On 07.06.2006 the Supreme Court refused to grant the leave to appeal to the cessations of the defendants and the judgment of Tallinn Circuit Court came into force on 01.03.2006.

The bailiff ordered the defendant to voluntary compliance by the deadline 31.07.2006.

On 17.07.2006 representatives of the Ministry of Justice went to the neighboring registered immovable (real property) to observe the situation, which resulted in submission of an additional claimant's statement on 19.07.2006, in which the claimant disclosed to the bailiff that the illegal holders (including AS BPV) have started removal of significant parts of the buildings which are subject to transfer to the Republic of Estonia in the composition of buildings and immovable property. They had begun to remove the concrete pier cover plates and performed other demolition works. These observations were made by Tiit Einberg, representative of the Maritime Museum operating in the neighboring registered immovable. On 27.07.2006, Harju County Court made a ruling regarding the bailiff's request to stay in the territory and the buildings of Küti 17 and Küti 17 and for establishing a manned security at the expense of the claimant. Under the Ruling the bailiff with representatives of the Ministry of Justice entered on 28.07.2006 to the territory of the Seaplane Harbor and observed the situation of the property of the Seaplane Harbor. The bailiff identified in the Seaplane Harbor demolition and removal of various properties, which is fixed in the relevant report.

As a result of the enforcement procedure carried out on 01.08.2006, the Republic of Estonia took the buildings and the territory located in Küti 17 and Küti 17a into its possession.

The proprietary loss caused to the Republic of Estonia by the broken and removed objects according to the initial report of criminal offense consisted of the following:
1)   Removal of the cover plates of the berth                                  1,680,000 kroons
2)   Removing of railway rails                                                        156,060 kroons

Translated by Anna Yastrebova.
The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for
provi...                    EXT-ROTKO-000045

| | | |
|---|---|---|
| 3) | Damaging of the building of the boiler house and removal of the boilers | 12,500 kroons |
| 4) | Removal of boilers from the wood industry building, | 25,000 kroons |
| 5) | Cutting off of the water, heat and power supply of the administrative building | 54,300 kroons |
| 6) | Removal of the hatches of the openings of the seaplane hangar canopy | 20,000 kroons |
| 7) | Removal of gates and destruction of locks | 40,400 kroons |
| | TOTAL | 1,988,260 kroons |

The testimony of the witnesses (Valdo Seiler, Tiit Einberg, Olga Savitskaja, Aleksei Bassenkov, Tõnu Rinaldi, Olga Novoseltseva) heard in the course of criminal proceedings has confirmed that the berth plate and railway rails were removed in the summer of 2006, and the orders for that were issued by Aleksandr Rotko. Although Olga Kotova was formally a member of the management board of AS BPV, she worked in fact as the company secretary and the activities of the company were actually led Aleksandr Rotko.

In the course of the criminal proceedings it was identified that the removed railway rails were sold by AS BPV to the company AS Kuusakoski an entity engaged in buying scrap metal on 26.07.2007 at 173,160 kroons, plus VAT.

The removal and destruction of property carried out in the territory of Küti 17 and Küti 17a, Tallinn, is also fixed in the protocol of inspection of the scene on 28.09.2006.

Based on the above Aleksandr Rotko (personal identification number 34902270228) is suspected of committing an offense qualified under the PC § 203, which consisted in his being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who are the Board Members of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, from 07.06.2006 to 01.08.2006 destroyed and damaged intentionally the buildings and facilities in the possession of the Republic of Estonia located in Küti 17 and 17a, Tallinn, by which they caused significant damage to the Republic of Estonia. Namely without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, important parts of the berth - road surface plates in size 0.14 x 2.00 x 6.00, in total 460 pieces, cover plates in size 0.13x1,23x1,6, the total of 164 pieces and cover plates in size 0.13x1,23x 0.94, in total 35 pieces - were removed on the order of Aleksandr Rotko and in the knowledge of Olga Kotova in the registered immovable in Tallinn, Küti 17 and 17a, creating a damage to the Republic of Estonia to the extent of the cost of the plates, i.e., in the amount of 1,755,096.60 kroons.

Also, Aleksandr Rotko is suspected of committing an offense qualified under the PC § 203, which consisted in him being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the

Translated by Anna Yastrebova.
The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for provision of a knowingly false translation.

EXT-ROTKO-000046

Supervisory Board Member of Ela Toll AS, from 07.06.2006 to 01.08.2006 destroyed and damaged intentionally the buildings and facilities in the possession of the Republic of Estonia located in Küti 17 and 17a, Tallinn, by which they caused significant damage to the Republic of Estonia. Namely without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, gates were removed on the order of Aleksandr Rotko and in the knowledge of Olga Kotova in the registered immovable in Tallinn, Küti 17 and 17a, and were destroyed, creating a damage to the Republic of Estonia in the total amount of 33,040 - kroons.

In total, Aleksandr Rotko and Olga Kotova caused property damage to the Republic of Estonia in the amount of 1,788,136.60 kroons.

*Thus Aleksandr Rotko has committed damage and destruction of a thing of another, which has caused significant damage to the owner, the Republic of Estonia, i.e., he has committed crimes qualified under PC § 203.*

Also Aleksandr Rotko is suspected of committing offense qualified under PC § 201 subsection 2 clause 4, namely his being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Tolli AS jointly and in coordination with Olga Kotova, who is the Board Member of Agrin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Tolli AS, performed from 2000 until 01.08.2006 unlawful possession in the territory belonging to the Republic of Estonia in Küti 17 and Küti 17a, Tallinn. During the period 07.06.2006 to 01.08.2006 on the order Aleksandr Rotko and in the knowledge of Olga Kotova unlawfully, i.e., without the permission of the Ministry of Justice, the representative of the Republic of Estonia, in the territory located at Küti 17 and 17a, Tallinn, removed railroad rails belonging to the Republic of Estonia with total weight of 66.6 tons. On 26.07.2006, Olga Kotova and Aleksandr Rotko sold the unlawfully removed rails under the name of AS BPV to AS Kuusakoski in the amount of 204,328,8 kroons, by which they used the movable property of another in their illegal possession, i.e., railroad rails belonging to the Republic of Estonia, unlawfully to the benefit of a third party. From the sale of railway rails, AS BPV received revenue of 204,328.80 kroons.

Aleksandr Rotko is also suspected of committing an offense qualified under the Penal Code § 201 subsection 2 clause 4, which consisted in him being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, arranged from 07.06.2006 to 01.08.2006 unlawfully, i.e., without the permission of the Ministry of Justice, the representative of the Republic of Estonia, in the territory of Tallinn, Küti 17 and 17a, over which they performed unlawful possession 2000 to 01.08.2006, and removal of the boiler from the boiler house (weighing up to 6.4 tons with a minimum value of 13,120 kroons) and embezzled it, removed it from the territory and out of the area for use and disposal.

By the activity described above, Olga Kotova and Aleksandr Rotko caused the Republic of Estonia property damage totaling 217,448 kroons.

*Thus, Aleksandr Rotko's group has committed using the movable property of another in their possession for their own benefit and for the benefit of the third person, i.e., crimes that are qualified under PC § 201 subsection 2 clause 4.*

Translated by Anna Yastrebova.          EXT-ROTKO-000047
The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for

Aleksandr Rotko immediately began to avoid criminal proceedings. It has been discovered that A. Rotko transferred the apartment owned by him at the address Lõime 12-7, Tallinn, Estonia and has not lived in his former place of residence at the address Kungla 4-44, Rakvere, Estonia since the fall of 2006. Witness Olga Novoseltseva gave testimony that she has informed Aleksandr Rotko of the pending criminal proceedings against him. The witness Novoseltseva also gave testimony that since the fall 2006, Rotko and Kotova are located outside of Estonia. As Aleksandr Rotko is declared a fugitive, a surveillance file No 0723000349 has been opened on him. The surveillance activities performed in this framework have established the current location of Aleksandr Rotko  as being in the United States of America, West Virginia State, town of Huntington.

On 25.08.2007, Harju County Court issued a Ruling No. 06730000427 to arrest the fugitive suspect Aleksandr Rotko (personal identification number 34902270228) who is suspected of committing offenses under Penal Code § 201 subsection 2 clause 4 and § 203. A certified copy of the document is attached to this application as Annex 1.

On 29.08.2007, Northern District Prosecutor's Office issued an European arrest warrant on the suspect, Aleksandr Rotko.

Both arrest warrants are in force and valid.

The minutes of the hearing of the witness Olga Novoseltseva, Valdo Seiler, Tiit Einberg, Olga Savitskaja, Aleksei Bassenkov and Tõnu Rinaldi, translated into English, as the evidences in proof of the suspicion of A. Ratko, are attached to this application.
The documents are formalized as Annex 2.

## III RELEVANT PROVISIONS OF CRIMINAL LAW

Following is a description of the relevant sections of the Penal Code of the Republic of Estonia, according to which the act committed by A. Rotko is treated as a crime. Both of these sections (PC § 201 subsection 2 clause 4 and § 203) were valid both at the time of the crime, as well as today.

Penal Code § 201 subsection 2 clause 4 provides that illegally converting into his or her use or the use of a third person movable property which is in the possession of another person or other assets belonging to another person which have been entrusted to the person, by a group or a criminal organization is punishable by a pecuniary punishment or up to 5 years' imprisonment.

Penal Code § 203 provides that injuring or destroying a thing of another, if significant damage is thereby caused, is punishable by a pecuniary punishment or up to 5 years' imprisonment.

Since Penal Code § 201 subsection 2 clause 4 and § 203 are crimes of the second degree, their limitation period under the Code of Criminal Procedure § 81 subsection 1 clause 2 is 5 years from committing of the crime. Pursuant to CCP § 81 subsection 7 clause 1, limitation period will be stop on avoidance of pre-trial proceedings by the suspect until the person is detained or appears to the body conducting the proceedings. Subsection 8 of the Code of Criminal

*Translated by Anna Yastrebova.*
*The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for provision of a knowingly false translation*   EXT-ROTKO-000046   *Anna Yastrebova*

Procedure § 81 provides that in the case provided in § 81 subsection 7 clause 1 of the same Act, the limitation period is not resumed if 15 years have passed from committing the crime. Since in this case A. Rotko started to avoid criminal proceedings the latest by December, 2006, when the summons were wished to be served to him, the limitation period has stopped as of that moment. Rotko has until this day not been detained, nor has he voluntarily appeared to the body conducting the proceedings.

## IV DESCRIPTION OF THE FUGITIVE

Attached to the statement is a photo of A. Rotko as Annex 3. The photo was taken on 19.04.2005 for issuance of the Estonian ID card.

The identification data of the fugitive Aleksandr Rotko is as follows.

Name:          Aleksandr Rotko

Alias :        not known

Date of birth:    27.02.1949

Place of birth:    Ukraine

Passport No:    the last passport No. K2015608 issued by the Republic of Estonia, is now invalid. The passport was valid during the period 25.03.2002 - 25.03.2012.

ID card No:    A1150472, issued on 19.04.2005 by the Republic of Estonia. Validity period 19.04.2005 - 19.04.2015

Citizenship:    Citizen of the Republic of Estonia

Mother's name:  Olga Rotko (DOB 09.07.1924), maiden name not known

Fathers's name:  Mihhail Rotko (DOB 21.05.1921)

Native language: Russian

Gender:        male

Race:          Caucasian

Hair:          dark

Eye color:     is not known

Height:        is not known

Weight:        is not known



*Translated by Anna Yastrebova.*
*The translator is aware of the criminal responsibility as per sections 318 and 321 of the Penal Code for*

EXT-ROTKO-000049

Address:          to our knowledge, city of Huntington, West Virginia State, USA

## V CONCLUSION

I declare that all the above is true to the best of my knowledge. Bearing in mind the above, I am asking you in the name of the Republic of Estonia to extradite Aleksandr Rotko to the Republic of Estonia for carrying out criminal proceedings and bringing charges against him and for his prosecution.

I have made the best efforts to provide evidence for the extradition request. In case, the competent authorities of the U.S. shall require any additional information to solve the application, with all due respect I confirm that I am willing to provide the necessary additional information before a decision is reached.

Maria Entsik
Senior Prosecutor

Annexes:

1) 25.08.2007 Harju County Court Ruling No 06730000427 for arresting A. Rotko;
2) The minutes of the hearing of the witness Olga Novoseltseva, Valdo Seiler, Tiit Einberg, Olga Savitskaja, Aleksei Bassenkov and Tõnu Rinaldi, translated into English;
3) A photo of A.Rotko.

Kriminaalasi nr    06730000427



# KOHTUMÄÄRUS

| | |
|---|---|
| **Kohus** | Harju Maakohus |
| **Määruse tegemise aeg ja koht** | 25. august 2007. a Tallinn |
| **Kriminaalasja number** | 06730000427 |
| **Eeluurimiskohtunik** | Eha Popova |
| **Taotluse esitaja** | prokurör Maria Sutt-Tehver |
| **Taotlus** | kahtlustatava    Aleksandr Rotko vahistamine |
| **Istungil osalenud isikud** | |

## RESOLUTSIOON

1. Vahista tagaotsitavaks kuulutatud kahtlustatav  **Aleksandr Rotko, ik 34902270228,** Eesti Vabariigi kodanik, elukoht teadmata, ei tööta), tema tabamisel.

2. Hiljemalt ülejärgmisel päeval pärast   Aleksandr Rotko  tabamist toimetada kahtlustatav küsitlemiseks eeluurimiskohtuniku juurde.

## Edasikaebamise kord

Määrusele võib KrMS § 136, § 386 ja § 387 lg 1 alusel esitada kümne päeva jooksul alates päevast, mil isik sai vaidlustatavast kohtumäärusest teada või oleks pidanud teada saama, määruskaebuse Tallinna Ringkonnakohtule Tallinna Linnakohtu kaudu.

Vahistamistaotluse läbivaatamisel eeluurimiskohtunik tuvastas:
Põhja Politseiprefektuuri majanduskuritegude talitus menetleb käesolevat kriminaalasja, milles Põhja Ringkonnaprokuratuur alustas 22.09.2006 kriminaalmenetlust KarS § 203 tunnustel selle kohta, et Eesti Vabariigile kuuluva Küti 17 ja Küti 17a Tallinnas asuva kinnistu valduse ülevõtmisel 01.08.2006.a. tuvastati mitmesuguse vara eemaldamine, äraviimine, sh kai katteplaatide eemaldamine, raudteerelsside eemaldamine, katlamaja hoone kohjustamine ja katelde eemaldamine, puidutööstushoonest katelde eemaldamine, administratiivhoone vee-, sooja- ja elektrivarustuse katkestamine, vesilennukite angaari katuse

2

avade luukide eemaldamine, väravate eemaldamine ja lukkude lõhkumine. Esialgsel hinnangul on tekitatud kahju suurus kokku 1 988 260 krooni.

Kriminaalmenetluse käigus on tuvastatud, et ülalviidatud vara rikkumise, eemaldamise ja müügi korraldasid territooriumi endise valdaja AS BPV juhatuse liige Olga Kotova ja selle tegevjuht ja nõukogu liige Aleksandr Rotko.

Eeltoodu alusel kahtlustatakse Aleksandr Rotkod (ik 34902270228, elukoht teadmata) KarS § 203 järgi kvalifitseeritava kuriteo toimepanemises, mis seisnes selles, et tema, olles OÜ Agrin Partion, AS Verest, AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova'ga kes on OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, ajavahemikul 07.06.2006.a kuni 01.08.2006.a rikkusid ja hävitasid tahtlikult Eesti Vabariigi omandis olevaid ehitisi ja rajatisi asukohaga Küti 17 ja 17.a, Tallinn, millega tekitasid Eesti Vabariigile olulist kahju. Nimelt eemaldati Tallinn, Küti 17 ja 17a asuvalt kinnistul asuvalt sadamakailt ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata Aleksandr Rotko korraldusel ja Olga Kotova teadmisel sadamakai olulised osad – teekatteplaadid suuruses 0,14x 2,00x 6,00 kokku 460 tk, katteplaate suuruses 0,13x1,23x1,6 kokku 164 tk ning katteplaate suuruses 0,13x1,23x 0,94 kokku 35 tk, tekitades Eesti Vabariigile kahju plaatide maksumuse ulatuses, s.o. 1 755 096,60 krooni suuruses summas.

Samuti kahtlustatakse Aleksandr Rotko'd KarS § 203 järgi kvalifitseeritava kuriteo toimepanemises, mis seisnes selles, et tema, olles OÜ Agrin Partion, AS Verest, AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova'ga kes on OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, ajavahemikul 07.06.2006.a kuni 01.08.2006.a rikkus ja hävitas tahtlikult Eesti Vabariigi omandis olevaid ehitisi ja rajatisi asukohaga Küti 17 ja 17.a, Tallinn, millega tekitasid Eesti Vabariigile olulist kahju. Nimelt eemaldati Tallinn, Küti 17 ja 17a asuvalt kinnistult ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata Aleksandr Rotko korraldusel ja Olga Kotova teadmisel kinnistu territooriumi väravad ja lõhuti need, millega tekitati Eesti Vabariigile kahju kokku 33 040.- krooni ulatuses.

Kokku põhjustasid Aleksandr Rotko ja Olga Kotova Eesti Vabariigile varalise kahju summas 1 788 136,60 krooni.

Seega on Aleksandr Rotko toime pannud võõra asja rikkumised ja hävitamised, millega on tekitanud asja omanikule Eesti Vabariigile olulise kahju, s.o. kuriteod mis on kvalifitseeritavad KarS § 203 järgi.

Samuti kahtlustatakse Aleksandr Rotko'd KarS 201 lg 2 p 4 järgi kvalifitseeritava kuriteo toimepanemises. Nimelt tema, olles OÜ Agrin Partion, AS Verest, AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova'ga kes on OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, teostasid alates 2000.a aastast kuni 01.08.2006 ebaseaduslikku valdust Eesti Vabariigile kuuluval territooriumil Küti 17 ja 17a Tallinn. Ajavahemikul 07.06.2006 kuni 01.08.2006 eemaldati Aleksandr Rotko korraldusel ja Olga Kotova teadmisel ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn asuvalt territooriumilt Eesti Vabariigile kuulunud raudteerelsid kokku kaaluga 66,6 tonni. Olga Kotova ja Aleksandr Rotko müüsid 26.07.2006a ebaseaduslikult eemaldatud relsid AS BPV nimelt AS Kuusakoskile summas 204 328,8 krooni, millega pöörasid nende ebaseaduslikus valduses

EXT-ROTKO-000052

3

oleva võõra vallasasja, s.o Eesti Vabariigile kuulunud raudteerelsid, ebaseaduslikult kolmanda isiku kasuks. Raudtee relsside müügist sai AS BPV tulu 204 328,8 krooni.

Samuti kahtlustatakse Aleksandr Rotko'd KarS 201 lg 2 p 4 järgi kvalifitseeritava kuriteo toimepanemises, mis seisnes selles, et tema, olles OÜ Agrin Partion, AS Verest, AS BPV nõukogu liige ja Ela Tolli AS juhatuse liige, ühiselt ja kooskõlastatult Olga Kotova´ga kes on OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, korraldasid ajavahemikul 07.06.2006.a kuni 01.08.2006.a ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, territooriumilt: Tallinn, Küti 17 ja 17a, mille üle teostasid alates aastast 2000 kuni 01.08.2006.a ebaseaduslikku valdust, katlamajast katla (kaaluga kuni 6,4 tonni ning maksumusega vähemalt 13 120 krooni) eemaldamise ja omastasid selle, toimetades selle territooriumilt minema ning omaniku kasutus- ja käsutusalast välja.

Eelkirjeldatud tegevusega tekitasid Olga Kotova ja Aleksandr Rotko Eesti Vabariigile varalise kahju kokku summas 217 448 krooni.

Seega on Aleksandr Rotko grupi poolt toime pannud enda valduses oleva võõra vallasasja enda ja kolmanda isiku kasuks pööramised, s.o kuriteod, mis on kvalifitseeritavad  KarS § 201 lg 2 p 4 järgi.

Nimetatud kahtlustusi kinnitavad kriminaalasja materjalide hulgas olevad tunnistajate ütlused, AS-st Kuusakoski ning AS-st Paldiski Sadamatest saadud vastused, äriregistri dokumendid ning teised kriminaalasja materjalid.

Aleksandr Rotko varem kriminaalkorras karistatud ei ole.

Prokurör taotleb  luba  kahtlustatava vahistamiseks. Menetluse käigus on ilmnenud, et Aleksandr Rotko hoiab kriminaalmenetlusest kõrvale ning varjab enda asukohta.
19.12.2006.a saatis uurija tähitud kirjaga kutse Aleksandr Rotko abikaasale Olga Kotovale korraldusega ilmuda 28.12.2006.a Põhja Politseiprefektuuri kahtlustatavana ülekuulamiseks. Kutse tagastati 22.01.2007.a märkega: ei asu antud aadressil. Peale seda teostati jälitusülesande käigus kontrollkäik Aleksandr Rotko ja Olga Kotova viimasesse teadaolevasse elukohta, aadressil Kungla 4 –44, Rakvere, kust saadi vastuseks, et Aleksandr Rotko ja Olga Kotova nimetatud aadressil ei ela.
Kuna kriminaalmenetluse käigus on kindlaks tehtud, et Aleksandr Rotko on võõrandanud endale kuuluva korteri aadressil Lõime 12-7, Tallinn ning oma Eestis olevas elukohas aadressil Kungla 4-44, Rakvere Aleksandr Rotko enam ei ela, ei ole olnud võimalik talle kutset väljastada ning puudub võimalus kindlaks teha Aleksandr Rotko asukoht, ja Aleksandr Rotko on kuulutatud tagaotsitavaks.
Menetlustoimingute käigus on selgunud, et Aleksandr Rotko ja Olga Kotova on peale kuriteo toimepanemist müünud maha enda Eestis asuva vara ning Eestist lahkunud. Tunnistajana üle kuulatud Olga Novoseltseva on oma ütlustes tunnistanud, et Aleksandr Rotko ja Olga Kotova asuvad tema teada väljaspool Eesti Vabariiki (täpne asukoha riik teadmata) ning A. Rotko ja O. Kotova on temaga vajadusel ühendust võtnud telefonitsi alates 2006.a sügisest.
28.12.2006.a võõrandas Olga Kotova Olga Novoseltsevale endale kuuluva sõiduauto s/a Acura 61ZB. Olga Novoseltseva ütluste kohaselt oli võõrandamistehing näilik tehing, mis tehti eesmärgiga muuta auto tegelik võõrandamine neile lihtsamaks, kuna Olga Novoseltseva viibib Eestis. Müügist saadud raha pidi ta üle andma Aleksandr Rotkole.

4

Uurimisasutus ja prokuratuur, saades sõiduki müümise plaanidest teada, esitasid Harju Maakohtule vara arestimise taotluse, mille alusel Harju Maakohus 22.02.2007.a vara tsiviilhagi tagamiseks arestis. Kohtumäärusest sai Olga Novoseltseva teada uurijalt samal päeval so. 22.02.2007.a, mille kohta temalt võeti määrusele allkiri.

09.03.2007.a saatis uurija Olga Novoseltseva palvel temale koopia Harju Maakohtu Kohtumäärusest vara arestimise kohta. 14.märtsil esitas Olga Novoseltseva Tallinna Ringkonnakohtule määruskaebuse vara arestimise määruse peale, põhjendades, et määruskaebuse esitamise tähtaja lasi ta mööda seetõttu, et ei saanud varem kohtumäärusest teadlikuks. O. Novoseltseva väide selle kohta on kohtumäärusel oleva tema allkirjaga ümber lükatud. O. Novoseltseva oma 19.04.2007.a ülekuulamise protokollis tunnistab, et tema ise ei ole määruskaebuse koostajaks, vaid on selle ainult allkirjastanud.

Kuigi O. Novoseltseva tunnistajana ülekuulamise protokollis väitis, et tema ei tea, kelle poolt on nimetatud määruskaebus koostatud ja et tema ei ole Olga Kotova ega Aleksandr Rotkoga sel teemal rääkinud, siis vestluses jälitustöötajaga ütles ta politseivaneminspektor Arseni Vassiljevile, et pärast sõiduauto aresti (täpselt kuupäeva ei mäleta) helistas tema lauatelefonile Aleksandr Rotko, kes karjus tema peale ja ütles, et auto arestimisega seotud dokumendid peab Olga andma teisele inimesele, kes tuleb nende järgi lähiajal. Hiljem tema elukohta tuli keskealine vene keelt kõnelev meesterahvas, kes võttis dokumendid. Hiljem oma postkastist avastas Olga Novoseltseva juba trükitud kaebuse. Nimetatud vestluse kohta on politseivaneminspektor Arseni Vassiljev 12.07.2007 koostanud ja oma allkirjaga kinnitanud õiendi.

Prokuratuur on seisukohal, et Arseni Vassiljevi poolt edastatud teavet tuleb pidada usaldusväärsemaks kui O. Novoseltseva poolt ametlikult antud ütlusi. O. Novoseltseva poolt ametlikult tunnistajana antud ütlused on ebamõistlikud ja ebaveenvad ega seleta vähimalgi määral toimunut. Hinnates sündmusi tervikuna, on ainus võimalik loogiline järeldus, et vara arestimise määruse vaidlustasid O. Kotova ja A. Rotko – ainsad vaidlustamisest huvitatud isikud.

Lisaks eeltoodule tõendab A. Rotko ja O. Kotova teadlikkust kriminaalmenetlusest asjaolu, et nende tagaotsimisest on alates 18.01.2007 teadlikud ka O. Kotova ema Nadežda Kreemann, tema vend Rauno Kreemann ja tema vend Aleksandr Kotov, kellele on korduvalt palutud edasi öelda, et Olga Kotova võtaks ühendust politseiga. Olga Kotova ja Aleksandr Rotko soovi hoiduda aga politseist eemale kinnitab see, et alates 15.01.2007 on jälitustöötaja Arseni Vassiljev korduvalt helistanud Olga Kotova telefoninumbrile 56 492 932, kuid positiivset vastust ei ole saanud. 12.02.2007 võttis toru tundmatu vene keelt kõnelev meesterahvas, kes kuuldes, et A. Vassiljev helistab politseist ja tahab rääkida O. Kotovaga katkestas kõne ja hiljem pole telefoni vastu võtnud.

Kõige eeltoodu kogumis hindamisega on tõendamist leidnud, et Aleksandr Rotko ja Olga Kotova on teadlikud nende suhtes menetletavast kriminaalasjast ning hoiavad kriminaalmenetlusest tahtlikult kõrvale.

Sellest lähtuvalt on 20.02.2007.a koostatud Aleksandr Rotko tagaotsitavaks kuulutamise määrus. KrMS § 140 lg 3 sätestab, et kahtlustatava tagaotsitavaks kuulutamise korral edastatakse politseiprefektuurile koos tagaotsitavaks kuulutamise määrusega ka vahistamismäärus. Arvesse võttes, et Aleksandr Rotko hoidub kõrvale kriminaalmenetlusest, peab prokuratuur vajalikuks kohaldada tema suhtes tõkendit vahistamine.

Kohus, ära kuulanud prokuröri selgitused taotluse juurde ning kontrollinud esitatud materjale, leiab, et esitatud taotlus on põhjendatud ning juhindudes KrMS §dest 21; 24 lg 4; 130; 131; 132 ja PS § 20 asub eeluurimiskohtunik seisukohale, et Aleksandr Rotko tuleb vahistada. Kriminaalasja materjalidest nähtuvalt on A. Rotko teadlik kriminaalmenetlusest, kuid vaatamata sellele on ta realiseerinud oma Eestis asuva vara ning ilmselt Eesti Vabariigist

EXT-ROTKO-000054

5

Jahkunud.   Kriminaalasjas on kogutud küllaldaselt faktilist materjali, mille põhjal on alust lugeda kahtlustus põhjendatuks.  A. Rotko    ei ole reageerinud kutsetele ning on jätnud korduvalt ilmumata menetleja juurde.   Taolised asjaolud annavad aluse eeldada, et kahtlustatav  võib edaspidigi vabaduses viibides jätkata kriminaalmenetlusest kõrvale hoidumist.  Seetõttu asub kohus seisukohale, et on küllaldane alus tagaotsitava kahtlustatava A. Rotko   vahistamiseks.

Eha Popova
kohtunik





Criminal case No 06730000427

# COURT RULING

| | |
|---|---|
| Court | Harju County Court |
| The time and place of making the ruling | 25 August 2007 Tallinn |
| Number of criminal case | 0673 0000427 |
| Preliminary investigation | Judge Eha Popova |
| Body submitting the application | Prosecutor Maria Sutt-Tehver |
| Application | The arrest of the suspect Aleksandr Rotko |

Persons participating in the hearing

RESOLUTION

1.  To arrest a fugitive suspect Aleksandr Rotko, (personal identification number 34902270228 Estonian citizenship, residence unknown, does not work), on his apprehension.

2.  No later than the second day after apprehension of Aleksandr Rotko to take the suspect for questioning to the preliminary investigation judge.

Appeals procedure

Appeal against court ruling can be filed under CCP § 136, § 386 and § 387 section 1 to the District Court of Tallinn through Tallinn City Court within ten days of the date on which the person became aware or should have become aware of the challenged court ruling:

The preliminary investigation judge found out on hearing of the application of arrest:
The Economic Crime Division of the North Police Prefecture handles this criminal case in which on 22.09.2006, Northern District Prosecutor's Office launched criminal proceedings under the attributes of PC § 203 regarding the fact that on the assumption of the possession of the registered immovable property belonging to the Republic of Estonia and located at Küti 17 and Küti 17a in Tallinn on 01.08.2006 was detected removal of various assets, including the removal of berth cover plates, removal of railroad rails, damage to the building of the boiler house and removal of the boilers, removal of the boilers from the building of timber industry, interruption of water, heat and electricity supply in the administration building, removal of the hatches of the opening of the seaplane hangar dome, removal of the gates, and destruction of the locks. Preliminary estimates of the amount of damage caused is a total of 1,988,260 kroons.

This document has been translated by Unicom Tõlkebüroo OÜ and corresponds to the original text in Estonia. The translator has been warned in accordance with sections 318 and 321 of the Penal Code, and subsection 54 (1) of the Information Act

Unicom Tõlkebüroo OÜ
Rita Neerits
Project manager

EXT-ROTKO-000056

Criminal proceedings have identified that the damage, removal and sale of the property referred to above was organized by the Board Member of the former holder of the territory AS BPV Olga Kotova and its chief executive officer and the Supervisory Board Member Aleksandr Rotko.

Based on the above Aleksandr Rotko (personal identification number 34902270228, residence unknown) is suspected of committing an offense qualified under the PC § 203, which consisted in his the being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, from 07.06.2006 to 01.08.2006 destroyed and damaged intentionally the buildings and facilities in the possession of the Republic of Estonia located in Küti 17 and 17a, Tallinn, by which they caused significant damage to the Republic of Estonia. Namely without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, important parts of the berth - road surface plates in size 0.14 x 2.00 x 6.00, in total 460 pieces, cover plates in size 0.13x1,23x1,6, the total of 164 pieces and cover plates in size 0.13x1,23x 0.94, in total 35 pieces - were removed on the order of Aleksandr Rotko and in the knowledge of Olga Kotova in the registered immovable in Tallinn, Küti 17 and 17a, creating a damage to the Republic of Estonia to the extent of the cost of the plates, i.e., in the amount of 1,755,096.60 kroons.

Aleksandr Rotko is also suspected of committing an offense qualified under the PC § 203, which consisted in his being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, from 07.06.2006 to 01.08.2006 destroyed and damaged intentionally the buildings and facilities in the possession of the Republic of Estonia located in Küti 17 and 17a, Tallinn, by which they caused significant damage to the Republic of Estonia. Namely without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, gates were removed on the order of Aleksandr Rotko and in the knowledge of Olga Kotova in the registered immovable in Tallinn, Küti 17 and 17a, and were destroyed, creating a damage to the Republic of Estonia in the total amount of 33,040 - kroons.

In total, Aleksandr Rotko and Olga Kotova, caused property damage to the Republic of Estonia in the amount of 1,788,136.60 kroons.

Thus Aleksandr Rotko has committed damaging and destruction of a thing of another, by which he has caused significant damage to the owner, the Republic of Estonia, i.e., he has committed crimes qualified under PC § 203.

Aleksandr Rotko is also suspected of committing offense qualified under PC § 201 subsection 2 clause 4, namely him being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, carried out from 2000 until 01.08.2006 unlawful possession in the territory at Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia. During the period 07.06.2006 to 01.08.2006 on the order Aleksandr Rotko and in the knowledge of Olga Kotova were unlawfully, i.e., without the permission of the Ministry of Justice, the representative of the Republic of Estonia, in the territory located at Küti and 17a, Tallinn, removed railroad rails belonging to the Republic of Estonia with total weight of

This document has been translated by Unicom Tõlkebüroo OÜ and corresponds to the original text in Estonia. The translator has been warned in accordance with sections 318 and 321 of the Penal Code, and subsection 54 (1) of the Public Information Act.

Rita Meerits
Project manager

66.6 tons. On 26.07.2006, Olga Kotova and Aleksandr Rotko sold the unlawfully removed rails under the name of AS BPV to AS Kuusakoski in the amount of 204,328.80 kroons, by which they converted the movable property of another in their illegal possession, i.e., railroad rails belonging to the Republic of Estonia, unlawfully to the use of a third party. From the sale of railway rails, AS BPV received revenue 204,328.80 kroons.

Aleksandr Rotko is also suspected of committing an offense qualified under the Penal Code 201 subsection 2 clause 4, which consisted in him being the Supervisory Board Member of OÜ Agrin Partion, AS Verest, AS BPV and the Board Member of Ela Toll AS, jointly and in coordination with Olga Kotova who is the Board Member of OÜ Agin Partion, AS Verest, AS BPV and the Supervisory Board Member of Ela Toll AS, arranged from 07.06.2006 to 01.08.2006 unlawfully, i.e., without the permission of the Ministry of Justice, the representative of the Republic of Estonia, in the territory of Tallinn, Küti 17 and 17a, over which they performed unlawful possession 2000 to 01.08.2006, removal of the boiler from the boiler house (weighing up to 6.4 tons and a minimum value of 13,120 kroons) and embezzled it, removed it from the territory and out of the area of use and disposal of the owner.

By the activity described above, Olga Kotova and Aleksandr Rotko caused the Republic of Estonia property damage totaling 217,448 kroons.

Thus, Aleksandr Rotko's group has committed conversion of the movable property of another in their possession to their own use and to the use of a third person, i.e., crimes that are qualified under PC § 201 subsection 2 clause 4.

These suspicions are confirmed by the witness statements included in the material of the criminal case, responses received from AS Kuusakoski and AS Paldiski Sadamad, documents of the commercial registry and other materials of the criminal case.

Aleksandr Rotko does not have a criminal record.

Prosecutor seeks permission to arrest the suspect. During the proceedings, it appears that Aleksandr Rotko is avoiding the criminal proceedings and hiding his location.

On 19.12.2006, the investigator sent by registered mail an invitation to Aleksandr Rotko's wife Olga Kotova with an order to appear on 28.12.2006 to the North Police Prefecture for interrogation as a suspect. The invitation was returned on 22.01.2007 with the words: not located at this address. After that, in the course of surveillance tasks, a verification visit was carried out to the last known residence of Aleksandr Rotko and Olga Kotova at the address Kungla 4-44, Rakvere, from where was received the response that Aleksandr Rotko and Olga Kotova do not live at this address.

As the criminal proceedings have identified that Aleksandr Rotko has transferred the apartment belonging to him at the address Lõime 12-7, Tallinn and does no longer live in his place of residence in Estonia located at the address Kungla 4-44, Rakvere, it has not been possible to issue an invitation to him and there is no way to identify the location of Aleksandr Rotko, and Aleksandr Rotko has been declared a fugitive.

The procedural act has revealed that Aleksandr Rotko and Olga Kotova have after committing the crime sold off their assets located in Estonia and have left Estonia. Olga Novoseltseva, who was heard as a witness, has admitted in her testimonies that to her knowledge, Aleksandr Rotko and Olga Kotova reside outside of Estonia (the exact country of residence unknown), and A. Rotko and O. Kotova have been contacting her if necessary by telephone since fall 2006.

This document has been translated by Unicom Tõlkebüroo OÜ and corresponds to the original text in Estonia. The translator has been warned in accordance with sections 318 and 321 of the Penal Code, and subsection 54 (1) of the Public Information Act.

Riia Meeko
Project manager

On 28.12.2006, Olga Kotova transferred to Olga Novoseltseva the automobile Acura 61ZB belonging to her. According to the testimony of Olga Novoseltseva, the transfer transaction was an ostensible transaction, the objective of which was to make the actual transfer of the car easier for them, as Olga Novoseltseva is residing in Estonia. She was supposed to transfer the money received from the sale to Aleksandr Rotko.

The investigative body and the Prosecutor's Office, having learned about the plans to sell the vehicle, filed to the Harju County Court a request of seizure of property, pursuant to which on 22.02.2007, Harju County Court seized the property to secure the civil action. Olga Novoseltseva learned about the ruling of the court from the investigator on the same day, i.e., on 22.02.2007, regarding which, her signature was taken to the ruling.

On 09.03.2007, the investigator sent to Olga Novoseltseva on the request of the latter a copy of Court Ruling of the Harju County Court for seizure of property. On March 14, Olga Novoseltseva filed an appeal against the court ruling in Tallinn Circuit Court for seizure of property, arguing she had failed to meet the deadline to appeal against the court ruling because she had not been previously aware of the court ruling. The above claim of O.Novoseltseva regarding being unaware of the ruling has been refuted by her signature on the court ruling. O.Novoseltseva acknowledges in her interrogation report of 19.04.2007 that she herself has not prepared the appeal against the court ruling, but she is only the signatory thereof.

While O. Novoseltseva stated in her witness statement report that she does not know who has prepared the above appeal against the court ruling and that she has not talked to Olga Kotova and Aleksandr Rotko on this subject, then during the conversation with the surveillance employee, she said to the senior police inspector Arseny Vasilyev, that after the seizure of the car (she does not remember the exact date) Aleksandr Rotko called on her landline, yelled at her and said that Olga must give the documents relating to the car seizure to someone else, Olga, who will come to collect them in the nearest future. Later, a middle-aged Russian-speaking man came to her residence and took the documents. Later Olga Novoseltseva discovered in her mailbox the already printed appeal against the court ruling. Regarding this interview, police inspector Arseny Vasilyev prepared and signed a statement on 12.07.2007.

The Prosecutor's Office is of the view that the information provided by Arseny Vasiliev to be considered more reliable than the officially provided statements of O. Novoseltseva. The statements officially provided by O. Novoseltseva as the witness testimony are unreasonable and implausible and do not explain what happened in the slightest. Assessing the events as a whole, the only logical conclusion can be that the ruling of seizure of the property was challenged by O. Kotova and A. Rotko as the only parties interested in the challenging thereof.

In addition to the above, the awareness of A. Rotko and O. Kotova of the criminal proceedings is proved by the fact of their being fugitives as of 18.01.2007 known also to the mother of O. Kotova, Nadezhda Kreemann, her brother Rauno Kreemann and her brother Aleksandr Kotov, to who it has been invited to convey on several occasions that Olga Kotova should contact the police. The wish of Olga Kotova and Aleksandr Rotko to avoid the police is confirmed by the fact that as of 15.01.2007 the surveillance staff Arseny Vasilyev has repeatedly called Olga Kotova's phone number 56492932, but has not received a positive response. On 12.02.2007, an unknown Russian speaking man answered the phone, who having heard that A. Vasilyev is calling from the police and wants to talk to O. Kotova, hung up and has not answered the phone since.

On the assessment of the total of the above, it has been proven that Aleksandr Rotko and Olga Kotova are aware of the pending criminal case against them and are deliberately avoiding the criminal proceeding.

This document has been translated by Unicom Tõlkebüroo OÜ and corresponds to the original text in Estonian. The translator has been warned in accordance with sections 318 and 321 of the Penal Code, and subsection 54 (3) of the Public Information Act.

Based on the above, a ruling of declaration of Aleksandr Rotko a fugitive was prepared on 20.02.2007. CCP § 140 section 3, which provides that if a suspect is declared a fugitive, an arrest warrant shall be sent to the police prefecture together with the ruling of the declaration as a fugitive. Considering the fact that Aleksandr Rotko is avoiding criminal proceedings, the Prosecutor's Office deems necessary to apply on him a preventive measure of "arrest".

The court, after hearing the prosecutor's explanations accompanying the request, and having reviewed the submitted material, considers that the request is reasonable and being guided by CCP §§ 21, 24 subsection 4, 130, 131, 132 and Constitution § 20, the preliminary investigation judge holds that Aleksandr Rotko is to be arrested. The criminal case materials show that A. Rotko is aware of the criminal proceedings, but in spite of this he has realized his property located in Estonia and has probably left the Republic of Estonia. In the criminal case has been gathered enough factual material on which there are grounds to deem the suspicion justified. A. Rotko has not responded to summons and has repeatedly failed to appear at the body conducting the proceedings. Such facts provide a basis to assume that the suspect may while remaining at large continue avoiding the criminal proceedings. Therefore, the court considers that there is sufficient reason to arrest the suspect fugitive A. Rotko.

Judge Eha Popova

This document has been translated by Unicorn Tõlkebüroo OÜ and corresponds to the original text in Estonia. The translator has been warned in accordance with sections 318 and 321 of the Penal Code, and subsection 54 (1) of the Public Information Act.

Kits Meerits OÜ
Project manager

EXT-ROTKO-000060



# PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA TÄIENDAVA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

"20" veebruar 2007a                                                       Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  13.00 *[kellaaeg]*

Põhja   Politseiprefektuuri   kriminaalosakonna   majanduskuritegude   talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja Olga Novoseltseva isikuandmed  lisatud ümbrikus protokolli juurde

### Tunnistaja õigused ja kohustused:
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras- või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti- või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et  ütluste andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb vastutus KarS §-de 318 ja 320 järgi.

                                                     (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ...........................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

                                                     (tõlgi allkiri)

                                                     KOOPIA ÕIGE



4. Ütlused:

Millal ning kelle käest Te ostsite endale s/a Acura Trooper SLX reg nr 61ZGB?

Ostnud ma endale seda autot ei ole, Olga Kotova lihtsalt kirjutas selle auto minu nimele.

Mis eesmärgil auto Teie nimele vormistati?

Olga Kotova helistas mulle, ma arvan, et see võis olla päev, enne seda kui see auto minu nimele vormistati ARK-is so. Siis 27.12.2006.a, kuid päris kindlel ma enam ei ole. Ei mäleta kas Olga Kotova helistas mulle mobiile või siis kodusele telefonile. Kuid ta helistas, siis küsis, kas ma olen nõus, et auto kirjutatakse minu nimele ja ma müün selle auto edasi. Ma olin nõus sellega.

Mis Olga Kotova tõi põhjuseks, et see auto on vaja Teie nimele kirjutada edasi müügi eesmärgil?
Olga Kotova tõi põhjuseks selle, et kuna  ta Tallinnas ei viibi, siis ei ole tal võimalik auto müügiga tegeleda ning seetõttu palus ta mul selle auto enda nimele kirjutada.
Ma olin koheselt sellega nõus ning kas järgmine  või ülejärgmine pave me läksimme ja vormistasime selle ARK-is minu nimele ümber.  Saime temaga kokku minu maja läheduses olevas bussi peatuses, kuhu Olga Kotova oli juba tulnud.  Olga Kotova helistas ja tellis takso ja me sõitsime ARK-i. Minu meelest oli see kusagil Mustamäel. Ise ma sinna minna ei oskaks. Kõigepealt läksime sinna ARK-i kõrval olevasse parklasse, kus see auto seisis. Kõigepealt me vormistasime seal mingid paberid. Mis paberitele ma seal alla kirjutasin, ma täpselt ei tea, kuna kõik toimus eesti keeles. Ma sain aru, et see auto kuulus enne Olga Kotovale ning see auto oli seal enne juba müügis. Pärast läksime ARK-i ja vormistasime mingid paberid, mis paberid me seal vormistasime täpselt ei tea, tean et see auto vormistati minu nimele. Pärast ARK-I läksime uuesti sinna müügiplatsile, kus mulle anti see leping, mille ma uurijale edasi annan. Seejärel sõitsime taksoga linna. Olga Kotova lihtsalt ütles mulle, et kui auto müügi eest raha laekub, siis Aleksandr Rotko annab mulle telefoni teel teada, kuhu raha kanda.

Juhul kui auto müüakse maha. Kuidas ning kellele te sellest teatate, et saaksite müügist laekunud raha üle kanda?
Teatan sellest Aleksandr Rotkole, siis kui ta mulle ise helistab. Minul endal ei ole ühtegi Olga Kotova ja Aleksandr Rotko telefoninumbrit. Täpsustan, mul on Olga Kotova mobiili number 56492932. Seda, millal ma talle ise oleks helistanud, ei tea.

Mis põhjusel Aleksandr Rotko helistab ainult laua telefoni?
Ei osaka öelda, see on vist soodsam

Kas Te teate praegusel hetkel teate Aleksandr Rotko ja Olga Kotova asukohta?

Täpselt ei tea, aga vist Rotko on Ameerikas. Kus Olga Kotova asub ei tea. Ei mäleta, kas kohtasin teda viimati postkontoris peale auto tehingut või enne, igaljuhul jah, need olid kaks viimast kohtumist temaga. Telefoni teel ei ole ma temaga suhelnud peale seda.

EXT-ROTKO-000063

Mis põhjusel Te Olga Kotovale ei helista, kui auto on maha müüdud?

Ma ei näe põhjust miks ma peaks helistama Olga Kotovale, kuna see auto on ju tegelikult kuulunud kogu aeg Aleksandr Rotkole. Ma sain sellest aru nii, et kui Aleksandr Rotko siit lahkus Ameerikasse, siis vormistas ta selle auto umber Olga Kotova nimele, et tema tegeleks müügiga ning nüüd kui Olga Kotoval ei ole aega selle auto müügiga tegeleda, siis palus ta see auto minu nimele vormistada, et saaks mina selle auto maha müüa, kui leidub ostja. Seda et nad on abielus ma tõepoolest kuulsin esimest korda uurija käest ning seetõttu ei osanud arvata, et ma võiks auto müügist teatada ka Olga Kotovale.

5.Märkused protokolli kohta: *Протокол с моих слов записан верно и мне прочитан.* (подпись)

*[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]*

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp: *14.00* [kellaaeg]

*Raano Tihhu* (allkiri)

*[menetlejaametniku nimi]*

*Olga Novoseltseva* (allkiri)

*[tunnistaja nimi]*

1)Nimi: **Olga Novoseltseva**
*[ees- ja perekonnanimi]*

2)Isikukood või sünniaeg: 47203270350
*[isikukoodi puudumisel sünniaeg]*

3)Kodakondsus: eesti
*[eesti, vene jm]*

4)Haridus: keskharidus
*[alg-, põhi-. kesk-, keskeri-, kõrgem haridus]*

5)Elu- või asukoht: Liikuri 36-26, Tallinn
*[address või jäetakse märkimata tunnistaja taotlusel]*

6)Töökoht või õppeasutus: OÜ Ella Kaubandus
*[nimetus või jäetakse märkimata tunnistaja taotlusel]*

7)Kontaktandmed: tel: 6352096
*[sidevahendi number või e-posti aadress]*

8)Suhe kannatanu ja kahtlustatavaga: tööandja
*[mis laadi suhted on kannatanu ja kahtlustatavaga]*

9)Isikusamasus tuvastatud: A0248514
*[dokumendi nimetus vms]*



KOOPIA õige

N. Linnabe



# PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 09" jaanuar 2006a                                    Tallinn *[uurimistoimingu koht]*

Uurimistoimingu algus  10.00 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja Olga Novoseltseva isikuandmed  lisatud ümbrikus protokolli juurde

**Tunnistaja õigused ja kohustused:**
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku
viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et  ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

_____                (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ...... *Galina    Mägi* ...............................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

_____                (tõlgi allkiri)

KOOPIA ÕIG[E]

4. Ütlused:

- Mis ajavahemikul ja kellena Te töötasite AS BPV ja OÜ-s Ella Kaubanduse?

EXT-ROTKO-000066

AS BPV töötasin ma ajavahemikul 14.märts 2002.a kuni 01.09.2006.a raamatupidajana ning OÜ Ella Kaubandus töötan raamatupidajana kuni tänase päevani. Algul tegeles Ella Kaubandus ärikonsultatsioonidega, alates septembrist käesoleval aastal tegeleb ehituskraana rendiga.

- Kes juhtis firma igapäeva tegvust AS-is BPV ja OÜ-s Ella Kaubanduse?

Nii firmas BPV kui ka Ella Kaubandus juhib igapäevategevust Aleksandr Rotko. Praegusel hetkel Aleksandr Rotko Eestis ei viibi, ta helistab mulle ainult telefoni teel. Ta helistab mu kodusel telefonile 6352 096. Viimati helistas ta mulle umbes kolm päeva tagasi ja palus mul korraldada kraanale tehniline ülevaatus.

- Millised ülesanded olid Olga Kotoval AS BPV?

Olga Kotoval olid sekretäri ülesanded.

- Kas Te olite teadlik, et Olga Kotova oli tegelikult AS BPV juhatuse liige, mitte Aleksandr Rotko?

Jah, ma olin teadlik, et Olga Kotova on juhatuse liige.

- Kelle korraldusel ja millal eemaldati aadressil Küti tn 17 ja Küti tn 17.a lennusadama territooriumilt sadamakai katteplaadid, lõhuti osaliselt katlamaja ning eemaldati sealt katel, viidi ära raudteerelsid, katkestati vee- ja elektrivarustus?

Ei tea, kelle korraldusel. Võin oletada, et selle korralduse andis Aleksandr Rotko, kuna keegi teine seal korraldusi ei jaganud. Millal need sealt ära viidi, täpselt ei tea, kuid see oli vahetult enne seda kui me sealt lahkusime. Seda, millal kes või kuhu need viis ma ei tea.

- Kas Te olete teadlik kuhu viidi raudteerelsid, kuhu viidi sadamakai katteplaadid, kuhu viidi eemaldatud katlamaja?

Kuhu need asjad viidi või kellele müüdi, ma enam ei mäleta. Mäletan, et mingi osa asjadest müüdi Paldiski Sadamale, aga mis täpselt ja millises summas, seda enam küll ei mäleta.

- Kellel oli õigus kasutada AS BPV arveid.

Kõik, mis puudutas palkasid, tegin mina, ülejäänu osas oli õigus Aleksandr Rotkol.

- Kas Te olete teadlik sellest, kas Aleksandr Rotko omab välismaal mingisuguseid firmasid.

Ei oska öelda, tean, et tal olid mingid sidemed välismaal, aga kus või kellega täpselt, seda ei tea. Tean, et mingisugune firma kandis AS BPV rahasid üle investeerimise eesmärgil, aga mis firma see oli, seda ei mäleta.

- Kas Te olete teadlik millega tegeleb praegusel hetkel Aleksandr Rotko ja Olga Kotova ning kus nad elavad?

Ei tea millega Aleksandr Rotko praegu tegele ega tea, kus ta elab. Samuti ei oska ma öelda, millal ta Eestisse tagasi tuleb.

Millega tegeleb praegu Olga Kotava, ei oska öelda. Nägin teda viimati juhuslikult Tallinnas peapostkontoris. Minu teada elab ta Rakveres, aga kindel ei ole. Tallinnas elades rentis ta korterit.

EXT-ROTKO-000067

5.Märkused protokolli kohta: _Протокол объявление а [handwritten]_
_..............._ _..............._ [handwritten]

*[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]*

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp: /10.45[kellaaeg]
K.Tehve ..............................    _Olga Novoselezeva_ [signature]

*[menetlejaametniku nimi]*    *[tunnistaja nimi]*

_N. Lihuarsa_ [signature]

*Translation from Estonian*



## NORTH POLICE PREFECTURE

### MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000225

9th January 2007                                                                  Tallinn

Investigative proceeding started at: 10:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
*[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness Olga Novoseltseva, personal data enclosed with the minutes in an envelope

The rights and obligations of witness:
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____/signature/_____          (signature of witness)

3. Investigative proceeding is attended by interpreter: ..... Galina Mägi ..... *[name and contact address]* who has been warned of the liability for the unjustified refusal to perform his or her

duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

_____/signature/_____       (signature of interpreter)

4. Testimony:

- In which time period and on what position did you work in AS BPV and in OÜ Ella Kaubanduse?

In AS BPV I worked in the time period from 14th March 2002 until 01.09.2006 as a book-keeper and in OÜ Ella Kaubandus I am working as a book-keeper to this day. At first Ella Kaubandus was engaged in business consulting, starting from September this year it is engaged in the lease of building crane.

- Who directed the regular operation of the company in AS BPV and in OÜ Ella Kaubanduse?

In the company BPV as well as in Ella Kaubandus the regular operation is directed by Aleksandr Rotko. At present Aleksandr Rotko is not staying in Estonia, he only calls me by phone. He calls me on my home number 6352 096. Last time he called me about three days ago and asked me to arrange technical inspection of the crane.

- What were the duties of Olga Kotova in AS BPV?

Olga Kotova had the duties of a secretary.

- Were you aware, that Olga Kotova was actually a member of management board of AS BPV, and not Aleksandr Rotko?

Yes, I was aware, that Olga Kotova was a member of management board.

- On whose order and when from the territory of the Seaplane Harbor at the address Küti street 17 and Küti street 17a, Tallinn, were removed cover slabs of the dock, was partially destructed the boiler house and removed from there the kettle, were taken away railroad tracks, was cut off the water supply and electricity supply?

I do not know, on whose order. I can guess, that such order was given by Aleksandr Rotko, as no-one else gave orders there. When they were taken away from there, I do not know exactly, but it was directly before the time we left the place. When, who and where to took them, I do not know.

- Are you aware, where the railroad tracks were taken to, where the cover slabs of the dock were taken to, where the removed boiler house was taken to?

Where these objects were taken to or to whom they were sold, I do not remember any more. I remember, that some part of the objects were sold to Port of Paldiski, but what objects exactly and in what sum, I do not remember any more.

- Who was authorized to use the accounts of AS BPV?

Everything concerning salaries was done by me, the remaining issues were in the competence of Aleksandr Rotko.

- Do you know if Aleksandr Rotko holds any companies abroad?

I cannot tell, I know, that he had some connections abroad, but where or with whom, I do not know. I know, that some company transferred funds of AS BPV for investment purposes, but which company it was, I do not remember.

EXT-ROTKO-000070

• <u>Do you know, what are Aleksandr Rotko and Olga Kotova engaged in at present and where do they live?</u>

I do not know what is Aleksandr Rotko engaged in at present and I do not know where he lives. I also cannot tell when he will return to Estonia.

What is Olga Kotova engaged in at present, I cannot tell. I saw her last time by chance in Tallinn at the central post office. As far as I know, she lives in Rakvere, but I am not sure. When she lived in Tallinn, she leased an apartment.

*Translation from Russian*
5. Notes on minutes:  The minutes have been written according to my words correctly and translated to me into Russian. */signature/*
*[contents or absence of notes, minutes of hearing are read personally or read out]*

*Translation from Estonian*
6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: 10:45  *[time]*

… K. Tehver */signature/* ……….                     …Olga Novoseltseva  */signature/* ….
*[name of person conducting the proceeding]*                        *[name of the witness]*

*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*



*Translation from Estonian*

1) Name: **Olga Novoseltseva**
*[given names & surname]*

2) Personal identification code or date of birth: 47203270350
*[date of birth if the personal identification code is missing]*

3) Citizenship: Estonian
*[Estonian or other]*

4) Education: high education
*[elementary, basic, high, vocational, higher]*

5) Residence or location: Liikuri 36-26, Tallinn
*[address or will not be stated upon request of the witness]*

6) Place of work or educational institution: OÜ Ella Kaubandus
*[name or will not be stated upon request of the witness]*

7) Contact data: phone: 6352096
*[number of communication means or e-mail address]*

8) Relation to victim and suspect: employer
*[what is the kind of relations]*

9) Identity established by: A0248514
*[name of document, etc.]*

*/signature/*



*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*



## PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA TÄIENDAVA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 20" veebruar  2007a                                                        Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  13.00 *[kellaaeg]*

Põhja   Politseiprefektuuri   kriminaalosakonna   majanduskuritegude   talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja Olga Novoseltseva isikuandmed  lisatud ümbrikus protokolli juurde

### Tunnistaja õigused ja kohustused:
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemisest süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku
viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et   ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

_____                        (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

                                                         (tõlgi allkiri)



# PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA TÄIENDAVA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 20" veebruar  2007a                                                    Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  13.00 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja Olga Novoseltseva isikuandmed  lisatud ümbrikus protokolli juurde

### Tunnistaja õigused ja kohustused:
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluse andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil nioia päritolusse, kunstlikku
viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaaduse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

_____            (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

_____                       (tõlgi allkiri)



4. Ütlused:

Millal ning kelle käest Te ostsite endale s/a Acura Trooper SLX reg nr 61ZGB?

Ostnud ma endale seda autot ei ole, Olga Kotova lihtsalt kirjutas selle auto minu nimele.

Mis eesmärgil auto Teie nimele vormistati?

Olga Kotova helistas mulle, ma arvan, et see võis olla päev, enne seda kui see auto minu nimele vormistati ARK-is so. Siis 27.12.2006.a, kuid päris kindlel ma enam ei ole. Ei mäleta kas Olga Kotova helistas mulle mobiile või siis kodusele telefonile. Kuid ta helistas, siis küsis, kas ma olen nõus, et auto kirjutatakse minu nimele ja ma müün selle auto edasi. Ma olin nõus sellega.

Mis Olga Kotova tõi põhjuseks, et see auto on vaja Teie nimele kirjutada edasi müügi eesmärgil?

Olga Kotova tõi põhjuseks selle, et kuna ta Tallinnas ei viibi, siis ei ole tal võimalik auto müügiga tegeleda ning seetõttu palus ta mul selle auto enda nimele kirjutada.

Ma olin koheselt sellega nõus ning kas järgmine  või ülejärgmine pave me läksimme ja vormistasime selle ARK-is minu nimele ümber.  Saime temaga kokku minu maja läheduses olevas bussi peatuses, kuhu Olga Kotova oli juba tulnud.  Olga Kotova helistas ja tellis takso ja me sõitsime ARK-i. Minu meelest oli see kusagil Mustamäel. Ise ma sinna minna ei oskaks. Kõigepealt läksime sinna ARK-i kõrval olevasse parklasse, kus see auto seisis. Kõigepealt me vormistasime seal mingid paberid. Mis paberitele ma seal alla kirjutasin, ma täpselt ei tea, kuna kõik toimus eesti keeles. Ma sain aru, et see auto kuulus enne Olga Kotovale ning see auto oli seal enne juba müügis. Pärast läksime ARK-i ja vormistasime mingid paberid, mis paberid me seal vormistasime täpselt ei tea, tean et see auto vormistati minu nimele. Pärast ARK-I läksime uuesti sinna müügiplatsile, kus mulle anti see leping, mille ma uurijale edasi annan. Seejärel sõitsime taksoga linna. Olga Kotova lihtsalt ütles mulle, et kui auto müügi eest raha laekub, siis Aleksandr Rotko annab mulle telefoni teel teada, kuhu raha kanda.

Juhul kui auto müüakse maha. Kuidas ning kellele te sellest teatate, et saaksite müügist laekunud raha üle kanda?

Teatan sellest Aleksandr Rotkole, siis kui ta mulle ise helistab. Minul endal ei ole ühtegi Olga Kotova ja Aleksandr Rotko telefoninumbrit. Täpsustan, mul on Olga Kotova mobiili number 56492932. Seda, millal ma talle ise oleks helistanud, ei tea.

Mis põhjusel Aleksandr Rotko helistab ainult laua telefoni?

Ei osaka öelda, see on vist soodsam

Kas Te teate praegusel hetkel teate Aleksandr Rotko ja Olga Kotova asukohta?

Täpselt ei tea, aga vist Rotko on Ameerikas. Kus Olga Kotova asub ei tea. Ei mäleta, kas kohtasin teda viimati postkontoris peale auto tehingut või enne, igaljuhul jah, need olid kaks viimast kohtumist temaga. Telefoni teel ei ole ka temaga suhelnud peale seda.

B?

minu

auto
nam
sele
inu

asi

tal
le

le
a
t

Mis põhjusel Te Olga Kotovale ei helista, kui auto on maha müüdud?
Ma ei näe põhjust miks ma peaks helistama Olga Kotovale, kuna see auto on ju
tegelikult kuulunud kogu aeg Aleksandr Rotkole. Ma sain sellest aru nii, et kui
Aleksandr Rotko siit lahkus Ameerikasse, siis vormistas ta selle auto umber Olga
Kotova nimele, et tema tegeleks müügiga ning nüüd kui Olga Kotoval ei ole aega
selle auto müügiga tegeleda, siis palus ta see auto minu nimele vormistada, et
saaks mina selle auto maha müüa, kui leidub ostja. Seda et nad on abielus ma
tõepoolest kuulsin esimest korda uurija käest ning seetõttu ei osanud arvata, et ma
võiks auto müügist teatada ka Olga Kotovale.

5.Märkused protokolli kohta: *Протокол с моих слов записан верно*
*и мной прочтен.* (подп)
[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse
menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp: *14.00* [kellaaeg]
*Raaut Tehru* (allkiri)
[menetlejaametniku nimi]

*Olga Novoseltseva* (allkiri)
[tunnistaja nimi]





1)Nimi: **Olga Novoseltseva**
*[ees- ja perekonnanimi]*

2)Isikukood või sünniaeg: 47203270350
*[isikukoodi puudumisel sünniaeg]*

3)Kodakondsus: eesti
*[eesti, vene jm]*

4)Haridus: keskharidus
*[alg-, põhi-, kesk-, keskeri-, kõrgem haridus]*

5)Elu- või asukoht: Liikuri 36-26, Tallinn
*[aadress või jõetakse märkimata tunnistaja taotlusel]*

6)Töökoht või õppeasutus: OÜ Ella Kaubandus
*[nimetus või jõetakse märkimata tunnistaja taotlusel]*

7)Kontaktandmed: tel: 6352096
*[sidevahendi number või e-posti aadress]*

8)Suhe kannatanu ja kahtlustatavaga: tööandja
*[mis laadi suhted on kannatanu ja kahtlustatavaga]*

9)Isikusamasus tuvastatud: A0248514
*[dokumendi nimetus vms]*







*Translation from Estonian*



## NORTH POLICE PREFECTURE

### MINUTES ON SUPPLEMENTARY QUESTIONING OF WITNESS
in the criminal matter No. 06730000225

20th February 2007                                                    Tallinn

Investigative proceeding started at:  13:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
*[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness Olga Novoseltseva, personal data enclosed with the minutes in an envelope

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____
(signature of witness)

3. Investigative proceeding is attended by interpreter: ../signature/.. J. Koovit ... *[name and contact address]* who has been warned of the liability for the unjustified refusal to perform his or

her duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

_____/signature/_____        (signature of interpreter)

4, Testimony:

**When and from whom you purchased for yourself the car Acura Trooper SLX with registration number 61ZGB?**
I have not purchased this car for myself, Olga Kotova just registered this car to my name.

**On what purpose the car was registered to your name?**
Olga Kotova called me, I think, this could be the day before the car was registered to my name in the Motor Vehicle Registration Centre, i.e. 27.12.2006, but I am not absolutely sure any more. I do not remember whether Olga Kotova called on my mobile phone or on my home number. When she called, she asked if I would consent that the car will be registered on my name and I will resell this car. I consented on that.

**What was the reason, told by Olga Kotova, that the car must be registered to your name for the purpose of resale?**
Olga Kotova told the reason to be the fact, that as she is not staying in Tallinn, she is not able to deal with the sale of the car and therefore she asked me to register the car to my name. I consented to it at once and either on the next day or the day after that we went to the Motor Vehicle Registration Centre and re-registered it to my name. We met with her at the bus stop near my house, Olga Kotova was already there. Olga Kotova called a taxi and we drove to the Motor Vehicle Registration Centre. In my mind it was somewhere in Mustamäe. I could not be able to go there by myself. At first we went to the parking lot beside the Motor Vehicle Registration Centre, where the car was standing. First we formalized some documents. What kind of documents I signed there, I do not know exactly, as it all took place in Estonian language. I understood, that the car formerly belonged to Olga Kotova and the car was already there on sale. Afterwards we went to the Motor Vehicle Registration Centre and formalized some documents, what kind of documents we formalized, I do not know exactly, I know, that this car was registered to my name. After the Motor Vehicle Registration Centre we went once again to that sales plot, where this contract was given to me which I hand over to the investigator. Thereafter we drove into town by taxi. Olga Kotova just said to me that when the money will be received for the sale of the car, then Aleksandr Rotko will let me know by phone where I should transfer the money to.

**In case if the car will be sold. In what way and whom you will notify about that, so that you could transfer the money received from the sale?**
I will notify Aleksandr Rotko, when he himself calls me. I myself do not have any phone numbers of Olga Kotova and Aleksandr Rotko. I specify, I do have a mobile phone number of Olga Kotova- 56492932. When I would have called him myself, I do not know.

**On what reason does Aleksandr Rotko make calls only to the desk set?**
I cannot tell, probably this is more favorable.

**Do you at present know the location of Aleksandr Rotko and Olga Kotova?**
I do not know exactly, but probably Rotko is in America. Where is Olga Kotova, I do not know. I do not remember, whether I met her last time at the post office after the transaction with the car or before that, anyway, yes, these were the last two times I met her. I have also not communicated with her by phone after that.

In what reason you do not call Olga Kotova, as the car is sold?
I can see no reason why I should call Olga Kotova, as the car has actually belonged to Aleksandr Rotko all the time. I understood it in such way that when Aleksandr Rotko left and went to America, then he re-registered this car to the name of Olga Kotova, so that she would deal with the sale, and now, as Kotova has no time to deal with the sale of this car, she asked me to register this car to my name so that I could sell the car in case of potential buyer. About the fact, that they are married, I really heard for the first time from the investigator and therefore I could not think that I should also notify Olga Kotova about the sale of the car.

*Translation from Russian*
5. Notes on minutes:  The minutes have been written according to my words correctly and translated to me. */signature/*
*[contents or absence of notes, minutes of hearing are read personally or read out]*

*Translation from Estonian*
6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: 14:00  *[time]*

… Kaari Tehver */signature/* ……….                    …Olga Novoseltseva  */signature/* ….
*[name of person conducting the proceeding]*                    *[name of the witness]*


*/signature/*

*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*



## PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 14" detsember 2006a                                        Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  10.00 *[kellaaeg]*

Põhja   Politseiprefektuuri   kriminaalosakonna   majanduskuritegude   talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja andmed: lisatud ümbrikus protokolli juurde      OLGA SAVITSKAJA

**Tunnistaja õigused ja kohustused:**
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku
viljastamise, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et  ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

_____                        (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ....................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

_____                        (tõlgi allkiri)

4. Ütlused:

Mis ajavahemikul ja kellena Te töötasite AS BPV?
-Alates 2005.a kuni 2006.a juuli kuuni, töölepingu järgi olin mänedzer, aga tegin laojuhataja tööd.

Millise tegevusalaga tegeles AS BPV?
-Saematerjalide töötlemisega, vastavalt kliendi poolt toodud materjalile. Saematerjali töötlesime oma saekaatris.

Kes juhtis firma igapäeva tegvust AS-is BPV? Firma igapäevategevust juhtis   - Aleksandr Rotko.

Millised ülesanded olid Olga Kotoval?
-Olga Kotova oli sekretär.

Kas Te olite teadlik, et Olga Kotova oli tegelikult AS BPV juhatuse liige, mitte Aleksandr Rotko?
- ei seda ma ei teadnud, teadsin, et firmat juhib Aleksandr Rotko.


Kelle korraldusel ja millal eemaldati aadressil Küti tn 17 ja Küti tn 17.a lennusadama territooriumilt, Tallinn kai katteplaadid, lõhuti osaliselt katlamaja ning eemaldati sealt katel, viidi ära raudteerelsid, katkestati vee- ja elektrivarustus?
Kuhu viidi raudteerelsid, kuhu viidi kai katteplaadid, kuhu viidi eemaldatud katlamaja?
-Kui tuli kohtuotsus, et me peame sealt territooriumilt lahkuma, siis ma kasutasin oma võimalust ja võtsin välja puhkuse. Puhkusele läksin ma juuli algul, mis kuupäeval, ma enam täpselt ei mäleta. Kuna oli teada, et ma seal firmas enam tööd ei jätka, siis kohe juuli algul, kui ma puhkusele läksin vorsmistasime ka lahkumisavalduse, nii, et peale seda ei ole ma seal enam kunagi käinud. Seda, kas sealt territooriumilt ka midagi ära viidi, millal või kelle poolt, ma samuti ei tea. Samuti ei ole ma kellegi käest kuulnud, et keegi sealt midagi ära viia soovis.
Pärast sealt töölt lahkumist olen kohtunud Olga Kotovaga, kuid töö asjadest me temaga ei rääkinud.


5.Märkused protokolli kohta: ...Протокол... записан... с моих... слов. и........
......ПЕРЕ.ДЕ.Д.ЕН.... Со.Т...................................................................
*[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]*

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp:     *[kellaaeg]*
.............................................        O.SAVITSKAJA...Сof.............
*[menetlejaametniku nimi]*                          *[tunnistaja nimi]*



KOOPIA ÕIGE

*Translation from Estonian*



## NORTH POLICE PREFECTURE

### MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000225

14th December 2006                                        Tallinn

Investigative proceeding started at:  10:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
*[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness' personal data: enclosed with the minutes in an envelope, OLGA SAVITSKAJA

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____/signature/_____          (signature of witness)

3. Investigative proceeding is attended by interpreter: ... J. Koovit ... *[name and contact address]* who has been warned of the liability for the unjustified refusal to perform his or her duties and

EXT-ROTKO-000089

for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

_____/signature/_____          (signature of interpreter)

4. Testimony:

In which time period and on what position did you work in AS BPV?
- Starting from 2005 until July 2006, according to the employment contract I was a manager, but I performed the duties of warehouse keeper.

What was the activity in which AS BPV operated?
- Processing of saw-timber, according to the material brought by customer. We processed the saw-timber in our saw-mill.

Who directed the regular operation of the company in AS BPV?
- The regular operation of the company was directed by Aleksandr Rotko.

What were the duties of Olga Kotova?
- Olga Kotova was a secretary.

Were you aware, that Olga Kotova was actually a member of management board of the company, and not Aleksandr Rotko?
- No, I did not know that, I knew, that Aleksandr Rotko was directing the company.

On whose order and when from the territory of the Seaplane Harbor at the address Küti street 17 and Küti street 17a, Tallinn, were removed cover slabs of the dock, was partially destructed the boiler house and removed from there the kettle, were taken away railroad tracks, was cut off the water supply and electricity supply?
Where the railroad tracks were taken to, where the cover slabs of the dock were taken to, where the removed boiler house was taken to?
- When the court decision came, that we must leave that territory, then I used my opportunity and took out my vacation. I went on leave at the beginning of July, on which date, I do not remember exactly any more. As it was known, that I will not continue the employment in that company any more, then, directly at the beginning of July, when I went on leave, we also formalized the resignation, so, after that I have never been there anymore. I do not also know whether anything was taken away from that territory, also when or by whom it was done. I have also not heard from anyone that somebody wished to take something away from there.
After my resignation from that firm I have met Olga Kotova, but we did not talk about work issues with her.

*Translation from Russian*
5. Notes on minutes:  The minutes have been written according to my words and translated to me. /signature/
*[contents or absence of notes, minutes of hearing are read personally or read out]*

*Translation from Estonian*
6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: *[time]*

..........................................          ...... O. SAVITSKAJA /signatu
*[name of person conducting the proceeding]*          *[name of the witness]*

EXT-ROTKO-000084

....... .. ..  Küti K...h has been warned of the liability pursuant to sections 318, 321 of the Penal Code.



## PÕHJA POLITSEIPREFEKTUUR

### TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 09" oktoober 2006a                                    Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  10.00 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
                    *(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja andmed:

1)Nimi: **Tiit Einberg**
*[ees- ja perekonnanimi]*

2)Isikukood või sünniaeg: 36609030295
*[isikukoodi puudumisel sünniaeg]*

3)Kodakondsus EV
*[eesti, vene jm]*

4)Haridus:  kõrgem
*[alg-, põhi-, kesk-, keskeri-, kõrgem haridus]*

5)Elu- või asukoht: Harjumaa, Viimsi vald, Kastani 5
*[aadress või jäetakse märkimata tunnistaja taotlusel]*

6)Töökoht või õppeasutus: Eesti Meremuuseum
*[nimetus või jäetakse märkimata tunnistaja taotlusel]*

7)Kontaktandmed: tel:  5131623
*[sidevahendi number või e-posti aadress]*

8)Suhe kannatanu ja kahtlustatavaga:
*[mis laadi suhted on kannatanu ja kahtlustatavaga]*

9)Isikusamasus  tuvastatud: EE291620 juhiluba
*[dokumendi nimetus vms]*

**Tunnistaja õigused ja kohustused:**
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana

ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõrasvõi kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti- või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et ütluste andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb vastutus KarS §-de 318 ja 320 järgi.

(tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ...............................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

(tõlgi allkiri)

4. Ütlused:

Töötan Eesti Meremuusemis Lennusadama kuraatorina 2004.a. Meremuuseum asub aadressil Küti 15a, Tallinn. See asub endisel Lennusadama territooriumil. Suvel juuni – juuli kuus, täpset aega ei mäleta panin tähele, et Lennusadama territooriumil aadressil Küti 17a, Tallinn asuvad ettevõtted hakkasid ära transportima seal sadama kai katteplaate ning laoplatsi katteplaate. Samuti panin tähele, et nad viisid ära sadamakraana, mille nad lõikasid katki ning transportisd ära. Otseselt ma ei näinud seda momenti, kui nad raudteerelsid üles võtsid, aga kui ma juuli lõpu poole seal territooriumil käisin, siis oli kraana juba ära viidud ja ära viidud ka raudteerelsid. Samuti tean, et see katlamaja katus lõigati pealt ning sedakaudu tõsteti kraanaga välja katel, mis tõenäoliselt viidi vanametalli. Nende vesilennukite angaaride katuste kohta võin öelda, et niipalju kui mina tean, on seal alates 2003.a suvest olnud peal ainult üks katus – kõige merepoolsem. Teiste juttude järgi tean, et ülejäänud kaks katust viis minema torm (mis aastal ei tea). Kõik see metalli ja betoonplaatide transportimine sealt territooriumilt käis suhteliselt lühikese ajaga juuni lõpp – juuli kuu. Niipalju kui mina sellest asjaajemisest seal aru sain, oli seal põhiliseks firmaks AS BPV, mida juhtis Aleksandr Rotko. Olga Kotova oli minu teadmisel seal rohkem nagu sekretär. Minu arusaamisel juhtis seal territooriumil igapäeva tegevust Aleksandr Rotko.

5.Märkused protokolli kohta: ....................................................................................
....................................................................................
*[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]*

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp:*[kellaaeg]*
....................................................       ....................................................
*[menetlejaametniku nimi]*                              *[tunnistaja nimi]*

*Translation from Estonian*



## NORTH POLICE PREFECTURE

### MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000225

9th October 2006                                             Tallinn

Investigative proceeding started at:  10:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
              *[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness' personal data:

1) Name: **Tiit Einberg**
*[given names & surname]*

2) Personal identification code or date of birth: 36609030295
*[date of birth if the personal identification code is missing]*

3) Citizenship: Republic of Estonia
*[Estonian or other]*

4) Education:  high education
*[elementary, basic, high, vocational, higher]*

5) Residence or location: Harjumaa, Viimsi parish, Kastani 5
*[address or will not be stated upon request of the witness]*

6) Place of work or educational institution:   Estonian Maritime Museum
*[name or will not be stated upon request of the witness]*

7) Contact data: phone: 5131623
*[number of communication means or e-mail address]*

8) Relation to victim and suspect: employer
*[what is the kind of relations]*

9) Identity established by: driving licence EE291620
*[name of document, etc.]*

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may

use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.


_____/signature/_____          (signature of witness)


3. Investigative proceeding is attended by interpreter: ..................... *[name and contact address]* who has been warned of the liability for the unjustified refusal to perform his or her duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.


_____          (signature of interpreter)


4. Testimony:
I am working in Estonian Maritime Museum as a curator of the Seaplane Harbor starting from 2004. The Maritime Museum is located at the address Küti 15a, Tallinn. This is located on the territory of the former Seaplane Harbor. In summer – in June or July, I do not remember the exact time, I noticed, that the companies located on the territory of the Seaplane Harbor at the address Küti 17a, Tallinn, started to transport away from there the cover slabs of the dock of the port and the cover slabs of the open storage area. I also noticed, that they took away the crane of the port, which they cut into pieces and transported away. I did not see directly the moment when they removed the railroad tracks, but when I was on that territory towards the end of July, then the crane had already been taken away and the railroad tracks had also been taken away. I know also, that the roof of this boiler room was cut off and this way, by crane, was lifted out the kettle, which was most probably taken to waste metal. As for the roofs of the hangars, I can tell, that, as far as I know, since the summer of 2003 there has been only one roof – the nearest to the sea. From what has been told by others, I know, that the other two roofs were taken away by storm (in which year, I do not know). The whole transportation of this metal and of the concrete slabs from that territory took place in quite a short time – by end of June – July. As far as I understood from the business there, the main company there was AS BPV, which was directed by Aleksandr Rotko. Olga Kotova, as far as I know, was more like a secretary there. As far as I understand, the regular operation on that territory was directed by Aleksandr Rotko.

5. Notes on minutes: The minutes have been written according to my words and are correct.
/signature/

EXT-ROTKO-000088

6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: 10:30 *[time]*

.......... K. Tehver */signature/* ..........            ............ */signature/* ..........
*[name of person conducting the proceeding]*                  *[name of the witness]*

*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*
EXT-ROTKO-000089



### PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000427

" 15" detsember 2006a                                                                Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  12.00 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
                                        *(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja:
Aleksei Bassenkov   andmed lisatud ümbrikus protokolli juurde

### Tunnistaja õigused ja kohustused:
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku
viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et  ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

                                                     (tunnistaja  allkiri)

3.Uurimistoimingus osaleb tõlk: ...............................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 320 järgi.

                                                     (tõlgi allkiri)
                                                     KOOPIA ÕIGE

4. Ütlused:

Mis ajavahemikul ja kellena Te töötasite AS BPV?
-Alates 2005.a kuni 2006.a kevadeni, olin abitööline saekaatris.
Millise tegevusalaga tegeles AS BPV?
-Saematerjalide töötlemisega.
Kes juhtis firma igapäeva tegvust AS-is BPV?
Firma direktor   -Aleksandr Rotko. Igapäevategevust juhtis seal ka Anti Nööp, kes oli
sadama juht.
Millised ülesanded olid Olga Kotoval?
-Ei osak öelda, seal oli palju Olgasid, ei teadnud, kes millega tegeles.
Kas Te olite teadlik, et Olga Kotova oli tegelikult AS BPV juhatuse liige, mitte
Aleksandr Rotko?
- ei teadnud, sest ma ei suuda üldse meenutada, kes ta oli..

Kelle korraldusel ja millal eemaldati aadressil Küti tn 17 ja Küti tn 17.a lennusadama
territooriumilt, Tallinn sadamakai katteplaadid, lõhuti osaliselt katlamaja ning
eemaldati sealt katel, viidi ära raudteerelsid, katkestati vee- ja elektrivarustus?
Kuhu viidi raudteerelsid, kuhu viidi kai katteplaadid, kuhu viidi eemaldatud
katlamaja?
-Kui ma sealt firmast lahkusin, minu meelest oli see millalgi kevadel, enam täpset
kuud ei mäleta, siis veel midagi sealt ära viidud ei olnud. Nii kraanad, raudteerelsid,
kui kai katteplaadid olid alles. Kes, millal ja miks nad sealt ära viis, ei oska öelda. Ei
ole kellegile sealt firmast ka hiljem suhelnud, kuna mul varastati ära mobiiltelefon,
kus mul olid kõigi kontaktid.
-Mäletan, et keegi midagi rääkis, et siit võetakse üles raudteerelsid ja kai katteplaadid.
Räägiti, et neid raudtee rööpaid ei ole seal vaja ning seepärast need ka sealt üles
võetakse. Rohkem midagi selle asja kohta ei tea.
Kui ma protokolli läbi lugesin, meenus, et keegi rääkis ka, et mingi Olga on juhatuse
liige, arvan, et see oli see Olga, kes oli sekretär. Nägin, et nad käisid tihtipeale koos
Aleksandr Rotko´ga. Mis asja nad koos ajasid seda ma ei tea.

5. Märkused protokolli kohta: *[handwritten]*
*[handwritten]*
*[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]*

6. Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse
menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp: *[kellaaeg]*
*[handwritten signature]*
*[menetlejaametniku nimi]*

*[handwritten signature]*
*[tunnistaja nimi]*

*Translation from Estonian*



## NORTH POLICE PREFECTURE

### MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000427

15th December 2006                                          Tallinn

Investigative proceeding started at: 12:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
*[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness:
Aleksei Bassenkov      personal data enclosed with the minutes in an envelope

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____/signature/_____          (signature of witness)

3. Investigative proceeding is attended by interpreter: ... J. Koovit ... *[name and contact ...]* who has been warned of the liability for the unjustified refusal to perform his or her duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

_____/signature/_____     (signature of interpreter)

4. Testimony:

<u>In which time period and on what position did you work in AS BPV?</u>
- Starting from 2005 until spring of 2006, I was an auxiliary worker in the saw-mill.
<u>What was the activity in which AS BPV operated?</u>
- Processing of saw-timber.
<u>Who directed the regular operation of the company in AS BPV?</u>
- Director of the company – Aleksandr Rotko. The regular operation there was also directed by Anti Nööp, who was the chief of the port.
<u>What were the duties of Olga Kotova?</u>
- I cannot tell, there were many called Olga, I did not know who was engaged in what.
<u>Were you aware, that Olga Kotova was actually a member of management board of the company, and not Aleksandr Rotko?</u>
- No, I did not know that, because I cannot recall at all, who she was.

<u>On whose order and when from the territory of the Seaplane Harbor at the address Küti street 17 and Küti street 17a, Tallinn, were removed cover slabs of the dock, was partially destructed the boiler house and removed from there the kettle, were taken away railroad tracks, was cut off the water supply and electricity supply?</u>
<u>Where the railroad tracks were taken to, where the cover slabs of the dock were taken to, where the removed boiler house was taken to?</u>
- When I resigned from that company, as far as I remember, it was some time in spring, I do not remember the exact month any more, then nothing had been removed from there yet. The cranes, the railroad tracks as well as the cover slabs of the dock were there. Who, when and why removed them from there, I cannot tell. Neither have I communicated with anybody from that company later, because my mobile phone, where I had everyone's contacts, was stolen.
- I remember somebody telling something like that the railroad tracks and the cover slabs of the dock will be removed from here. It was told, that these railroad tracks are not needed there and therefore they will be removed from there. I now nothing more about this matter.
When I read through the minutes, I remembered somebody telling also, that some Olga is a member of management board, I think this was the same Olga who was working as secretary. I saw them often walking together with Aleksandr Rotko. What were they engaged in together, I do not know.

*Translation from Russian*
5. Notes on minutes:  Written according to my words correctly, translated to me.
*[contents or absence of notes, minutes of hearing are read personally or read out]*

*Translation from Estonian*
6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: 12:45 *[time]*

.........K. Tehver */signature/*..........          ...... Aleksei Bassenkov ......
*[name of person conducting the proceeding]*          *[name of the witness]*



*/signature/*



## PÕHJA POLITSEIPREFEKTUUR

### TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000427

" 14" detsember 2006a                                                    Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  10.00 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
                          *(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja Tõnu Rinaldi
isikuandmed:  lisatud ümbrikus protokolli juurde

### Tunnistaja õigused ja kohustused:
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigus keelduda tunnistajana
ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal
või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras-
või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja
tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda
ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või
käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses
teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal
ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku
viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti-
või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende
asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning
selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et    ütluste
andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb
vastutus KarS §-de 318 ja 320 järgi.

*[allkiri]*                                    (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: .................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest aluseta
keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

                                          (tõlgi allkiri)

KOOPIA ÕIGE

4. Ütlused:

Mis ajavahemikul ja kellena Te töötasite AS BPV?
-Alates 2001.a kuni 2006.a juuli kuuni ning töötasin saekaatris puidutöötlejana.
Millise tegevusalaga tegeles AS BPV?
-Saematerjalide töötlemisega.
Kes juhtis firma igapäeva tegevust AS-is BPV? Firma igapäevategevust juhtis   -
Aleksandr Rotko.
Millised ülesanded olid Olga Kotoval?
-Olga Kotova oli sekretär.
Kas Te olite teadlik, et Olga Kotova oli tegelikult AS BPV juhatuse liige, mitte
Aleksandr Rotko?
- olin seda kuulnud, kuid tema tegi sekretäri tööd, firmat juhtis ikkagi Rotko.

Kelle korraldusel ja millal eemaldati aadressil Küti tn 17 ja Küti tn 17.a lennusadama
territooriumilt, Tallinn kai katteplaadid, lõhuti osaliselt katlamaja ning eemaldati sealt
katel, viidi ära raudteerelsid, katkestati vee- ja elektrivarustus?

- Minu mäletamist mööda oli see millalgi suvel, see võis olla juuli kuus, see oli
vahetult enne kui firma seal tegevuse juuli lõpul lõpetas, tellis Aleksandr Rotko sinna
mingisuguse firma, kes võttis üle kõigepealt vist kai katteplaadid, siis raudteerelsid,
kraanad, katlamaja. Millises järjekorras neid täpselt eemaldati, ei tea. Seda tehti minu
meelest korraga, sest kogu aeg seal töö käis. Meie firma töötajatest, seda keegi ei
teinud, selleks oli kohale kutsutud eraldi töömehed.
Kuhu viidi raudteerelsid, kuhu viidi kai katteplaadid, kuhu viidi eemaldatud
katlamaja?
-Kuhu täpselt viidi, ei tea. Arvan, et metall viidi kokkuostu, kuhu täpselt, ei tea. Mis
aga tehti kai katteplaatidega, üldse ei ole aimu.

Peale seda kui ma sealt töölt lahkusin, enam kellegiga nendest suhelnud ei ole. Mis
praegu Aleksandr Rotko teeb, ei oska samuti öelda.

Kas Te oskate öelda, kas angaaride katuseluukidel olid peal katted  enne juuli kuud,
kui te sealt lahkusite?

-  Seda ma ei oska öelda. Hoidsime küll seal all mingit saematerjali, aga kas seal
kuplil oli katuse peal, ei tea. Arvatavasti pidi seal luuk peal olema, kuna see materjal
oli seal all kuiv, kuid kuna ma ise seda nii täpselt ei vaadanud, siis kinnitada ei saa.
Samuti võin kinnitada, et kedagi seal katuse otsas neid kupleid maha võtmas, küll ei
näinud.

5.Märkused protokolli kohta: _Protokoll kirjutatud_
_minu_ _utluste_ _järgi_ _ja_ _laen_ _loetud_
[märgitakse märkuste sisu või nende puudumine; protokoll loetud läbi isiklikult või loetud ette]

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse
menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Uurimistoimingu lõpp: 10.41 [kellaaeg]
_V. Tihhn_
[menetlejaametniku nimi]

_Tõnu_ _Riinafoli_
[tunnistaja nimi]

*Translation from Estonian*



# NORTH POLICE PREFECTURE

## MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000427

14th December 2006                                        Tallinn

Investigative proceeding started at:  10:00 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
   *[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness Tõnu Rinaldi
personal data: enclosed with the minutes in an envelope

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which is difficult to memorise (section 68 (3)). The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____/signature/_____          (signature of witness)



3. Investigative proceeding is attended by interpreter: ................................ *[name and address]* who has been warned of the liability for the unjustified refusal to perform h

duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

(signature of interpreter)

4. Testimony:

In which time period and on what position did you work in AS BPV?

- Starting from 2001 until July 2006 I worked in the saw-mill as a woodworker.

What was the activity in which AS BPV operated?

- Processing of saw-timber.

Who directed the regular operation of the company in AS BPV?

- The regular operation of the company was directed by Aleksandr Rotko.

What were the duties of Olga Kotova?

- Olga Kotova was a secretary.

Were you aware, that Olga Kotova was actually a member of management board of the company, and not Aleksandr Rotko?

- I had heard that, but she was performing the duties of a secretary, the company was after all directed by Aleksandr Rotko.

On whose order and when from the territory of the Seaplane Harbor at the address Küti street 17 and Küti street 17a, Tallinn, were removed cover slabs of the dock, was partially destructed the boiler house and removed from there the kettle, were taken away railroad tracks, was cut off the water supply and electricity supply?

- As far as I remember, it was some time in summer, it could be in July, it was directly before the company closed its business there, Aleksandr Rotko ordered some company there, which removed first probably the cover slabs of the dock, then the railroad tracks, the cranes, the boiler house. Exactly in what order they were removed, I do not know. In my mind it was done at the same time, as work was done there all the time. No-one from our company did this work, as separate workmen were called for that purpose.

Where the railroad tracks were taken to, where the cover slabs of the dock were taken to, where the removed boiler house was taken to?

- Where were they taken exactly, I do not know. I guess that the metal was taken to some buying-up place, where exactly, I do not know. But what was done with the cover slabs of the dock, I have no clue at all.

After my resignation from that company I have not communicated with anybody from them anymore. What is Aleksandr Rotko engaged in at present, I also cannot tell.

Can you tell, did the roof doors of the hangars have coverings on them before July when you left the place?

- I cannot tell that. We were, indeed, keeping some saw-timber there under it, but were there the cupolas on the roof, that I do not know. Probably it must have been covered with trapdoor, as the material there under it was dry, but as I did not look so precisely myself, I cannot confirm it.

Likewise, I can confirm, that I did not, indeed, see anybody on that roof removing these cupolas.

5. Notes on minutes: The minutes have been written according to my words and have been read through. /signature/

[contents or absence of notes, minutes of hearing are read personally or read out]

6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall

be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at: 10:45 *[time]*

.........K. Tehver */signature/* ..........                    .......... Tõnu Rinaldi ..........
*[name of person conducting the proceeding]*                    *[name of the witness]*

                                                              */signature/*

*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*



### PÕHJA POLITSEIPREFEKTUUR

## TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000225

" 29" september 2006a                                                   Tallinn
*[uurimistoimingu koht]*

Uurimistoimingu algus  15.15 *[kellaaeg]*

Põhja    Politseiprefektuuri    kriminaalosakonna    majanduskuritegude    talituse
politseijuhtivinspektor Kaari Tehver,
*(Menetleja ametinimetus ja nimi)*
juhindudes KrMS §-dest  68, 74 ja 146  kuulas üle tunnistaja:

1.Tunnistaja andmed:

1)Nimi: **Valdo Seiler**
*[ees- ja perekonnanimi]*

2)Isikukood või sünniaeg: 36905130333
*[isikukoodi puudunisel sünniaeg]*

3)Kodakondsus EV
*[eesti, vene jm]*

4)Haridus: keskeri
*[alg-, põhi-, kesk-, keskeri-, kõrgem haridus]*

5)Elu- või asukoht: Riidaku küla, Rapla Maakond 78403
*[aadress või jäetakse märkimata tunnistaja taotlusel]*

6)Töökoht või õppeasutus: OÜ Riidaku Töökoda
*[nimetus või jäetakse märkimata tunnistaja taotlusel]*

7)Kontaktandmed: tel: 5251380
*[sidevahendi number või e-posti aadress]*

8)Suhe kannatanu ja kahtlustatavaga:
*[mis laadi suhted on kannatanu ja kahtlustatavaga]*

9)Isikusamasus tuvastatud: EE 574014
*[dokumendi nimetus vms]*

**Tunnistaja õigused ja kohustused:**
Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus
käesoleva seadustiku §-de 71-73 järgi (KrMS § 66 lg 3). Tunnistajale selgitatakse, tema õigust kirjutada ütlusi
omakäeliselt (KrMS § 68 lg 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti
meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lg 3). Õigusest keelduda tunnistajana

EXT-ROTKO-000009

Ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras- või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lg 1). Tunnistaja võib keelduda ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või käesoleva paragrahvi lõikes 1 loetletud isikuid (KrMS § 71 lg 2). Õigus tunnistajana keelduda kutsetegevuses teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti- või kutsesaladuse hoidmise kohustus (KrMS § 72 lg 1). Tunnistajal on õigus keelduda ütluste andmisest nende asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lg 1).

2.Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66-73 ning selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et ütluste andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb vastutus KarS §-de 318 ja 320 järgi.

_____ (tunnistaja allkiri)

3.Uurimistoimingus osaleb tõlk: ...................................................................
*[nimi ja kontaktaadress]*, keda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

_____ (tõlgi allkiri)

4. Ütlused:

Suvel 2006 juuni (täpset kuupäeva ei mäleta) käisin Lennusadama territooriumil oma transpordiga järgi kasepindade koormal. Esimel korral kui seal territooriumil käisin märkasin, et seal võeti üles kraanadega suuri betoonplaate kai äärselt laoplatsilt, mis pandi kohe ka kraanaga veoauto peale. Umbes kolme päeva pärast läksin Lennusadama territooriumile järgi teisele kasepindade koormale ning sel ajal kui seal mulle koormat peale laoti märkasin, et seal võeti üles raudteerelsse, mis tõsteti omakorda Kuusakoski firma eraldusmärke kandvale veoautole. Selleks korraks olid juba enamus betoonplaate sealt laoplatsilt üles võetud. Sel samal korral nägin ka kui lõigati gaasikeevituse maha seda sadamakail asuvat kraanat. Sel hetkel oli maha võetud juba kraana nool. Umbes nädala aega hiljem kui olin Kiili ja Luige ristis asuvas söögikohas märkasin kahte veoautot, mis vedasid täpselt sarnaseid betoonplaate. Kuna see tegevus tekitas minus kahtlust siis märkisin üles ka nende veoautode numbrid: ühelt sain auto numbri (reg nr. 235 ANC) ja teiselt masinalt sain käru numbri (reg.nr. 305BR). Teavitasin sellest minu mäletamist Kaitseministeeriumi, kuna eeldasin et see Lennusadam tagastatakse neile. Peale seda, kui Lennusadam oli tagastatud riigile ning Justiitsminister Rein Lang võttis televisioonis Lennusadamas toimunu kohta sõna, helistasin Justiitsministeeriumisse ning teavitasin neid toimunust, mida ma seal nägin.

5.Märkused protokolli kohta: protokoll kirjatatud mi..... ütluste järgi ja minu poolt läbi loetud ...
*[märgitakse märkuste sisu või nende puudumine: protokoll loetud läbi isiklikult või loetud ette]*

6.Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

EXT-ROTKO-000100

Uurimistoimingu lõpp: ⁄ *[kellaeg]*

........................................

*[menetlejaametniku nimi]*

Valdo Seiler

*[tunnistaja nimi]*



KOOPIA ÕIGE

N. Lihnnsson