*Translation from Estonian*



### NORTH POLICE PREFECTURE

### MINUTES ON QUESTIONING OF WITNESS
in the criminal matter No. 06730000225

29th September 2006                                 Tallinn

Investigative proceeding started at: 15:15 *[time]*

Kaari Tehver- Leading Police Inspector of the Economic Crime Division of the Crime Department of the North Police Prefecture,
*[name and professional status of the official conducting the proceeding]*

guided by sections 68, 74 and 146 of the Code of Criminal Procedure, questioned as witness:

1. Witness' personal data:

1) Name: **Valdo Seiler**
*[given names & surname]*

2) Personal identification code or date of birth: 36905130333
*[date of birth if the personal identification code is missing]*

3) Citizenship: Republic of Estonia
*[Estonian or other]*

4) Education:  vocational
*[elementary, basic, high, vocational, higher]*

5) Residence or location: Riidaku village, Rapla county, 78403
*[address or will not be stated upon request of the witness]*

6) Place of work or educational institution:   OÜ Riidaku Töökoda
*[name or will not be stated upon request of the witness]*

7) Contact data: phone: 5251380
*[number of communication means or e-mail address]*

8) Relation to victim and suspect: employer
*[what is the kind of relations]*

9) Identity established by: EE574014
*[name of document, etc.]*

**The rights and obligations of witness:**
A witness shall give truthful testimony unless there are lawful grounds specified in sections 71–73 of this Code for refusal to give testimony (section 66 (3)). The rights and obligations of witnesses and the right to write the testimony in hand-writing shall be explained to a witness (section 68 (1)). While giving testimony, a witness may use notes and other documents concerning numerical data, names and other information which it difficult to

descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended (section 71 (1)). A witness may refuse to give testimony also if the testimony may lay blame on him or her or a person listed in subsection (1) of this section for the commission of a criminal offence or a misdemeanour and if he or she is convicted or acquitted as accompanying perpetrator or an accomplice for the same crime (section 71 (2)). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; health care professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; persons on whom the obligation to maintain a professional secret has been imposed by law (section 72 (1)). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets Act applies (section 73 (1)).

2. Rights and obligations have been explained to witness pursuant to sections 66-73 of the Code of Criminal Procedure. A witness of at least 14 year old has been warned that the unjustified refusal from giving testimony and giving knowingly false testimony are punishable by a pecuniary punishment pursuant to sections 318 and 320 of the Penal Code.

_____ /signature/ _____          (signature of witness)

3. Investigative proceeding is attended by interpreter: ..................... *[name and contact address]* who has been warned of the liability for the unjustified refusal to perform his or her duties and for the provision of a knowingly false interpretation pursuant to sections 318, 321 of the Penal Code.

_____          (signature of interpreter)

4. Testimony:
In the summer of 2006, in June (I do not remember the exact date) I went to the territory of the Seaplane Harbor with my own transport to pick up a load of birch splinters. First time, when I went to that territory, I noticed, that they were removing by cranes large concrete slabs from the open storage area near the dock, the slabs were loaded by crane directly into the truck. About three days later I went to the territory of the Seaplane Harbor to pick up the second load of birch splinters, and at the time when my vehicle was being loaded, I noticed, that the railroad tracks were being removed there, which, in their turn, were loaded into the truck with distinguishing marks of Kuusakoski company. By that time most of the concrete slabs had already been removed from that open storage area. On the same day I also saw them cutting off by gas welding the crane which was standing on the dock of the port. By that moment the crane boom had already been cut off. About a week later, when I was at a dining place located beside the crossroad of Kiili and Luige roads, I noticed two trucks which were transporting exactly similar concrete slabs. As this operation filled me with doubt, then I wrote down the plate numbers of these trucks: from one truck I got the truck number (registration number 235 ANC) and from the other truck I got the trailer number (registration number 305BR). As far as I remember, I notified the Ministry of Defence about this issue, as I assumed that this Seaplane Harbor will be returned to them. After the time when the Seaplane Harbor had already been returned to the State and the Minister of Justice Mr. Rein Lang commented on TV about what had happened at the Seaplane Harbor, I called the Ministry of Justice and informed them of what I had seen taking place there.

5. Notes on minutes: The minutes have been written according to my words and have been read through by me. */signature/*   EXT-ROTKO-000103
*[contents or absence of notes, minutes of hearing are read personally or read out]*

6. Participants of the investigative proceeding have been explained that pursuant to section 214 of the Code of Criminal Procedure information concerning the pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by the Prosecutor's Office.

Investigation proceeding finished at*: [time]*

......... K. Tehver */signature/* ..........
*[name of person conducting the proceeding]*

......Valdo Seiler */signature/* .......
*[name of the witness]*

*Translator Kadi Kuusk has been warned of the liability pursuant to sections 318, 321 of the Penal Code.*



EXT-ROTKO-000105



REPUBLIC OF ESTONIA
MINISTRY OF JUSTICE

Estonia's Presidency
of the Council of the
European Union  EU2017.EE



**FOR INTERNAL USE**
Notation made on: 22.12.2017
Restriction on access valid until:
22.12.2022
Basis: AvTS § 35 lg 1 p 1 , AvTS § 35 lg 1 p 3
Holder of information: Ministry of Justice

Department of Justice                    22.12.2017          Our ref.   12-1/8926-2
Criminal Division
Office of International Affairs
1301 New York Ave, NW 9th floor
Washington D.C. 20530
U.S.A.

**Re: Extradition of Aleksandr Rotko**

Ministry of Justice of Estonia hereby presents additional information in the extradition case of Aleksandr Rotko.

Yours sincerely

Astrid Laurendt-Hanioja
Head of International Judicial Co-operation Unit

Enclosures.

Ministry of Justice/ Suur-Ameerika 1 / 10122 Tallinn / ESTONIA/ +372 620 8100 /fax +372 620 8109/
info@just.ee / www.just.ee
Reg.no 70000898

 PROKURATUUR

Ameerika Ühendriikide pädev õigusasutus

**Vastus**                                                    12.12.2017 nr PRP-10/17/7203
**seoses Eesti Vabariigi Prokuratuurile**
**esitatud väljaandmistaotlusega**

### I Asjaolud ja menetluse käik

12.11.2012.a esitas Põhja Ringkonnaprokuratuuri vanemprokurör Maria Entsik Ameerika Ühendriikide pädevale õigusasutusele väljaandmistaotluse Aleksandr Rotko suhtes kriminaalasja nr 06730000427 raames. Taotlus esitati tuginedes 08.02.2006.a Eesti Vabariigi valitsuse ja Ameerika Ühendriikide valitsuse vahel allkirjastatud väljaandmislepingule.

Taotluse kohaselt paluti Ameerika Ühendriikidel anda Eesti Vabariigile välja Aleksandr Rotko (isikukood 34902270228, sündinud 27.02.1949.a Ukrainas).

16.11.2017.a esitati seoses A. Rotko väljaandmismenetlusega Eesti Vabariigile arupärimine, mille sisu on kokkuvõtvalt järgmine:

- palutakse selgitada, millise aktuaalse dokumendi alusel süüdistatkase A. Rotko'd, samuti vajatakse selgistust sellele, et vanemprokurör M. Entsik'u teenistussuhe on peatatud;
- palutakse lisatõendeid selle kohta, et väljaandmistaotlusele lisatud isiku pilt on tegelikult A. Rotko'st tehtud foto;
- palutakse esitada täiendavad tõenduslikud üksikasjad (rangemad tõendid) selle kohta, mida, kellele ja millal A. Rotko ütles ja tegi, et edukalt müüa riigiomandi lõhkumisest saadud vanametalli ning saada müügist raha;
- samuti palutakse selgitusi selle kohta, et A. Rotko'd ei ole kajastatud Eesti Karistusregisrtis.

### II Prokuröri selgitused

Mina, Andrei Voronin, olen Eesti Vabariigi kodanik ning alates 20.08.1990.a olen olnud Eesti Vabariigi prokurör. Minu ametiülesanneteks on juhtida kohtueelset kriminaalmenetlust, tagades selle seaduslikkuse ja tulemuslikkuse, ning esindada kohtus riiklikku süüdistust isikute vastu, kes on toime pannud kuriteo Eesti Vabariigi seaduste kohaselt. Vanemprokurör Maria Entsik'u ametisuhe on peatatud ajutiselt seoses lapsehoolduspuhkusega, kuid kõiki kriminaalmenetluse ülesandeid teostavad kuni antud juhtumi lõpliku lahendamiseni Põhja Ringkonnaprokuratuuri prokurörid, käesoleval momendil – mina, Andrei Voronin.

EXT-ROTKO-000107

Ringkonnaprokurörina oma tööülesandeid täites olen ma tutvunud **kriminaalasja nr 06730000427** materjalidega, mille raames on kogutud tõendid ja milles **Aleksandr Rotko'd** (isikukood 34902270228) kahtlustatakse selles, et tema koos Olga Kotova'ga (isikukood 47711285211) rikkusid ja hävitasid tahtlikult Eesti Vabariigi omandis olevaid ehitisi ja rajatisi Tallinnas Küti 17 ja 17a territooriumil, millega tekitasid Eesti Vabariigile olulist varalist kahju summas 1 988 260 Eesti krooni (ehk 127 072,97 eurot). Kriminaalasi on kohtueelse menetluse staadiumis. Aleksandr Rotko on asunud kriminaalmenetlusest kõrvale hoiduma ning lahkus Eesti Vabariigist.

Vastavalt KrMS § 457 lg 3 koostab välisriigile esitatava taotluse isik välja anda kohtueelses menetluses prokuratuur.

Käesoleva vastuse osas I nimetatud väljaandmistaotlus on esitatud Ameerika Ühendriikidele palvega anda Eesti Vabariigile välja kahtlustatav Aleksandr Rotko eesmärgiga esitada talle süüdistus Eesti Vabariigi karistusseadustiku § 201 lg 2 p 4 ja § 203 järgi ning saata Aleksandr Rotko kohtu alla kandma vastutust tema poolt toime pandud kuritegude eest.

### III Karistusregistri andmed

Kooskõlas Karistusregistri seaduse § 6 punktidega 1 ja 2 kantakse registrisse isiku karistusandmed järgmiste kohtulahendite ja ametnike otsuste alusel:
1) jõustunud süüdimõistev kohtuotsus kriminaalasjas;
2) kohtuvälise menetleja ja kohtu jõustunud otsus karistuse määramise või mõistmise kohta väärteoasjas, välja arvatud kohtuvälise menetleja otsus hoiatamismenetluses;
3) kohtumäärus isikule psühhiaatrilise sundravi kohaldamise kohta;
4) kohtumäärus nooremale kui kaheksateistaastasele isikule mõjutusvahendi kohaldamise kohta;
5) kohtu või kohtuvälise menetleja otsus või määrus, mis põhineb käesoleva paragrahvi punktides 1–4 nimetatud otsusel või määrusel ning sisaldab käesoleva seaduse §-s 12 sätestatud andmeid;
6) Vabariigi Presidendi otsus süüdimõistetu armuandmispalve läbivaatamise kohta;
7) jõustunud süüdimõistev välisriigi kohtuotsus kriminaalasjas Eesti kodaniku või Eestis elamisluba või elamisõigust omava välismaalase suhtes, kelle karistusandmed on välisriik edastanud või kelle süüdimõistvat kohtuotsust on Eesti kohus tunnustanud.

Seega juhul, kui isik ei ole kohtulikult karistatud või tema suhtes ei ole kohtuotsusele võrdväärset kohtumäärust, ei kajastata tema andmeid Karistusregistris.

Informatsiooni, et isiku kohta on käimas olev kriminaalmenetlus, saab kätte ainult muudest registritest, nagu näiteks Kriminaalmenetluse registrist (asutatud Vabariigi Valitsuse põhimääruse alusel RT I 2001, 22, 121), kuid need registrid ei ole avalikud ning juurdepääs nendele on olemas ainult volitatud ametnikel, sealhulgas prokuratuuril ja politseil.

### IV Tõendid A. Rotko poolt korralduste andmise kohta

Kriminaalasja eeluurimise käigus on tuvastatud, et aadressil Küti tn 17 ja 17a, Tallinn, kust on ilma valdaja ehk Justiitsministeeriumi loata eemaldatud ehitiste ja rajatiste olulised osad, tegutsesid järgmised ettevõtted: Ela Tolli AS – juhatuse liige Aleksandr Rotko, OÜ Agrion Partion – juhatuse liige Olga Kotova, AS BPV -- juhatuse liige Olga Kotova, Ella Kaubanduse OÜ – juhatuse liige Aleksandr Rotko.

Menetluse käigus üle kuulatud tunnistajate ütlustest nähtub, et nimetatud ettevõtete igapäevast

tegevust juhtis Aleksandr Rotko. Vastavalt uurimise käigus tehtud päringutele on selgunud, et raudteerelsid ja sadamakai katteplaadid on territooriumilt eemaldatud Aleksandr Rotko korraldusel ning müüdud maha AS BPV poolt, kelle nimelt on müügidokumendid allkirjastanud nii Olga Kotova kui ka Aleksandr Rotko.

Eeluurimisega on tuvastatud, et sadamakai teekatteplaadid müüdi Paldiski Sadamate AS-le vastavalt poolte vahel sõlmitud lepingule ja AS BPV poolt esitatud 25.08.2006.a müügiarvele nr 292 summas 2 528 727,20 krooni. Seejuures on AS BPV 25.08.2006.a esitanud Paldiski Sadamate AS-le avalduse kanda eelpool nimetatud arvel olev summa vastavalt AS BPV ja Taani ettevõtte Merimpex Co. Ltd omavahelisele kokkuleppele arveldusarvele nr 5005786729 Nordea Bank Denmark A/S, International Branch, Strandgade 3 Postboks 850 0900 Kobenhavn C.

Lisaks on eeluurimisega tuvastatud, et Paldiski Sadamate AS-i finantsjuht Aivi Vaher ei nõustunud AS BPV sooviga kanda kogu müügisumma Taani ettevõtte arvele ning ta kandis müügiarvel märgitud kogusummast käibemaksu osa 385 738,05 krooni käibemaksukohuslasest müüja AS BPV arveldusarvele nr 221016089551 Hansapank AS-is (käesoleval ajal Swedbank AS). Ülejäänud summa 2 142 989,15 krooni kandis Aivi Vahter 06.09.2006.a Taani Kuningriigis Nordea pangas asuvale Taani ettevõtte Merimpex Co.Ltd arveldusarve nr 5005786729.

Eeltoodust tulenevalt on menetlejal tekkinud kahtlus, et Aleksandr Rotko ja Olga Kotova on kuritegelikul teel saadud raha 2 142 989,15 krooni omastanud, milline tegu on kvalifitseeritav kuriteona KarS § 201 järgi.

Seoses vajadusega esitada rangemad tõendid A. Rotko käitumise kohta lisab prokuratuur käesolevale vastusele järgmised tõendid:

• 08.08.2016.a peeti rahvusvaheliselt tagaotsitavana kinni Olga Kotova (Lisa nr 1). 06.10.2016.a kahtlustatavana ülekuulatuna andis O. Kotova ütlusi, millest tulenevalt oli tema äriühingutes OÜ Agrin Partion (äriregistri kood 10259785; registrist kustutatud 31.07.2013), AS Verest (äriregistri kood 10381687, registrist kustutatud 13.09.2010) ja AS BPV (äriregistri kood 10379236, registrist kustutatud 01.07.2011), juhatuse liige ning Ela Tolli AS (äriregistri kood 10712954, registrist kustutatud 21.03.2016) nõukogu liige. Aleksandr Rotko oli AS Verest (kustutatud), AS BPV (kustutatud) nõukogu liige ja Ela Tolli AS (kustutatud) juhatuse liige. Lisaks oli Aleksandr Rotko OÜ Ella Kaubanduse (äriregistri kood 10448316, registrist kustutatud 14.08.2012) juhatuse ainuliige ja ainuosanik, milline ettevõte oli omakorda Olga Kotova juhitud OÜ Agrin Partion (kustutatud) ainuosanik. Tema faktilisteks ülesandeks oli sekretäri töö. Äriühingute juhtimist ja praktilise tegevuse suunamist teostas Aleksandr Rotko, kelle palvel kirjutas O. Kotova dokumentidele ning arvetele alla (Lisa nr 2).

• 23.11.2016.a kuulati tunnistajana üle Olga Novoseltseva, kes kinnitas, et „ Rotko üritas maha müüa kõike, mida ta ise oli sinna paigutanud ja rajanud ja mida sai maha müüa, sest et tema firmad pidid territooriumilt lahkuma." (Lisa nr 3).

• Kriminaalmenetluse materjalidest nähtub, et suurem osa rahast oli kantud Taani Kuningriigis Nordea pangas asuvale ettevõtte Merimpex Co.Ltd arveldusarvele nr 5005786729. 29.01.2007.a tegi Põhja Ringkonnaprokuratuur õigusabiataotluse Taani Kuningriigile, kontrollimaks raha liikumist. Vastusele lisatud konto väljatrükkidest tulenevalt kontrollis arveldusarvet ja oli alates 25.09.1996.a ettevõtte Merimpex Co.Ltd volitatud isikuks Aleksandr Rotko (Lisa nr 4).

Seega oli Aleksandr Rotko nii lammutamise organisaator kui lammutamise materjalide müügist saadud raha kasusaaja.

### V A. Rotko isiku tuvastamine

Kooskõlas Eesti Vabariigi kriminaalmenetluse normidega teostati Aleksandr Rotko isiku äratundmine, mille tulemusena tundis tunnistaja O. Novoseltseva A. Rotko'd . Protokoll lisatakse käesolevale vastusele (Lisa nr 5).

### VI A. Rotko süüdistusdokument

Kooskõlas Eesti Vabariigi kriminaalmenetluse normidega ei vormistata riigi poolt isikule adresseeritud karistusõiguslikku etteheidet eraldi dokumendina kuni süüdistusasja üleandmiseni kohtule arutamiseks. Sellisel juhul koostab prokurör Kriminaalmenetluse seadustiku § 154 ja § 226 lg 1 alusel süüdistusakti ning saadab selle kohtusse.

Enne süüdistusakti koostamist sõnastatakse süüdistuse definitsioon kahtlustatava ülekuulamise protokolli osana, mis vormistatakse kahtlustatava faktilisel ülekuulamisel.

Kuna Aleksandr Rotko hoidub menetlusest kõrvale ja varjab ennast, ei ole temale tänaseni personaalselt kahtlustust esitatud.

Samas juhul, kui enne kahtlustuse esitamist rakendatakse isiku suhtes sunnimeetmeid, formuleeritakse riigi poolt isikule adresseeritud karistusõiguslik etteheide sunnimeedet rakendava kohtulahendina, milleks käesoleval juhul oli Harju Maakohtu 25.08.2007.a määrus, millega otsustati vahistada A. Rotko kui menetlusest kõrvalehoiduv ja tagaotsitavaks kuulutatud isik. 25.08.2007.a määruse tõlge oli lisatud väljaandmistaotlusele.

Samuti tuvastas Tallinna Ringkonnakohus Olga Kotova vahistuse küsimuse arutamisel, et nii Aleksandr Rotko kui Olga Kotova olid juba alates 2007. aastast teadlikud nende suhtes läbi viidavast kriminaalmenetlusest (Lisa nr 6).

### VII Kokkuvõte

Kinnitan, et kõik eeltoodu vastab tõele minu parima teadmise kohaselt. Eelkirjeldatut silmas pidades, palun Eesti Vabariigi nimel välja anda Aleksandr Rotko Eesti Vabariigile tema suhtes kriminaalmenetluse läbiviimiseks, süüdistuse esitamiseks ja tema kohtu alla andmiseks.

Olen andnud endast parima, et esitada tõendeid väljaandmistaotluse rahuldamiseks. Juhul, kui USA pädevad ametiasutused vajavad täiendavat inforatsiooni taotluse lahendamiseks, kinnitan kogu lugupidamisega, et olen valmis esitama vajalikku lisainformatsiooni enne otsuse langetamist.

Andrei Voronin
Ringkonnaprokurör

EXT-ROTKO-000110

Lisad:

1. Euroopa rahvusvahelise süsteemi „SIRENE" kaudu edastatud teade Olga Kotova kinnipidamise kohta.

2. Olga Kotova kahtlustatavana ülekuulamise 06.10.2016.a protokoll koos tõlkega.

3. Olga Novoseltseva tunnistajana ülekuulamise 23.11.2016.a protokoll koos tõlkega.

4. Taani Kuningriigi õigusabitaotlusele vastuse materjalid: O. Kotova poolt allkirjastatud korraldus raha suunamiseks ettevõttele Merimpex Co.Ltd, Merimpex Co.Ltd nimele arveldusarve avamise dokumendid.

5. Olga Novoseltseva poolt Aleksandr Rotko äratundmise protokoll koos tõlkega.

6. Tallinna Ringkonnakohtu 10.10.2016.a määrus kriminaalasjas nr 1-07-10649 (06730000427).

EXT-ROTKO-000111

Competent judicial authority of the United States of America

**Response to the Prosecutor's Office of**                    12.12.2017 no PRP-10/17/7203
**the Republic of Estonia regarding**
**the request for extradition**

## I   Facts and proceedings

Maria Entsik, Senior Prosecutor of the Northern District Prosecutor's Office presented a request for extradition of Aleksandr Rotko to the competent judicial authority of the United States of America in criminal matter no 06730000427 on 12.11.2012. The request was presented based on the agreement on extradition signed by the government of the Republic of Estonia and the government of the United States of America on 08.02.2006.

According to the request, the United States of America was asked to extradite Aleksandr Rotko (personal identification code 34902270228, born on 27.02.1949 in Ukraine) to the Republic of Estonia.

On 16.11.2017, interpellation was presented to the Republic of Estonia concerning the extradition proceeding of A. Rotko; summarized content of the interpellation was as follows:

- a request to explain based on which actual document is A. Rotko accused, and explanation on service suspension of the Senior Prosecutor M. Entsik;
- request to present additional evidence that the photograph added to the request of extradition is in fact made by A. Rotko;
- request to present additional evidential details (more severe evidence) on what, to whom and when A. Rotko said and did to successfully sell scrap metal obtained by damaging state property and make money from the sales;
- it is also asked to explain the fact that A. Rotko is not reflected in the punishment register of the Republic of Estonia.

## II   Explanations of the Prosecutor

I, Andrei Voronin, am a citizen of the Republic of Estonia and Prosecutor of the Republic of Estonia since 20.08.1990. My function is to lead pre-trial proceedings, ensure that the

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

proceedings are legal and effective, and represent public prosecution against persons who have committed a criminal offence under the laws of the Republic of Estonia. The service of Senior Prosecutor Maria Entsik has been temporarily suspended due to maternity leave, but all tasks of criminal proceedings are being fulfilled until final settlement of the present case by the Prosecutors of the Northern District Prosecutor's Office; at this moment, me, Andrei Voronin.



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

Fulfilling my obligations as a District Prosecutor, I have studied the materials of **criminal matter no 06730000427** , within the framework of which evidence has been gathered and in which **Aleksandr Rotko** (personal identification code 34902270228) together with Olga Kotova (personal identification code 4771128521I) is suspected of intentionally damaging and destroying constructions and facilities on the territory of Küti 17 and 17a in Tallinn belonging to the Republic of Estonia and caused substantial material damage to the Republic of Estonia in the amount of 1 988 260 Estonian kroons (that is 127 072.97 euros). The criminal matter is in the stage of pre-trial proceedings. Aleksandr Rotko has assumed absconding from the criminal proceedings and has left the Republic of Estonia.

According to § 457 (3) of the Code of Criminal Procedure, a request for extradition of a person to be submitted to a foreign state shall be prepared by the prosecutor's office in a pre-trial proceeding.

The request of extradition stated in part I to the present response has been submitted to the United States of America to extradite the suspect Aleksandr Rotko to the Republic of Estonia with the purpose to bring charges against Aleksandr Rotko pursuant to § 201 (2) (4) and § 203 of the Penal Code of the Republic of Estonia and prosecution of Aleksandr Rotko and holding him liable for criminal offences committed by him.

### III Punishment register data

Pursuant to § 6 clauses 1 and 2 of the Punishment Register Act, information concerning punishments of persons shall be entered in the database on the basis of the following court decisions and decisions of the following officials:
1) a conviction in a criminal matter which has entered into force;
2) a decision of an extra-judicial body or a court judgement on the imposition of punishment in a misdemeanour matter which has entered into force, except a decision of an extra-judicial body in caution procedure;
3) a court ruling ordering coercive psychiatric treatment of a person;
4) a court ruling on the application of a sanction with regard to a person younger than eighteen years of age;
5) a judgement, decision, ruling or order of a court or extra-judicial body which is based on a decision or judgement specified in clauses 1 to 4 of this section and which contains information specified in § 12 of this Act;
6) a resolution of the President of the Republic on the review of and appeal for pardon of a convicted offender;
7) a foreign conviction in a criminal matter against an Estonian citizen or an alien who holds a residence permit or right of residence in Estonia which has entered into force, if information concerning his or her punishment has been communicated by a foreign state or if an Estonian court has recognised the judgement of conviction.

Thus, in case the person has not been sentenced or there is no court ruling equal to a court decision, information concerning the persons shall not be entered in the database.

Information about an ongoing criminal proceeding regarding a person is available only in other registers like the Register of Criminal Proceedings (established by a regulation of the Government of the Republic of Estonia RT 1 2001, 22, 121), but these registers are not public and can be accessed only by authorised officials, including the Prosecutor's Office and the police.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Unicom Tõlkebüroo
OÜ Andrus Tupits
Project manager
Reg kood 100545

EXT-ROTKO-000114

## IV      Evidence on A. Rotko giving the orders

During preliminary investigation it has been established that the following companies operated at address Küti street 17 and Küti street 17a, Tallinn, where significant parts of constructions and buildings were removed without authorisation of t he holder, i.e. the Ministry of Justice:

Ela Tolli AS – member of the Board Aleksandr Rotko, OÜ Agrion Partion – member of the Board Olga Kotova, AS BPV – member of the Board Olga Kotova, Ella Kaubanduse OÜ – member of the Board Aleksandr Rotko.

Statements of the witnesses heard during the proceedings demonstrate that everyday operations of the above companies were managed by Aleksandr Rotko. Inquiries made during the investigation show that railroad tracks and harbour pier cover slabs were removed from the territory on the order of Aleksandr Rotko and sold by AS BPV; the sales documents on behalf of AS BPV were signed by Olga Kotova and Aleksandr Rotko.

It has been established with preliminary investigation that the harbour pier road covering slabs were sold to Paldiski Sadamate AS according the contract entered by the parties and sales invoice no 292 issued by AS BPV on 25.08.2006 in the amount of 2 528 727.20 Estonian kroons. In doing so, AS BPV has submitted an application to Paldiski Sadamate AS on 25.08.2006 to transfer the amount of the above invoice to a bank account no 5005786729 Nordea Bank Denmark A/S, International Branch, Strandgade 3 Postboks 850 0900 Kobenhavn C according to an agreement between AS BPV and Danish company Merimpex Co. Ltd.

Preliminary investigation has additionally established that the Financial Manager of Paldiski Sadamate AS, Aivi Vaher, did not agree to AS BPV's request to transfer the whole sales amount to the bank account of the Danish company and transferred the VAT part on the above invoice in the amount of 385 738.05 kroons to the bank account no 221016089551 Hansapank AS (currently Swedbank AS) the seller, AS BPV, who is the person liable to value added tax. Rest of the sum amounting to 2 142 989.15 kroons was transferred by Aivi Vaher to bank account of Danish company Merimpex Co.Ltd no 5005786729 Nordea Bank in the Kingdom of Denmark.

Based on the above, the body conducting criminal proceedings has developed a doubt that Aleksandr Rotko and Olga Kotova have appropriated the funds obtained through criminal activities in the amount of 2 142 989.15 kroons which is punishable as a crime under § 201 of the Penal Code.

With regard to the need for presentation of more severe evidence about behaviour of A. Rotko, the Prosecutor's Office adds the following evidence to the present response:

- Olga Kotova was apprehended as an international fugitive on 08.08.2016 (Annex 1).
During hearing as a suspect on 06.10.2016, O. Kotova gave testimonies according to which she was member of the Board of her companies OÜ Agrin Partion (business registration code 10259785; deleted from register on 31.07.2013) AS Verest (reg.code 10381687, deleted from register on 13.09.2010) and AS BPV (reg. code 10379236, deleted from register on 01.07.2011) and member of the Council of or Ela Tolli AS (reg. code 10712034, deleted from register on 21.03.2016). Aleksandr Rotko was member of the Council of AS Verest (deleted) AS BPV (deleted) and member of the Board of Ela Tolli AS (deleted). Additionally, Aleksandr Rotko was the sole Board member and shareholder of OÜ Ella Kaubandus (reg. no 10948316, deleted on 14.08.2012) which was in turn the sole shareholder of OÜ Agrin Partion (deleted)

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Unicom Tõlkeabüroo OÜ
OÜ Andrus Tupits
Project manager

EXT-ROTKO-000115

managed by Olga Kotova. Her factual tasks included tasks of a secretary. Management of he companies and directing of practical operations were executed by Aleksandr Rotko on whose request O. Kotova signed the documents and invoices (Annex 2).

- On 23.11.2016, Olga Novoseltseva was heard as a witness; she confirmed that "Rotko tried to sell anything he had installed and constructed there himself and that could be sold because his companies had to leave the territory." (Annex 3).

- The criminal proceeding documents show that most of the money was transferred to bank account of Danish company Merimpex Co.Ltd no 5005786729 Nordea Bank in the Kingdom of Denmark. On 29.01.2007, the Northern District Prosecutor's Office submitted a letter rogatory to the Kingdom of Denmark with the purpose to check movements of the money. By virtue of account printouts added to the response, the bank account was managed by Aleksandr Rotko who was the authorised person of Merimpex Co.Ltd as of 25.09.1996 (Annex 4).



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.
Andrus Tupits
Project manager

Thus, Aleksandr Rotko was the organiser of demolition as well as beneficiary of funds received from selling the demolition materials.

## VI Identification of A. Rotko

In accordance with the criminal procedure rules of the Republic of Estonia, identification of Aleksandr Rotko was executed on the result of which the witness O. Novoseltseva recognized A. Rotko. Minutes is added to the present response (Annex 5).

## VI   Statement of charges of A. Rotko

In accordance with the criminal procedure rules of the Republic of Estonia, the State shall not prepare a penal claim addressed to a person as a separate document until presentation of the charges to court for hearing. In such an event, the Prosecutor shall prepare a statement of charges pursuant to § 154 and § 226 (1) of the Code of Criminal Procedure and presents it to the court.

Before preparation of the statement of charges, the definition of the charge shall be defined as a part of the minutes of hearing that is formalised in the course of factual hearing of the suspect.

Since Aleksandr Rotko absconds the proceedings and is hiding himself, suspicion has not been presented to him in person.

On the other hand, if coercive measures are imposed on a person before submission of suspicion, the penal claim addressed to a person is formalized by the State as a court ruling imposing coercive measures which in this case was the 25.08.2007 ruling of Harju County Court on arrest warrant of A. Rotko as person absconding the proceedings and declared a fugitive. Translation of the 25.08.2007 ruling was added to the request of extradition.

Tallinn Circuit Court also established during the hearing discussing the arrest of Olga Kotova, that both Aleksandr Rotko and Olga Kotova were aware of the criminal proceedings against them already since 2007 (Annex 6).

## VII Summary

I hereby verify that the above is true according to my best knowledge. Considering the above and in the name of the Republic of Estonia, I hereby ask extradition of Aleksandr Rotko to the Republic of Estonia with the purpose of criminal proceedings, bringing of charges and prosecution.

I have done my best to present the evidence necessary for satisfying the request of extradition. In case the competent authorities of the United States require additional data for solving the application, I hereby verify with all due respect that I am ready to present required additional information before making of the decision.

Andrei Voronin
District Prosecutor

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Õndrus Tupits
Project manager

Annexes:

1. Notification on detention of Olga Kotova forwarded via European international "SIRENE" system.
2. Minutes of Olga Kotova's 06.10.2016 hearing as a suspect together with its translation.
3. Minutes of Olga Novoseltseva's 23.11.2016 hearing as a witness together with its translation.
4. Materials of response of the Kingdom of Denmark to the letter rogatory: O. Order of directing the funds to company Merimpex Co.Ltd signed by Kotova, documents of opening a bank account on the name of Merimpex Co.Ltd.
5. Minutes of identification of Aleksandr Rotko by Olga Novoseltseva together with its translation.
6. 10.10.2016 ruling of Tallinn Circuit Court in criminal matter no 1-07-10649 (06730000427).



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Unicom Tõlkebüroo
Andrus Tupits
Project manager

# SIRENE FORM



**SIRENE.EE**
*Protecting Europe without borders*

## G. MATCHING AN ALERT (HIT)

| Form details | | |
|---|---|---|
| Date + time of message | 001. | 2016-08-08 06:42 UTC |
| Message reference number | 002. | 2016080051 |
| Sending SIRENE | 003. | FINLAND (0015) |
| Destination SIRENE | 004. | ESTONIA (0017) |
| Schengen reference number | 005. | EE0000000000019000001 |
| Important notice | 311. | URGENT:<br>URGENT! ARREST! |
| **Identity** | | |
| Family names | 006. | KOTOVA // KOTOVA |
| First names | 007. | OLGA // OLGA |
| Date of birth | 009. | 19771128 |
| Name at birth | 008. | |
| Gender | 012. | Female (0001) |
| Nationalities | 013. | ESTONIA (0233) |
| Place of birth | 010. | |
| Identity alias number | 310. | 0001 |
| Main record | 316. | NO |
| Alias | 011. | |
| Previously used name(s) | 266. | |
| **Details of the matching of the alert (hit)** | | |
| Place, date, time the alert was hit | 085. | Helsinki-Vantaa International Airport 8.8.2016 at 8.30 O'clock |
| Circumstances surrounding the hit | 086. | Border control when w/p arrived from the United States |
| Department that hit the alert and followed the relevant procedures | 087. | Finnish Border Guards |
| Actions taken | 088. | W/p is taken into custody |
| Information request | 089. | Dear colleagues; we kindly ask you to urgently inform us about the validity of the European Arrest Warrant, about the time limit when the crime expires to be precise. We also kindly ask you to send us the original EAW and the translation into Finnish or English as soon as possible. Please send the EAWs to the address: sirene.krp@poliisi.fi. |
| Additional information | 090. | |
| Authority currently responsible for dealing with the hit | 091. | Sirene Finland/Martina |

EXT-ROTKO-000119

Politsei-ja Piirivalveamet

# KAHTLUSTATAVA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000427

06.10.2016 Tallinn
Uurimistoimingu algus: 10.05

Politsei-ja Piirivalveameti Põhja prefektuuri kriminaalbüroo raskete kuritegude talituse üldkuritegude teenistuse politseileitnant Siret Rätsepp, juhindudes KrMS §-dest 34, 75, 76 ja 146, kuulas üle kahtlustatava:

Nimi:                                     Olga Kotova

Isikukood või sünniaeg: 28.11.1977 (ik 47711285211)

Perekonnaseis:                     lahutatud

Kodakondsus:                       Ameerika Ühendriigid

Haridus:                               kõrgem

Emakeel:                              vene keel

Elu- või asukoht ja aadress: 148 South Arabella way Saint Johns, Ameerika Ühendriigid

Töökoht või õppeasutus: ei tööta

Kontaktandmed:            tel 9048145452, olganewaddress@hotmail.com

Isikusamasus tuvastatud: Ameerika Ühendriikide pass nr 547393916

KrMS § 34. Kahtlustatava õigused ja kohustused

Kahtlustataval on õigus: teada kahtlustuse sisu ja anda selle kohta ütlusi või keelduda ütluste andmisest; teada, et tema ütlusi võidakse kasutada süüdistuseks tema vastu; kaitsja abile; tõlgi abile; kohtuda kaitsjaga teiste isikute juuresolekuta; kaitsja juuresolekul olla üle kuulatud, osaleda vastastamisel, ütluste seostamisel olustikuga ja tema äratundmiseks esitamisel; osaleda vahistamistaotluse arutamisel kohtus; esitada tõendeid; esitada taotlusi ja kaebusi; tutvuda menetlustoimingu protokolliga ning teha menetlustoimingu tingimuste, käigu ja tulemuste ning protokolli kohta avaldusi, mis protokollitakse; anda nõusolek kokkuleppemenetluse kohaldamiseks, osaleda kokkuleppemenetluse läbirääkimistel, teha ettepanekuid kohaldamisele kuuluva karistusliigi ja -määra kohta ning sõlmida või sõlmimata jätta kokkuleppemenetluse kokkulepe. KrMS § 75 lg 3¹ alusel on kahtlustataval ja tema kaitsjal õigus saada ülekuulamise käigus koopia kahtlustatava ülekuulamise protokollist käesoleva seadustiku § 76 lg 1 p-des 1–3 sätestatud ulatuses.

Kahtlustatav on kohustatud: ilmuma uurimisasutuse, prokuratuuri või kohtu kutsel; osalema menetlustoimingus ning alluma uurimisasutuse, prokuratuuri ja kohtu korraldustele.

2. Kahtlustatavale on tutvustatud tema õigusi ja kohustusi ning selgitatud nende sisu.

_____
(kahtlustatava allkiri)

Uurimistoimingus osaleb tõlk Ele Uutmaa, kes on KrMS § 161 lõike 6 kohaselt kohustatud tõlkima kõik menetlustoimingusse puutuva täpselt ning täielikult ning hoidma saladuses talle tõlkimisel teatavaks saanud andmeid. Teda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

_____
(tõlgi allkiri)

1

EXT-ROTKO-000120

Ülekuulamisel osaleb:
- vandeadvokaat Janek Valdma (Advokaadibüroo Valdma & Partnerid)
- ringkonnaprokurör Andrei Voronin (Põhja Ringkonnaprokuratuur)

Kasutatud tehnikavahendid: ei kasutatud.

Kvalifikatsioon: Olga Kotova't kahtlustatakse KarS § 203 järgi (alates 01.01.2015 KarS § 203 lg 1 järgi) kvalifitseeritava kuriteo toimepanemises, mis seisnes alljärgnevas.

Olga Kotova oli OÜ Agrin Partion (äriregistri kood 10259785; registrist kustutatud 31.07.2013), AS Verest (äriregistri kood 10381687, registrist kustutatud 13.09.2010) ja AS BPV (äriregistri kood 10379236, registrist kustutatud 01.07.2011), juhatuse liige ning Ela Tolli AS (äriregistri kood 10712954, registrist kustutatud 21.03.2016) nõukogu liige. Aleksandr Rotko oli AS Verest (kustutatud), AS BPV (kustutatud) nõukogu liige ja Ela Tolli AS (kustutatud) juhatuse liige. Lisaks oli Aleksandr Rotko OÜ Ella Kaubanduse (äriregistri kood 10448316, registrist kustutatud 14.08.2012) juhatuse ainuliige ja ainuosanik, milline ettevõte oli omakorda Olga Kotova juhitud OÜ Agrin Partion (kustutatud) ainuosanik.

Olga Kotova, tegutsedes ühiselt ja kooskõlastatult Aleksandr Rotko'ga, ajavahemikul 07.06.2006.a kuni 01.08.2006.a rikkus ja hävitas tahtlikult Eesti Vabariigi omandis, kuid ülalmainitud ettevõtete valduses olevaid ehitisi ja rajatisi asukohaga Küti 17 ja 17a, Tallinn, millega tekitas Eesti Vabariigile oluliselt varalist kahju. Nimelt:
- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a oleval kinnistul asuvalt sadamakailt ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Aleksandr Rotko ja Olga Kotova korraldusel sadamakai olulised osad – teekatteplaadid suuruses 0,14x2,00x6,00 kokku 460 tk, katteplaadid suuruses 0,13x1,23x1,6 kokku 164 tk ning katteplaadid suuruses 0,13x1,23x0,94 kokku 35 tk, tekitades Eesti Vabariigile varalist kahju plaatide maksumuse ulatuses, s.o 1 755 096,60 krooni suuruses summas;
- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a asuvalt kinnistult ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Aleksandr Rotko ja Olga Kotova korraldusel kinnistu territooriumi väravad ja lõhuti need, tekitades Eesti Vabariigile varalist kahju kogusummas 33 040 krooni;
- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn asuvalt territooriumilt Eesti Vabariigile kuuluva kinnistu olulise osa – raudteerööpad kogukaaluga 66,6 tonni ning koguväärtusega 156 060 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 156 060 krooni;
- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuulunud katlamaja hoone ning eemaldati sealt demonteerimise teel küttekatlad väärtusega 12 500 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 12 500 krooni;
- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuuluv puidutööstushoone ning eemaldati sealt demonteerimise teel küttekatlad

2

EXT-ROTKO-000121

väärtusega 25 000 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 25 000 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuuluv administratiivhoone ning rikuti demonteerimise teel sellesse paigaldatud vee-, sooja,- ja elektrivarustuse seadmed koguväärtusega 54 300 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 54 300 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuulunud ja muinsuskaitse all oleva vesilennukite angaar, eemaldades sealt kupli avade luugid koguväärtusega 20 000 krooni ning tekitades Eesti Vabariigile varalist kahju kogusummas 20 000 krooni.

Ülalkirjeldatud tegevusega tekitas Olga Kotova, tegutsedes ühiselt ja kooskõlastatult Aleksandr Rotkoga, Eesti Vabariigile varalist kahju kogusummas 2 055 996,60 krooni (ehk 131 402,13 eurot).

**Seega pani Olga Kotova toime võõra asja rikkumise ja hävitamise, millega on asja omanikule Eesti Vabariigile tekitatud vähemalt oluline varaline kahju, s.o KarS § 203 järgi kvalifitseeritava kuriteo.**

**Alates 01.01.2015 on Olga Kotova tegevus karistatav KarS § 203 lg 1 järgi kui võõra asja rikkumine ja hävitamine, kui sellega on tekitatud oluline kahju.**

Peale selle, kahtlustatakse Olga Kotova't KarS § 201 lg 2 p 2, 4 järgi (alates 01.01.2015 KarS 201 lg 2 p 2, 4 järgi) kvalifitseeritava kuriteo toimepanemises, mis seisnes alljärgnevas.

Olga Kotova oli OÜ Agrin Partion (äriregistri kood 10259785; registrist kustutatud 31.07.2013), AS Verest (äriregistri kood 10381687, registrist kustutatud 13.09.2010) ja AS BPV (äriregistri kood 10379236, registrist kustutatud 01.07.2011), juhatuse liige ning Ela Tolli AS (äriregistri kood 10712954, registrist kustutatud 21.03.2016) nõukogu liige. Aleksandr Rotko oli AS Verest (kustutatud), AS BPV (kustutatud) nõukogu liige ja Ela Tolli AS (kustutatud) juhatuse liige. Lisaks oli Aleksandr Rotko OÜ Ella Kaubanduse (äriregistri kood 10448316, registrist kustutatud 14.08.2012) juhatuse ainuliige ja ainuosanik, milline ettevõte oli omakorda Olga Kotova juhitud OÜ Agrin Partion (kustutatud) ainuosanik.

Olga Kotova, tegutsedes ühiselt ja kooskõlastatult Aleksandr Rotko'ga, ajavahemikul alates 2000.a aastast kuni 01.08.2006 teostas ebaseaduslikku valdust Eesti Vabariigile kuuluval territooriumil Küti 17 ja 17a Tallinn.

Saanud teada, et Eesti Vabariik soovib kehtestada oma valdust eelnimetatud endale kuuluva territooriumi ja territooriumi juurde kuuluvate ehitiste ja rajatiste suhtes, otsustasid Olga Kotova ning Aleksandr Rotko demonteerida võimalikult rohkem vara territooriumil paiknevatelt objektidelt ning müüa see maha, pöörates müügist saadud raha enda kontrolli all oleva AS BPV (kustutatud) ning äriühingu Merimpex Co. Ltd kasuks. Nimelt:

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a oleval kinnistul asuvalt sadamakailt ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Aleksandr Rotko ja Olga Kotova korraldusel sadamakai olulised osad – teekatteplaadid suuruses 0,14x2,00x6,00 kokku 460 tk, katteplaadid suuruses 0,13x1,23x1,6 kokku 164 tk ning katteplaadid suuruses 0,13x1,23x0,94 kokku



35 tk, tekitades Eesti Vabariigile varalist kahju plaatide maksumuse ulatuses, s.o 1 755 096,60 krooni suuruses summas;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a asuvalt kinnistult ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Aleksandr Rotko ja Olga Kotova korraldusel kinnistu territooriumi väravad ja lõhuti need, tekitades Eesti Vabariigile varalist kahju kogusummas 33 040 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn asuvalt territooriumilt Eesti Vabariigile kuuluva kinnistu olulise osa – raudteerööpad kogukaaluga 66,6 tonni ning koguväärtusega 156 060 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 156 060 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuulunud katlamaja hoone ning eemaldati sealt demonteerimise teel küttekatlad väärtusega 12 500 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 12 500 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuuluv puidutööstushoone ning eemaldati sealt demonteerimise teel küttekatlad väärtusega 25 000 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 25 000 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuuluv administratiivhoone ning rikuti demonteerimise teel sellesse paigaldatud vee-, sooja,- ja elektrivarustuse seadmed koguväärtusega 54 300 krooni, tekitades Eesti Vabariigile varalist kahju kogusummas 54 300 krooni;

- ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Aleksandr Rotko ja Olga Kotova korraldusel ebaseaduslikult, s.t ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Küti 17 ja 17a, Tallinn territooriumil asuv Eesti Vabariigile kuulunud ja muinsuskaitse all oleva vesilennukite angaar, eemaldades sealt kupli avade luugid koguväärtusega 20 000 krooni ning tekitades Eesti Vabariigile varalist kahju kogusummas 20 000 krooni.

Seejärel müüsid Olga Kotova ja Aleksandr Rotko enamuse Tallinnas, Küti 17 ja 17a oleval kinnistul asuvalt sadamakailt ebaseaduslikult demonteeritud ja endiselt Eesti Vabariigile kuulunud teekatteplaate Paldiski Sadamate AS-le 18.juuli 2006.a lepingu alusel, mis sõlmiti AS BPV (kustutatud), keda esindas juhatuse liige Olga Kotova, ja Paldiski Sadamate AS, keda esindas juhatuse liige Aleksandr Kovaljov, vahel. AS BPV (kustutatud) juhatuse liikme Olga Kotova isikus esitas Paldiski Sadamate AS-le arve nr 292 summas 2 528 727,20 krooni ning selgitusega „ Ehitusmaterjalid ja tehnika". Vastavalt Olga Kotova 25.08.2006.a avaldusele tasus Paldiski Sadamate AS 06.09.2006.a arve nr 292 alusel Olga Kotova ja Aleksandr Rotko kontrolli all oleva äriühingu Merimpex Co. Ltd arvelduskontole 2 142 989,15 krooni, samuti tasus 385 738,05 krooni AS BPV (kustutatud) arvelduskontole Swedbank AS-s. Sellega pöörasid Olga Kotova ja Aleksandr Rotko ebaseaduslikult nende valduses olevad võõrad vallasasjad kolmanda isiku kasuks, saades tulu summas 2 914 465,25 krooni ehk 186 268,27 eurot.

EXT-ROTKO-000123



Samuti müüsid Olga Kotova ja Aleksandr Rotko AS BPV (kustutatud) nimelt Tallinnas, Küti 17 ja 17a oleval kinnistul asuvalt sadamakailt ebaseaduslikult demonteeritud ja endiselt Eesti Vabariigile kuulunud raudteerööpad peamiselt AS-le Kuusakoski. Raudteerööbaste ja nende kinnitustarvikute müügist laekus AS-le BPV (kustutatud) tema poolt AS-le Kuusakoski esitatud 28.07.2006.a arve nr 0120846 alusel tulu summas 201 758,76 krooni ning 26.07.2006.a arve nr 0118134 alusel tulu summas 504 660,04 krooni. Sellega pöörasid Olga Kotova ja Aleksandr Rotko ebaseaduslikult nende valduses olevad võõrad vallasasjad kolmanda isiku kasuks, saades tulu kogusummas 706 418,80 krooni ehk 45 148,39 eurot.

Samuti müüsid Olga Kotova ja Aleksandr Rotko AS BPV (kustutatud) nimelt Tallinnas, Küti 17 ja 17a oleval kinnistul asuvatelt objektidelt ebaseaduslikult demonteeritud ja endiselt Eesti Vabariigile kuulunud ehitiste ja rajatiste olulised osad vanametallina peamiselt AS-le Refonda. Demonteeritud ehitiste ja rajatiste oluliste osade müügist laekus AS-le BPV (kustutatud) tema poolt AS-le Refonda esitatud 14.07.2006.a arve nr 256 alusel tulu summas 11 979,36 krooni, 05.07.2006.a arve nr 241 alusel tulu summas 14 917,85 krooni, 06.07.2006.a arve nr 243 alusel tulu summas 15 972 krooni. Sellega pöörasid Olga Kotova ja Aleksandr Rotko ebaseaduslikult nende valduses olevad võõrad vallasasjad kolmanda isiku kasuks, saades tulu summas 42 862, 21 krooni ehk 2 739,39 eurot.

Ülalkirjeldatud tegevusega tekitasid Olga Kotova ja Aleksandr Rotko Eesti Vabariigile varalist kahju kogusummas 234 156,05 eurot.

**Seega pani Olga Kotova toime valduses oleva võõra vallasasja või isikule usaldatud muu võõra vara ebaseaduslikult kolmanda isiku kasuks pööramise grupi poolt ja suures ulatuses, s.o KarS § 201 lg 2 p 2 ja 4 järgi kvalifitseeritava kuriteo.**

**Alates 01.01.2015 on Olga Kotova tegevus karistatav KarS § 201 lg 2 p 2, 4 järgi kui valduses oleva võõra vallasasja või isikule usaldatud muu võõra vara ebaseaduslikult kolmanda isiku kasuks pööramine grupi poolt ja suures ulatuses.**

Ütlused:

Küsimus: Kas Te olete toime pannud kuriteo, milles Teid kahtlustatakse?

Vastus: Ei ole kuritegu toime pannud. Ma asusin lennusadamasse tööle sügisel 2001, minu tööandjaks oli AS BPV, mina töötasin seal sekretärina. Kui mina läksin lennusadamasse tööle, siis olid juba ettevõtted, mis kahtlustuses nimetatud on, seal tegutsenud. Arvatavasti 2002 aasta alguses küsis Aleksandr Rotko minult ja raamatupidajalt Tatjana Jekimova´lt luba kanda meie nimed juhatuse liikmetena äriregistrisse. Et just oli eelmine juhatuse liige lahkunud, siis Rotko selgitas, keegi peab juhatuse liige olema ja minul sellest mingeid probleeme ei teki. Ma ei oska hetkel täpsustada nende ettevõtete nimesid, milel juhatuse liikemks mind määrati. Samuti ei mäleta ma mitme firma juhatuse liikmeks olemisest jutt käis. Aleksandr Rotko ütles, et nii tuleb teha ja me ei olnud sellele vastu. Me pidime jääme täitma oma seniseid kohuseid, mina sekretärina ja Tatjana Jekimova raamatupidajana. See tähendab, et minul polnud alluvaid, ma ei andnud kellelegi korraldusi. Minu funktsioon ettevõttes ei muutunud. Mulle meenub, et ka Anti Nööp oli kusagil Rotko ettevõttes juhatuse liige. Me töötasime tavapäraselt edasi. Kui Rotko palus allkirjastada ettevõtte bilanssi, siis ma allkirjastasin selle. Vahel, kui teda polnud kontoris, palus ta, et ma allkirjastaksin mõne arve. Ma tegin seda. 2006 suvel pidi ettevõte lennusadamast välja kolima. Ma mäletan, et tuli korraldus väljakolimiseks, aga kuidas või millise dokumendiga ja millal täpselt see korraldus tuli, ma ei mäleta. Aleksandr Rotko palus mul koostada nimekiri kogu mööblist ja kantseleikaubast, mis ettevõtte kontoris asus. Ma tegin selle valmis. Samuti palus ta pakkida kogu dokumentatsiooni, mis ettevõtte kontoris Lennusadamas oli. Siis ühel päeval kolisin ma välja. Ma ei mäleta, mis päeval see oli ja kuidas see toimus. Mina ei võtnud

EXT-ROTKO-000124

sealt midagi kaasa. Minu kontori aknad ei olnud Lennusadamas üldse territooriumi poole ja mina ei näinud, mis territooriumil toimus. Tahan siinkohal täpsustada, et mina liikusin lennusadama territooriumil üldse väga vähe, mõnel korral sest kontsadega oli seal võimatu kõndida. Ma teadsin, et ettevõtted kolivad Lennusadam territooriumilt välja ja viivad kaasa neile kuuluvat vara. Seda teadsid kõik, kes ettevõtetes töötasid, et viiakse ära vara, mis kuulus neile. Lennusadama kontoris töötasid peale minu Olga Novoseltseva, Tatjana Jekimova, Olga Savitskaja, Anti Nööp ja Aleksandr Rotko. Mina peale väljakolimist enam Lennusadamasse ei läinud. 20.09.2006 abiellusin Aleksandr Rotko´ga. Temal oli Ameerika Ühendriikide alaline elamisluba. Et Aleksandr Rotko´t ei sidunud Eestiga enam midagi, otsustasime me kolida USA-sse. Tema sõitis Eestist ära arvatavasti oktoobris 2006, mina ootasin, et mulle antaks Ameerika Ühendriikide viisa. Vahepeal oli Aleksandr Rotko saanud teada, et USA viisaga võib minna mitu aastat, siis otsustasime, et mina sõidan Kanadasse ja hakkan seal inglise keelt õppima. Mina sõitsin Eestist ära detsembris 2006. Esialgu sõitsin Venemaale sugulaste juurde, sealt sõitsin Kanadasse Niagara Kolledžisse. Ma ei teadnud, et mind Eestis otsitakse. Ma ei mäleta, et oleksin suhelnud peale Eestist ärasõitu mõne kolleegiga Lennusadamast.

Küsimus: Milline seos oli Teil ettevõttega OÜ Agrin Partion?

Vastus: Ettevõtet tean. Arvatavasti oli see üks ettevõte, mille juhatuse liikmeks mul Aleksandr Rotko palus olla.

Küsimus: Kus, millises tegevusvaldkonnas ja millega konkreetselt tegutses OÜ Agrin Partion?

Vastus: Ma ei tea, millega ettevõte tegeles.

Küsimus: Kes juhtis OÜ-t Agrin Partion reaalselt?

Vastus: Mina tean, et kõiki ettevõtteid, mis lennusadama kontoris asusid, juhtis Aleksandr Rotko.

Küsimus: Milline seos oli Teil ettevõttega AS Verest?

Vastus. Ka sellest ettevõttest tean niipalju, et Aleksandr Rotko palus mul olla ettevõtte juhatuse liikmeks.

Küsimus: Kus, millises tegevusvaldkonnas ja millega konkreetselt tegutses AS Verest?

Vastus: Seda ei oska öelda.

Küsimus: Kes juhtis AS-i Verest reaalselt?

Vastus: Aleksandr Rotko.

Küsimus: Milline seos oli Teil ettevõttega AS BPV?

Vastus: Kui ma õigesti mäletan, siis AS-ist BPV sain ma palka.

Küsimus: Kelle soovitusel saite AS BPV juhatuse liikmeks?

Vastus: Rotko palus.

Küsimus: Kus, millises tegevusvaldkonnas ja millega konkreetselt tegutses AS BPV?

Vastus: Ma tean, et tegeles puidu ümbertöötlemisega lennusadama territooriumil.

Küsimus: Kes juhtis AS-i BPV reaalselt?

Vastus: Aleksandr Rotko.

Küsimus: Milline seos oli Teil ettevõttega Ela Tolli AS?

Vastus: Sellega oli sama lugu, naga ma olen juba rääkinud.

Küsimus: Kelle soovitusel saite Ela Tolli AS nõukogu liikmeks?

Vastus: Ma ei tea ise, et oleksin olnud nõukogu liige, mäletan et mulle räägiti juhatuse liikme staatusest.

Küsimus: Kus, millises tegevusvaldkonnas ja millega konkreetselt tegutses Ela Tolli AS?

Vastus: Ei tea.

Küsimus: Kes juhtis Ela Tolli AS-i reaalselt?

Vastus: Arvatavasti Rotko.

Küsimus: Kuidas olite seotud aadressidega Küti 17 ja Küti 17a Tallinnas aastal 2006?

Vastus: See oli Lennusadama territoorium, kus asusid ettevõtted, mis kahtlustuses on välja toodud.

Küsimus: Kas, kuidas ja millal saite teada, et Eesti Vabariik soovib kehtestada valdust Küti 17 ja Küti 17a Tallinn territooriumile ja territooriumi juurde kuuluvate ehitiste ja rajatiste suhtes?

Vastus: Ma ei mäleta täpselt, millal ja kuidas see toimus, kõik teadsid seda. Seal võis olla juttu



väljakolimiseks antud tähtajast.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a oleval kinnistul asuvalt sadamakailt teekatteplaadid suuruses 0,14x2,00x6,00 kokku 460 tk, katteplaadid suuruses 0,13x1,23x1,6 kokku 164 tk ning katteplaadid suuruses 0,13x1,23x0,94 kokku 35 tk. Kelle korraldusel toimus eemaldamine, kes eemaldas, kuhu paigutati, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Mina ei tea, kuidas eemaldamine toimus, kes eemaldas, kuhu paigutati, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest. Mina tean öelda, seda et mina ei ole korraldusi nende eemaldamiseks andnud. Samuti ei oska ma öelda, kas ja millisest ajast teekatteplaadid seal üldse olid.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Tallinn, Küti 17 ja 17a asuvalt kinnistult kinnistu territooriumi väravad ja lõhuti need. Kelle korraldusel toimus eemaldamine, kes eemaldas, kuhu paigutati, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Ma ei tea sellest midagi. Tean öelda, seda et mina ei ole korraldusi nende eemaldamiseks andnud.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a eemaldati Küti 17 ja 17a, Tallinn asuvalt territooriumilt Eesti Vabariigile kuuluva kinnistu oluline osa - raudteerööpad kogukaaluga 66,6 tonni. Kelle korraldusel toimus eemaldamine, kes eemaldas, kuhu paigutati, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Mina ei tea, kuidas eemaldamine toimus, kes eemaldas, kuhu paigutati, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest. Mina tean öelda, seda et mina ei ole korraldusi nende eemaldamiseks andnud. Samuti ei oska ma öelda, kas ja millisest ajast raudteerööpad seal üldse olid.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Küti 17 ja 17a, Tallinn territooriumil asuvat Eesti Vabariigile kuuluvat katlamaja hoonet ning eemaldati sealt demonteerimise teel küttekatlad. Kelle korraldusel toimus kahjustamine ja katelde demonteerimine, kes kahjustas, kes demonteeris, kuhu paigutati, kas, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Ma ei tea nedest midagi. Tean ainult, et ajal, mil mina lennusadamasse tööle läksin, ei olnud lennusadamas kütet, aga mingist hetkest hakati kütma.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Küti 17 ja 17a, Tallinn territooriumil asuvat Eesti Vabariigile kuuluvat puidutööstushoonet ning eemaldati sealt demonteerimise teel küttekatlad. Kelle korraldusel toimus kahjustamine ja katelde demonteerimine, kes kahjustas, kes demonteeris, kuhu paigutati, kas, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Ei oska midagi öelda.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Küti 17 ja 17a, Tallinn territooriumil asuvat Eesti Vabariigile kuuluvat administratiivhoonet ning rikuti demonteerimise teel sellesse paigaldatud vee-, sooja,- ja elektrivarustuse seadmed. Kelle korraldusel toimus kahjustamine ja katelde demonteerimine, kes kahjustas, kes demonteeris, kuhu paigutati, kas, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Ma ei oska sellest rääkida. Kui mina lahkusin lennusadamast, oli seal soe, oli valgus ja vesi.

Küsimus: Ajavahemikul 07.06.2006.a kuni 01.08.2006.a kahjustati Küti 17 ja 17a, Tallinn territooriumil asuvat Eesti Vabariigile kuulunud ja muinsuskaitse all olevat vesilennukite angaari, eemaldades sealt kupli avade luugid. Kelle korraldusel toimus eemaldamine, kes eemaldas, kuhu paigutati, kas, millise ettevõtte nimelt ja kellele müüdi ning millise hinna eest?

Vastus: Ma ei tea sellest midagi.

Küsimus: BPV AS ja AS Kuusakoski vormistasid musta ja värvilise metalli, vanametalli ja metallijäätmete üleandmise-vastuvõtmise akti nr o118134 (26.07.2006), teie kirjutasite müüja BPV AS-i poole pealt alla. Mida müüsite, millistel põhjustel müüsite ja kust pärines müüdav vara?

EXT-ROTKO-000126



Vastus: Ma eelnevalt ütlesin ka, et kui Rotko´d polnud kontoris ja kui ta oli mul palunud midagi allkirjastada, tegin ma seda. Ma ei kontrollinud paberid, mida allkirjastasin, sest mul polnud põhjust ettevõtet mitte usaldada. Ma teadsin ainult seda, et ettevõtted peavad lennusadamast välja kolima ja müüvad oma vara.

Küsimus: BPV AS ja AS Kuusakoski vormistasid musta ja värvilise metalli, vanametalli ja metallijäätmete üleandmise-vastuvõtmise akti nr o120846 (28.07.2006), teie kirjutasite müüja BPV AS-i poole pealt alla. Mida müüsite, millistel põhjustel müüsite ja kust pärines müüdav vara?

Vastus: Ma eelnevalt ütlesin ka, et kui Rotko´d polnud kontoris ja kui ta oli mul palunud midagi allkirjastada, tegin ma seda. Ma ei kontrollinud paberid, mida allkirjastasin, sest mul polnud põhjust ettevõtet mitte usaldada. Ma teadsin ainult seda, et ettevõtted peavad lennusadamast välja kolima ja müüvad oma vara.

Küsimus: Allkirjastasite BPV AS nimelt 05.07.2006 arve nr 241 Refonda OÜ-le vanametalli müügi kohta. Mida BPV AS müüs Refonda OÜ-le, millistel põhjustel müüsite ja kust pärines müüdav vara?

Vastus: Ma eelnevalt ütlesin ka, et kui Rotko´d polnud kontoris ja kui ta oli mul palunud midagi allkirjastada, tegin ma seda. Ma ei kontrollinud paberid, mida allkirjastasin, sest mul polnud põhjust ettevõtet mitte usaldada. Ma teadsin ainult seda, et ettevõtted peavad lennusadamast välja kolima ja müüvad oma vara.

Küsimus: Allkirjastasite BPV AS nimelt 06.07.2006 arve nr 243 Refonda OÜ-le vanametalli müügi kohta. Mida BPV AS müüs Refonda OÜ-le, millistel põhjustel müüsite ja kust pärines müüdav vara?

Vastus: Sama jutt, nagu eelmistele vastustele. Ma ei olnud teadlik, mis vara täpselt müüdi.

Küsimus: Allkirjastasite BPV AS nimelt 14.07.2006 arve nr 256 Refonda OÜ-le vanametalli müügi kohta. Mida BPV AS müüs Refonda OÜ-le, millistel põhjustel müüsite ja kust pärines müüdav vara?

Vastus: Sama jutt, nagu eelmistele vastustele. Ma ei olnud teadlik, mis vara täpselt müüdi.

Küsimus: Sõlmisiste AS BPV nimelt Paldiski Sadamate AS-iga müügileping nr 1 (18.07.2006), millega müüsite Paldiski Sadamate AS-ile AS BPV omanduses olevad ehitusmaterjalid ja tehnika. Millistel põhjustel BPV AS müüs vara Paldiski Sadamate AS-ile?

Vastus: Rotko palus mul dokumendi allkirjastada, ma teadsin, et firmad müüvad nendele kuuluvat vara.

Küsimus: Olete allkirjastanud avalduse Paldiski Sadamate AS-ile, millega palute tasuda arve Merimpex Co.Ltd arveldusarvele Nordea Bank Danmark AS-is. Millistel põhjustel palusite teha ülekanne AS-ile BPV kuuluva vara eest Merimpex Co.Ltd-le?

Vastus: Tegin seda Rotko palvel. Ma ise ei tea Merimpex Co.Ltd-st mitte midagi.

Küsimus: Milline seos oli Teil ettevõttega Merimpex Co.Ltd?

Vastus: Minul puudub seos selle ettevõttega.

Küsimus: Millistel põhjustel kasutas Aleksandr Rotko aastal 2006 AS Eesti Post nimekasti nr 1525, mis asus Kalamaja postkontoris?

Vastus: Ma ei oska sellele vastata. Mina ei tea, miks Rotko´l nimekasti tarvis oli. Mina seda kasutanud ei ole.

Küsimus: Kellele kuulus sõiduauto Acura Trooper SLX reg numbriga 61ZGB?

Vastus: See oli Rotko auto. Tema palus minul auto kirjutada Olga Novoseltseva nimele. Ma ei tea, miks Rotko palus mul sõiduki Olga nimele kirjutada. Mina ainult vormistasin Rotko palvel auto Olga nimele ja rohkem ei tea mina sellest autost midagi.

Küsimus: Kas, millisel viisil ja millise summa tasus sõiduauto eest Olga Novoseltseva?

Vastus: Minu ja Olga vahel küll raha ei liikunud.

Küsimus: Kas ja millistel põhjustel suhtlesite Olga Novoseltseva´ga peale Eesti Vabariigist lahkumist?

Vastus: Ma ei mäleta, et oleks temaga suhelnud.

Küsimus: Kellele kuulus märtsis 2007 e-posti aadress amal-221@yandex.ru?

Vastus: Mina ei tea midagi sellest aadressist.

8

Küsimus: Kus viibib Aleksandr Rotko käesoleval ajal?

Vastus: Ma ei tea, kus ta viibib praegusel hetkel. Me lahutasime aastal 2012. Teda nägingi viimati New Yorkis 2012. Samuti ei ole ma temaga sellest alates suhelnud.

Prokuröri küsimus: Millistel kaalutlustel andsite nõusoleku juhatuse liikmeks asumiseks?

Vastus: Rotko palvel.

Prokuröri küsimus: Milline haridus oli Teil 2001?

Vastus: Kesk-eri. Ma lõpetasin Tallinna Majanduskooli, ärijuhtimise erialal, lõpetasin keskmise tasemega.

Prokuröri küsimus: Millised oli Teie eelmised töökohad, enne lennusadamasse asumist?

Vastus: Töötasin umbes aasta kassiirina MC Donaldsis, umbes aasta jagu müüjana mööblifirmas A&A, paar kuud sekretärina ühes väikeses raamatupidamisfirmas. Ma ei mäleta, kes juhtis raamatupidamisfirmat.

Prokuröri küsimus: Millistel asjaoludel ja kuidas sattusite tööle lennusadamasse?

Vastus: Kuulutuse kaudu. Ma ei mäleta, kus kuulutus ilmus.

Prokuröri küsimus: Millal täpselt ja kuidas lahkusite Eestist?

Vastus: Detsmebris 2006 läksin Peterburisse, seal olin kuni 2007 alguseni, misjärel sõitsin Kanadasse.

Prokuröri küsimus: Millega tegelesite Venemaal?

Vastus: Millegagi ei tegelenud, peatusin sugulaste juures. Plaane Venemaal millegagi tegeleda, mul ei olnud.

Prokuröri küsimus: Millistest vahenditest elasite Venemaal?

Vastus: Ma olin sugulastel külas.

Prokuröri küsimus: Kes finantseeris Kanada piletite ostu?

Vastus: Ei mäleta.

Prokuröri küsimus: Milline oli teie suhe Olga Savitskaja´ga?

Vastus: Normaalsed suhted.

Prokuröri küsimus: Millal viimati suhtlesite Olga Savitskaja´ga?

Vastus: Ei mäleta.

Prokuröri küsimus: Mis ametikohti täitsid isikud Lennusadama kontoris?

Vastus: Olga Novoseltseva oli raamatupidaja, Tatjana Jekimova oli raamatupidaja. Anti Nööp sadama kapten. Olga Savitskaja ametinimetust ma täpselt ei mäleta, kuid ta tegeles puidu ümbertöötlemisega seotud dokumetatsiooniga.

Prokuröri küsimus: Kes eelnimetatud isikutest ja kui hästi valdas eesti keelt?

Vastus: Anti Nööp valdas eesti keelt vabalt. Mina valdasin hästi. Teiste kohta ei oska öelda, sest mina nendega eesti keeles ei suhelnud. Rotko´ga mina samuti eesti keeles ei suhelnud.

Prokuröri küsimus: Kuidas olete Teie õppinud eesti keelt?

Vastus: Kuni 13-nda eluaastani kasvatas mind võõrasisa, tema oli eestlane. Sealt ma oskangi eesti keelt. Emaga rääkisin vene keeles. Poolvennaga rääkisin nii eesti kui vene keeles.

Prokuröri küsimus: Kes koostas lennusadamas eestikeelsed dokumendid?

Vastus: Mingi osa dokumente koostasin mina, mingi osa juristid, mõned dokumendid koostasid raamatupidajad ja Olga.

Prokuröri küsimus: Millega tegelesite Kanadas?

Vastus: Algul umbes 2,5 aastat õppisin. Siis asusin tööle, olin erinevates firmades abitööline.

Prokuröri küsimus: Kes finantseeris Teie elu Kanadas?

Vastus: Ma töötasin Kanadas kogu aeg, ka õpingute ajal. Ma sain ka stipendiumi. Ise finantseerisin.

Prokuröri küsimus: Mida Te teate Aleksandr Rotko elust enne Lennusadamat?

Vastus: Ma tean, et ta oli laevakapten. Tean, et ta sündis Ukrainas. Ma ei tea, millal ta Eestisse sattus.

Prokuröri küsimus: Kas olete kuulnud, et Aleksandr Rotko oleks kellegagi suhelnud eesti keeles?

Vastus: Ma ei mäleta.

Prokuröri küsimus: Kas Teile on teada, kas Aleksandr Rotko valdas eesti keelt?

Vastus: Mulle ei ole see teada, sest mina temaga eesti keeles ei suhelnud.

*Olga Kotova'le esitatakse AS Verest nimel vormistatud volikiri 09.12.2002 nr 3-131.*

Prokuröri küsimus: Millega seoses andsite Aleksandr Rotko nimele välja volitused, mille hulgast üks on AS Verest nimel välja antud 09.12.2002 nr 3-131?

Vastus: Aleksandr Rotko nimel oli tegelikult üldvolitus kõikide firmade poolt. Ma ei tea, milleks selline konkreetne volitus oli välja antud. Ma ei mäleta, kas ma ise selle dokumendi koostasin, või andsin ainult allkirja dokumendile.

Prokuröri küsimus: Kas ja mida täpselt Te teadsite kõigi kahtlustuses välja toodud ettevõtete tsiviilprotsessidest, mis toimusid enne, kui Te Eestist lahkusite?

Vastus: Kõik teadsin, et midagi toimub. Ka mina teadsin. Ettevõtteid esindasid kohtus juristid. Juristide nimesid ma ei mäleta. Ma ei tea, kes ettevõtete nimel juristidega suhtles. Mina nendega ettevõtete nimel ei suhelnud.

Prokuröri küsimus: Kus viibis Aleksandr Rotko 2007 aasta vältel?

Vastus: Minu andmetel USA-s.

Prokuröri küsimus: Mitmel korral kohtusite Aleksandr Rotko'ga 2007 aasta vältel ja kus?

Vastus: Ta külastass mind Kanadas umbes kord kahe kuu jooksul. Algul Welland'isse, hiljem Saint-Chatharine'sse. Nendes linnades olid minu elukohad.

Kaitsja küsimus: Milline nägi välja Teie kooselu Rotko'ga Ameerikas?

Vastus: 2011 sain Ameerika Ühendriikide viisa ja kolisin Kanadast Ameerikasse. Septembris 2011 andsime avaldused abielu lahutamiseks.

Prokuröri küsimus: Perioodil 2001-2006 elasite Tallinnas. Kus täpselt?

Vastus: Alguses oli üürikorter Lasnamäel, tänavat ei mäleta. Hiljem kolisin Koplisse, mäletatavasti oli tänava nimi Puuvilla. Ka seal üürisin korterit.

Prokuröri küsimus: Kas Teil eelnimetatud elukohtades televiisor oli?

Vastus: Ma ei mäleta, kas seal olid televiisorid, tõenäoliselt olid. Kuid ma vaatan väga vähe televiisorit.

Prokuröri küsimus: Millistel asjaoludel ja millal vormistas Aleksandr Rotko Acura Trooper SLX reg numbriga 61ZGB teie nimele?

Vastus: Sügisel 2006 teatas Rotko, et kirjutab auto minu nimele. Enne seda oli auto kuulunud kellelegi kolmandale, kelle nime ma ei mäleta. Ta kirjutas auto minu nimele ajutiselt, rohkemat ei selgitanud.

Prokuröri küsimus: Millistel põhjustel vormistasite auto Olga Novoseltseva nimele?

Vastus: Ma ei tea muud kui, et auto oli Rotko oma ja tema soovis, et meie kirjutaksime auto Novoseltseva nimele.

Prokuröri küsimus: Kas Teil load olid?

Vastus: Olid.

Kaitsja küsimus: Kas ise kasutasite autot Acura Trooper SLX reg numbriga 61ZGB?

Vastus: Ei kasutanud. Mul olid küll load olemas, kuid ma ei sõitnud sel autoga.

Prokuröri küsimus: Kes tegeles kahtlustuses nimetatud ettevõtetes rahade sulikumisega pankades?

Vastus: Raamatupidajad, nimeliselt ei oska täpsustada, kas mõlemad raamatupidajad või üks neist. Mina sellega ei tegelenud.

Prokuröri küsimus: Kes andis raamatupidajatele volitused pangakontode kasutamiseks?

Vastus: Mina seda teinud ei ole. Peab küsima ettevõtte juhataja Rotko käest. Lisan, et mina ei ole kunagi käinud pangas kahtlustuses nimetatud ettevõtete asju ajamas.

Prokuröri küsimus: Vastavalt rahvastikuregistri andmetele on Teil seniajani olemas Eesti kodakondsus. Kas Te teavitasite Eesti Vabariiki Ameerika Ühendriikide kodakondsuse saamisest? Ja kui teavitasite, siis kuidas ja millal täpselt?

Vastus: Soomes, kui ma oli kinni peetud, saatsin kirja Eesti Vabariigi saatkonda või konsulaati (ma täpselt ei mäleta), milles taotlesin Eesti kodakondsusest loobumist. Vastust ei ole saanud.

Prokuröri küsimus: Millised Eesti Vabariigi dokumendid Teil olid?

Vastus: Mul oli EV pass, aga see on aegunud. Ma sõitsin Eestist ära 10 aastat tagasi, ma ei mäleta, kas mul oli isikutunnistus.

Protokolli lisad: ei ole.

EXT-ROTKO-000129

Märkused protokolli kohta: *Протокол составлен с моих слов и мне переведён*

Uurimistoimingus osalejaile (välja arvatud kahtlustatavale ja süüdistatavale) on selgitatud, et vastavalt KrMS §-le 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

Kaitsja on kohustatud hoidma saladuses talle kriminaalmenetluse käigus õigusabi andmisel teatavaks saanud andmeid. Kaitsjal on lubatud kriminaalmenetluse käigus õigusabi andmisel teatavaks saanud andmeid avaldada kaitsealusele. Kaitsealuse kohta käivaid menetluse andmeid võib kaitsja avaldada vaid kaitsealuse nõusolekul ning kui seda nõuavad õigusemõistmise huvid.

Uurimistoimingu lõpp: 13.10

Siret Rätsepp

Olga Kotova

Janek Valdma

Andrei Voronin

Ele Uutmaa

EXT-ROTKO-000130

Police and Border Guard Board

SUSPECT INTERROGATION RECORD

in the criminal matter No. 06730000427

06.10.2016 Tallinn

Beginning of the investigation activities:           10.05

Police Lieutenant Siret Rätsep, General Crimes Service, Divison of Severe Crimes, Criminal Bureau of North Prefecture, guided by §§ 34, 75, 76 and 146 of the Code of Criminal Procedure, interrogated the suspect:

Name:  Olga Kotova

Personal ID code or date of birth:           28.11.1977 (id 47711285211)

Marital status:  divorced

Nationality:     United States of America

Education:      Higher

Mother tongue russian

Place of residence or location and address:        148 South Arabella way Saint Johns, USA

Work or institution of education:        not working

Contacts:        tel 9048145452, olganewaddress@hotmail.com

Identified:      United States Passport No 547393916

§ 34 of the CCP Rights and obligations of the suspect

A suspect has the right

- know the content of the suspicion and give or refuse to give testimony with regard thereto;

- know that his testimony may be used in order to bring charges against him;

- the assistance of a counsel;

- the assistance of an interpreter or translator;

- confer with the counsel without the presence of other persons;

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

- be interrogated and participate in confrontation, comparison of testimony to circumstances and presentation for identification in the presence of a counsel;

- participate in the hearing of an application for an arrest warrant in court;

- submit evidence;

- submit requests and complaints;

- examine the minutes of procedural acts and give statements on the conditions, course, results and minutes of the procedural acts, whereas such statements are recorded in the minutes;

- give consent to the application of settlement proceedings, participate in the negotiations for settlement proceedings, make proposals concerning the type and term of punishment and enter or decline to enter into an agreement concerning settlement proceedings.

On the basis of § 75 (3') of the CCP, The suspect, and his or her counsel have the right to receive a copy of the record of the interrogation of the suspect during the interrogation to the extent provided for in clauses 76 (1) 1)-3) of this Code.

The suspect is obligated to appear at the invitation of the investigative body, prosecutor's office or court; to take part in a procedural act and to comply with the orders of the investigating authority, the prosecutor's office, and the court.

2.      The suspect has been introduced to her rights and obligations, and their content has been explained.

(Signature of the suspect)

Ele Uutmaa, an interpreter who, according to § 161 (6) of the CCP, is obligated to translate everything related to the procedural activities precisely and completely, and shall maintain the confidentiality of the information which became known to him or her in the course of the translation, is involved in the investigative activity She has been warned that she is responsible for the unjustified refusal of fulfilling her duties and for knowingly false translation in accordance with §§ 318 and 321 of the Penal Code.

L.      (interpreter's signature)

The following persons are present at the interrogation:

Sworn advocate Janek Valdma (Law Office Valdma & Partners)

District Prosecutor Andrei Voronin (Northern District Prosecutor's Office)

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

EXT-ROTKO-000132

Used equipment:        not used.


Legal assessment:        Olga Kotova is suspected of committing a criminal offense under § 203 of the Penal Code (from 01.01.2015 pursuant to § 203 (1) of the PC) as follows


Olga Kotova was a Member of the Management Board of OU Agrin Partion (Commercial Registry code 10259785, deleted from the registry on July 31, 2013), AS Verest (Commercial Registry code 10381687, deleted from the registry on 09.09.2010) and AS BPV (Commercial Registry code 10379236, deleted from the registry on 07.01.2011), and a Member of the Supervisory Board of Ela Tolli AS (Commercial Registry code 10712954, deleted from the registry on March 21, 2016). Aleksandr Rotko was a Member of the Supervisory Board of AS Verest (deleted), AS BPV (deleted) and a Member of the Management Board of Ela Tolli AS (deleted). In addition, Aleksandr Rotko was the sole member of the Management Board and the sole shareholder of OU Ella Kaubandus (Commercial Registry code 10448316, deleted from the registry on 14.08.2012) which company was, in turn, the sole shareholder of OU Agrin Partion (deletion), led by Olga Kotova.


Olga Kotova, acting jointly and in concert with Aleksander Rotko, in the period of 07.06.2006 to 01.08.2006, deliberately damaged and destroyed the buildings and installations owned by the Republic of Estonia, but in the possession of the aforementioned companies located at Küti 17 and 17a, Tallinn, which caused material damage to the Republic of Estonia. Namely:

During the period from 07.06.2006 to 01.08.2006, in the wharf located on the registered immovable in Tallinn, Küti 17 and 17a, important parts of the wharf - pavement plates with the size 0.14x2.00x6.00 total 460 pcs, cover plates in the size 0.13x1.23x1.6 total 164 pcs and cover plates in the size 0.13x1.23x0,94 in total 35 pcs - were illegally removed i.e., without the permission of the owner, the Republic of Estonia, on the order of Aleksandr Rotko and Olga Kotova,  causing property damage to the Republic of Estonia to the extent of the cost of the plates, i.e. in the amount of 1,755,096.60 kroons;

During the period from 07.06.2006 to 01.08.2006, in the registered immovable located in Tallinn, Küti 17 and 17a, gates of the territory of the registered immovable were illegally, i.e., without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, on the order of Aleksandr Rotko and Olga Kotova, removed and destroyed, causing property damage to the Republic of Estonia in the total amount of 33,040 kroons;

during the period from 07.06.2006 to 01.08.2006, in the registered immovable located in Tallinn, Küti 17 and 17a, an important part of the registered immovable belonging to the Republic of Estonia, railway tracks with a total weight of 66.6 tons and a total value of 156,060 kroons, were removed illegally without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia on the order of Aleksandr Rotko and Olga Kotova causing damage to the Republic of Estonia in the total amount of 156,060 kroons;

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Unicom Tõlkeabüroo
OÜ
Andrus Tupits
Project manager

EXT-ROTKO-000133

during the period from 07.06.2006 to 01.08.2006, a boiler housebuilding belonging to the Republic of Estonia located on the territory Küti 17 and 17a, Tallinn , was damaged illegally, on the order of Aleksandr Rotko and Olga Kotova, without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, and by way of dismantling, heating boilers with the value of 12,500 kroons were removed, causing property damage to the Republic of Estonia totaling 12,500 kroons;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, i.e., without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, a timber industry building belonging to the Republic of Estonia located on the territory of Küti 17 and 17a, Tallinn, was illegally damaged and by way of dismantling, heating boilers with the value of 25, 000 kroons were removed from it causing property damage to the Republic of Estonia totaling 25,000 kroons;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, an administrative building located in the territory of Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia was damaged and by means of a dismantling, the water, heat and power supply equipment with a total value of 54,300 kroons were destroyed, causing a total loss in the amount of 54,300 kroons to the Republic of Estonia;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, a seaplane hangar located on Küti 17 and 17, Tallinn belonging to the Republic of Estonia and protected by heritage conservation, removed from there the hatches of the dome holes with a total value of 20,000 kroons and causing damage to the Republic of Estonia in the total amount of 20,000 kroons.

With the above-described activity, Olga Kotova, acting jointly and in concert with Aleksandr Rotko, caused property damage to the Republic of Estonia in the total amount of 2,055,996.60 kroons (or 131,402.13 euros).

Therefore, Olga Kotova committed the violation and destruction of a foreign thing, which caused at least material property damage to the Republic of Estonia, the owner of the thing, that is to say, a criminal offense, which is punishable under § 203 of the Penal Code.

From 01.01.2015, the activity of Olga Kotova is punishable under § 203 (1) of the Penal Code, violation or destruction of a foreign thing if it causes significant damage.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

EXT-ROTKO-000134

In addition, Olga Kotova is suspected of committing a criminal offense under Section 201 (2) (2) and (4) of the Criminal Code (as of 01.01.2015 on the basis of Penal Code 201 (2) (2) and (4), which consisted of the following

Olga Kotova was a Member of the Management Board of OU Agrin Partion (Commercial Registry code 10259785, deleted from the registry on July 31, 2013), AS Verest (Commercial Registry code 10381687, deleted from the registry on 09.09.2010) and AS BPV (Commercial Registry code 10379236, deleted from the registry on 07.01.2011), and a Member of the Supervisory Board of Ela Tolli AS (Commercial Registry code 10712954, deleted from the registry on March 21, 2016). Aleksandr Rotko was a Member of the Supervisory Board of AS Verest (deleted), AS BPV (deleted) and a Member of the Management Board of Ela Tolli AS (deleted). In addition, Aleksandr Rotko was the sole member of the Management Board and the sole shareholder of OU Ella Kaubandus (Commercial Registry code 10448316, deleted from the registry on 14.08.2012) which company was, in turn, the sole shareholder of OU Agrin Partion (deletion), led by Olga Kotova.

Olga Kotova, acting jointly and in concert with Aleksandr Rotko, in the period from 2000 to 01.08.2006, exercised illegal possession on the territory Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia.

Having learned that the Republic of Estonia wishes to establish its ownership of the above-mentioned territory and the buildings and facilities belonging to the territory, Olga Kotova and Aleksandr Rotko decided to dismantle as many assets as possible from the objects located in the territory and sell them by turning the proceeds from the sale in favor of AS BPV (deleted) and Merimpex Co. Ltd controlled by them. Namely:

During the period from 07.06.2006 to 01.08.2006, in the wharf located on the registered immovable in Tallinn, Küti 17 and 17a, important parts of the wharf -pavement plates in the size 0.14x2.00x6.00 total 460 pcs, cover plates in the size 0.13x1.23x1.6 total 164 pcs and cover plates in the size 0.13x1.23x0.94 in total 35 pcs - were illegally removed i.e., without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, on the order of Aleksandr Rotko and Olga Kotova, causing property damage to the Republic of Estonia to the extent of the cost of the plates, i.e., in the amount of 1,755,096.60 kroons;

During the period from 07.06.2006 to 01.08.2006, in the registered immovable located in Tallinn, Küti 17 and 17a, gates of the territory of the registered immovable were illegally, i.e., without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, on the order of Aleksandr Rotko and Olga Kotova, removed and destroyed, causing property damage to the Republic of Estonia in the totalamount of 33,040 kroons;

during the period from 07.06.2006 to 01.08.2006, in the registered immovable located in Tallinn, 17 and 17a, an important part of the registered immovable belonging to the Republic of Estonia, railway tracks with a total weight of 66.6 tons and a total value of 156,060 kroons, were removed,

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

EXT-ROTKO-000135

illegally without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia on the order of Aleksandr Rotko and Olga Kotova causing damage to the Republic of Estonia in the total amount of 156,060 kroons;

during the period from 07.06.2006 to 01.08.2006, a boiler house building belonging to the Republic of Estonia located on the territory Küti 17 and 17a, Tallinn, was damaged illegally, on the order of Aleksandr Rotko and Olga Kotova, without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia and by way of dismantling, heating boilers with the value of 12,500 kroons were removed, causing property damage to the Republic of Estonia totaling 12,500 kroons;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, i.e., without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia, a timber industry building belonging to the Republic of Estonia located on the territory of Küti 17 and 17a, Tallinn, was illegally damaged, and by way of dismantling, heating boilers with the value of 25,500 kroons were removed causing property damage to the Republic of Estonia totaling 25,500 kroons;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, an administrative building located in the territory of Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia was damaged and by means of a dismantling, the water, heat and power supply equipment with a total value of 54,300 kroons were destroyed, causing a total loss in the amount of 54,300 kroons to the Republic of Estonia;

during the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and Olga Kotova, an administrative building located in the territory of Küti 17 and 17a, Tallinn, a seaplane hangar locatedon Küti 17 and 17, Tallinn belonging to the Republic of Estonia and protected by heritage conservation, removed the hatches of the dome holes with a total value of 20,000 kroons and causing damage to the Republic of Estonia in the total amount of 20,000 kroons.

Subsequently, Olga Kotova and Aleksandr Rotko sold the majority of pavement plates illegally dismantled from the wharf located at the registered immovable at Küti 17 and 17a, Tallinn still belonging to the Republic of Estonia to Paldiski Sadamate AS, on July 18, 2006, under an agreement which was signed by AS BPV (deleted), represented by Olga Kotova, Member of the Management Board, and Paldiski Sadamate AS, represented by Aleksandr Kovaljov, Member of the Management Board. AS BPV (deleted), in the person of Olga Kotova, Member of the Management Board of submitted an invoice No. 292 to Paldiski Sadamate AS in the amount of 2 528 727.20 kroons and with the explanation "Construction materials and equipment." According to Olga Kotova's declaration dated 25.08.2006, Paldiski Sadamate AS paid to the current account of Merimpex Co Ltd., controlled by Olga Kotova and Aleksandr Rotko, under invoice No. 292 of 06.09.2006. 2,142,989.15 kroons and also 385,738.05 kroons to the current account of AS BPV (deleted) current account at Swedbank. In this, Olga Kotova and Aleksandr Rotko transferred the foreign movables illegally in their possession in favor of a third party, earning income in the amount of 2,914,465.25 kroons, or 186,268.97 euros.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

Olga Kotova and Aleksandr Rotko also sold the railway tracks illegally dismantled from the wharf located at Küti 17 and 17a, Tallinn and still owned by the Republic of Estonia, from the name of AS BPV (deleted) mainly to AS Kuusakoski. From the sale of the railway tracks and their fasteners, AS BPV (deleted) received income in accordance with invoice No. 0120846 of 28.07.2006 issued by it to AS Kuusakoski in the amount of 201,758.76 kroons, and on the 26th of July 2006, in accordance of the invoice No 0118134 of 26.07.2006 in the amount of 504,660,04 kroons. In this, Olga Kotova and Aleksandr Rotko transferred the foreign movables illegally in their possession in favor of a third party, earning income in the amount of 706,418,80 kroons, or 45,148,39 euros.

Olga Kotova and Aleksandr Rotko also sold the essential parts of the buildings and facilities illegally dismantled from registered immovable located at Küti 17 and 17a, Tallinn and still owned by the Republic of Estonia, from the name of AS BPV (deleted) mainly to AS Refonda. From the sale of the essential parts of the dismantled buildings and facilities, AS BPV (deleted) received income in the amount of 11,979.36 kroons, on the basis of the invoice No 256 of 14.07.2006 submitted by it to AS Refonda, in the amount of 14,917.85 kroons on the basis of the invoice No 241 of 05.07.2006, in the amount of 15,972 kroons on the basis of the invoice No 243 of 06.07.2006. In this, Olga Kotova and Aleksandr Rotko transferred the foreign movables illegally in their possession in favor of a third party, earning income in the amount of 42,862, 21 kroons, or 2,739.39 euros.

With the above-described activity, Olga Kotova caused property damage to the Republic of Estonia in the total amount of 234,156.05 kroons.

Thus, Olga Kotova committed a criminal offence by illegal converting of a movable or another asset in her possession belonging to another person or entrusted to the person illegally in favor of a third person by a group and, to a large extent pursuant to § 201 (2) 2) and (4) of the Penal Code.

From 01.01.2015, the activities of Olga Kotova are punishable under § 201 (2) 2) and 4) of the Penal Code as illegal converting into his or her use or the use of a third person of movable property which is in possession of another person or other assets belonging to another person by the group and to a large extent.

Testimony:

Question:     Have you committed the criminal offence, what you are suspected of?

Answer:        I have committed no crime. I started to work at the Seaplane Harbor in autumn 2002, my employer was AS BPV, and I worked there as a secretary. When I went to work at the Seaplane Harbor, the companies that were mentioned in the suspicion had already been operating there. Presumably, at the beginning of 2002, Aleksandr Rotko asked for mine and the accountant, Tatjana Jekimova's permission to enter our names as board members in the commercial register. As the previous member of the board had just left, then Rotko explained that somebody should be a

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

member of the board and I will have no problems because of this. At the moment I cannot specify the names of these companies the board member of which I was appointed I also do not remember how many companies we were talking about. Aleksandr Rotko says that this should be done and we did not object to it. We were supposed to fulfill our current responsibilities, me as secretary and Tatjana Jekimova as an accountant. This means that I did not have any subordinates, I did not give orders to anyone. My function at the company did not change. I also remember that Anti Nööp was a board member somewhere at some Rotko's company. We continued to work as usual. When Rotko asked me to sign the company's balance sheet, I signed it. Sometimes, when he was not in the office, he asked me to sign an invoice. I did it. In the summer of 2006, the company had to move out of the Seaplane Harbor. I remember that there was an order to move out, but I do not remember how and with what document and when exactly this order came. Aleksadr Rotko asked me to draw up a list of all the furniture and stationery goods that was located in the company's office. I did it. He also asked me to pack all the documentation that was in the office of the companies in Seaplane Harbor. Then one day I moved out.. I do not remember what day it was and how it happened I did not take anything from there with me.

My office windows in the Seaplane Harbor were not towards the territory at all, and I did not see what was going on in the territory. I want to make it clear here that I moved around in the territory of the Seaplane Harbor very rarely, a couple of times maybe because it was impossible to walk there with high heels. I knew that the companies were moving out of the Seaplane Harbor and take their belongings with them. It was known to everyone who worked in the companies that the property belonging to them was taken away. In addition to me, Olga Novoseltseva, Tatyana Jekimova, Olga Savitskaja, Anti Nööp and Aleksandr Rotko worked at the Seaplane Harbor. I never went back to the Seaplane Harbor after moving out. On September 20, 2006, I got married to Aleksandr Rotko. He had a permanent residence permit for the United States. Since nothing linked Aleksandr Rotko to Estonia anymore, we decided to move to the United States. He left Estonia probably in October 2006; I was waiting to be given the United States visa. In the meantime, Aleksandr Rotko learned that getting a US visa would take several years, so we decided that I would go to Canada and start learning English. I left Estonia in December 2006. Initially, I traveled to Russia to my relatives; then I went to Canada to Niagara College. I did not know that I was wanted in Estonia. I do not remember having contacted any colleagues from the Seaplane Harbor after leaving Estonia.

Question:     How where you linked to OÜ Agrin Partion?

Answer:     I know the company. It must have been one of the companies that I was asked to be a board member of by Aleksandr Rotko.

Question:     Where and in what field of activity and what specifically was OU Agrin Partion engaged in?

Answer:     I do not know what the company was doing.

Question:     Who actually run OÜ Agrin Partion?

Answer:     I know that all the companies that were located at the Seaplane Harbor office were run by Aleksandr Rotko.

Question:     How where you linked to AS Verest?

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
project manager

EXT-ROTKO-000138

**Answer:** In terms of this company I also know only that Aleksandr Rotko asked me to be a member of the board of the company.

**Question:** Where and in what field of activity and what specifically was AS Verest engaged in?

**Answer:** I don't know that.

**Question:** Who actually managed AS Verest?

**Answer:** Aleksandr Rotko.

**Question:** How where you linked to AS BPV?

**Answer:** If I remember correctly, I received my salary from AS BPV.

**Question:** At whose recommendation did you become a member of the management board of AS BPV?

**Answer:** Rotko asked me to.

**Question:** Where and in what field of activity and what specifically was AS BPV engaged in?

**Answer:** I know that it was engaged in wood processing in the area of the Seaplane Harbor.

**Question:** Who actually managed AS BPV?

**Answer:** Aleksandr Rotko.

**Question:** How where you linked to the company Ela Tolli AS?

**Answer:** That was the same story as I have already told you.

**Question:** On whose recommendation did you become a member of the Supervisory Board of Ela Tolli AS?

**Answer:** Ma I do not know that I would have been a member of the Supervisory Board, I remember that I was told about the status of a board member.

**Question:** Where in what field of activity and what specifically was Ela Tolli AS engaged in?

**Answer:** I don't know.

**Question:** Who actually managed Ela Tolli AS?

**Answer:** Probably Rotko.

**Question:** How were you connected with the addresses Küti 17 and Küti 17a in Tallinn in 2006?

**Answer:** It was the territory of the Seaplane Harbor where the companies that were mentioned in the suspicion were located.

**Question:** Whether, how and when did you learn that the Republic of Estonia wishes to establish possession of the buildings and installations belonging to the territory of Küti 17 and Küti 17a in Tallinn and to the territory?

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

**Answer:**      I do not remember exactly when and how it happened, everyone knew it. There may have been talking about the term of moving out.

**Question:**      During the period from 07.06.2006 to 01.08.2006, in the wharf located on the registered immovable in Tallinn, Küti 17 and 17a, important parts of the wharf -pavement plates in the size 0.14x2.00x6.00 total 460 pcs, cover plates in the size 0.13x1.23x1.6 total 164 pcs and cover plates in the size 0.13x1.23x0,94 in total 35 pcs - were removed. Who ordered the removal, who removed, where were they placed, from behalf of which company and to whom they were sold and at what price?

**Answer:**      I do not know how the removal took place, who removed them, where they were placed, on behalf of which company and at what price. I know to say that I have not given orders to remove them. I also cannot tell if and since when the pavement plates were there.

**Question:**      Question: During the period from 07.06.2006 to 01.08.2006, in the registered immovable located in Tallinn, Küti 17 and 17a, gates of the territory of the registered immovable were removed and destroyed. Who ordered the removal, who removed, where were they placed, from behalf of which company and to whom they were sold and at what price?

**Answer:**      Who ordered the removal, who removed them, where were they placed, on behalf of which company and to whom they were they sold and at what price? I do not know anything about it..

**Question:**      An important part of the registered immovable belonging to the Republic of Estonia, railway tracks with a total weight of 66.6 tons were removed in the registered immovable located in Tallinn, Küti 17 and 17a. Who ordered the removal, who removed, where were they placed, from behalf of which company and to whom they were sold and at what price?

**Answer:**      I do not know how the removal took place, who removed them, where they were placed, on behalf of which company and at what price. I know to say that I have not given orders to remove them. I also cannot tell if and since when the railway tracks were there.

**Question:**      During the period from 07.06.2006 to 01.08.2006, a boiler building belonging to the Republic of Estonia located on the territory of Küti 17 and 17a, Tallinn, was damaged and the boilers were removed from there by way of dismantling. Who ordered the damage and dismantling of boilers, who damaged, who dismantled, where were they placed, if, on behalf of which company and to whom they were sold and at what price?

**Answer:**      I do not know anything about them. I only know that at the time I went to work at Seaplane Harbor, there was no heating at the Seaplane Harbor, but at some point, they started up the heating.

**Question:**      During the period from 07.06.2006 to 01.08.2006, a timber industry building belonging to the Republic of Estonia located on the territory of Küti 17 and 17a, Tallinn, was damaged and boilers were removed from there by way of dismantling Who ordered the damage and dismantling of boilers, who damaged, who dismantled, where were they placed, if, on behalf of which company and to whom they were sold and at what price?

**Answer:**      I don't know anything.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
project manager

**Question:**     During the period from 07.06.2006 to 01.08.2006, an administrative building located in the territory of Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia was damaged and by means of a dismantling, the water, heat and power supply equipment installed in it were destroyed. Who ordered the damage and dismantling of boilers, who damaged, who dismantled, where were they placed, if, on behalf of which company and to whom they were sold and at what price?

**Answer:**     I don't know anything about it. When I left the Seaplane Harbor, it was warm there; there were light and water.

**Question:**     During the period from 07.06.2006 to 01.08.2006 a seaplane hangar located on Küti 17 and 17, Tallinn belonging to the Republic of Estonia and protected by heritage conservation, was damaged, by way of removing from there the hatches of the dome holes. Who ordered the removal, who removed them, where were they placed, if, on behalf of which company and to whom they were sold and at what price?

**Answer:**     Who ordered the removal, who removed them, where were they placed, on behalf of which company and to whom they were they sold and at what price?

**Question:**     BPV AS and AS Kuusakoski processed the instrument of delivery and receipt of ferrous and non-ferrous metal, scrap metal and waste metal No. 0118134 (July 26, 2006), you signed it on behalf of the seller BPV AS. What did you sell, for what reasons did you sell and where did the sold assets come from?

**Answer:**     I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I did not check the papers I signed because I had no reason not to trust the company.

**Question:**     BPV AS and AS Kuusakoski processed the instrument of delivery and receipt of ferrous and non-ferrous metal, scrap metal and waste metal No. 0120846 (7/28/2006), you signed it on behalf of the seller BPV AS. What did you sell, for what reasons did you sell and where did the sold assets come from?

**Answer:**     I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I only knew that the companies had to move out of the Seaplane Harbor and are selling their property.

**Question:**     You signed on behalf of BPV AS on 05.07.2006 the invoice No. 241 to Refonda OÜ on the sale of scrap metal. What did BPV AS sell to Refonda OÜ, for what reasons did you sell it and where did the sold assets come from?

**Answer:**     I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I already said before that if Rotko was not in the office and if he had asked me to sign something, I did it. I did not check the papers I signed because I had no reason not to trust company.

**Question:**     You signed on behalf of BPV AS on 06.07.2006 the invoice No. 243 to Refonda OÜ on the sale of scrap metal. What did BPV AS sell to Refonda OÜ, for what reasons did you sell it and where did the sold assets come from?

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Indrus Tupits
Project manager

EXT-ROTKO-000141

**Answer:**   Same story as with previous answers. I was not aware of what exactly was sold.

**Question:**   You signed on behalf of BPV AS on 14.07.2006 the invoice No. 256 to Refonda OÜ on the sale of scrap metal. What did BPV AS sell to Refonda OÜ, for what reasons did you sell it and where did the sold assets come from?

**Answer:**   Same story as with previous answers. I was not aware of what exactly was sold.

**Question:**   You concluded on behalf of AS BPV a sales contract No 1 with Paldiski Sadamate AS (July 18, 2006) by which you sold to Paldiski Sadamate AS the building materials and equipment owned by AS BPV. For what reasons did BPV AS sell assets to Paldiski Sadamate AS?

**Answer:**   Rotko asked me to sign the document, I knew that the companies were selling their assets..

**Question:**   You have signed a declaration to Paldiski Sadamate AS asking you to pay an invoice to Merimpex Co.Ltd's current account at Nordea Bank Danmark AS. For what reasons did you ask to make the transfer to AS Merimpex Co.Ltd for assets owned by AS BPV?

**Answer:**   I did it at Rotko's request. I do not know anything about Merimpex Co.Ltd.

**Question:**   What was your link to Merimpex Co.LTd?

**Answer:**   I have no connection with this company.

**Question:**   For what reasons did Aleksandr Rotko, in 2006, used the name box No 1525 of AS Eesti Post, which was located at Kalamaja post office?

**Answer:**   I cannot answer that. I do not know why Rotko needed it. I have never used it.

**Question:**   Who owned the Acura Trooper SLX with register number 61ZGB?

**Answer:**   It was Rotko's car. He asked me to transfer the car to Olga Novoseltseva's name. I do not know why Rotko asked me to transfer the car to Olga's name. I just made the transfer of the car to Olga's name at the request of Rotko, and I no longer know anything about this car.

**Question:**   Whether, and in what way and in what amount did Olga Novoseltseva pay for the car?

**Answer:**   No money moved between Olga and me.

**Question:**   Whether and for what reasons did you communicate with Olga Novoseltseva after leaving the Republic of Estonia?

**Answer:**   I do not remember having communicated with her.

**Question.**   Who did the email amal-221@yandex.ru belong to in March 2007?

**Answer:**   I do not know anything about this address.

**Question:**   Where is Aleksandr Rotko currently?

**Answer:**   I do not know where he is at the moment. We divorced in 2012. I saw him last in New York in 2012. I also have not talked to him since.

This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and corresponds to the original text in Estonian.

Prosecutor's question: On what grounds did you give consent to becoming a board member?

Answer:        At Rotko's request.

Prosecutor's question: What kind of education did you have in 2001?

Answer:        Secondary specialized education. I graduated from the Tallinn School of Economics, the specialty of business management, graduated with average results.

Prosecutor's question: What were your previous jobs before you ended up at the Seaplane Harbor?

Answer:        I worked for about a year as a cashier at McDonalds, about a year as a salesperson in the furniture company A&A, a few months as a secretary in a small accounting firm. I do not remember who managed the accounting firm..

Prosecutor's question: Under what circumstances and how did you get to the Seaplane Harbor?

Answer:        Through an advertisement. I do not remember where the advertisement appeared.

Prosecutor's question: When exactly and how did you leave Estonia?

Answer:        In December 2006 I went to St. Petersburg, where I was until the beginning of 2007 when I traveled

to Canada.

Prosecutor's question: What did you do in Russia?

Answer:        I did not do anything, just stayed at relatives. I had no plans to do anything in Russia.

Prosecutor's question: What kind of funds did you live in Russia?

Answer:        I was visiting relatives

Prosecutor's question: Who financed the purchase of tickets to Canada?

Answer:        I don't remember.

Prosecutor's question: What was your relationship with Olga Savitskaja like?

Answer:        A normal relationship.

Prosecutor's question: When did you last interact with Olga Savitskaja?

Answer:        I don't remember.

Prosecutor's question: I don't remember.

Answer:        Olga Novoseltseva was an accountant, Tatjana Jekimova was an accountant, Anti Nööp was the Harbor Master. I do not remember Olga Savitskaya's job title, but she was involved with documentation on the reprocessing of timber.

Prosecutor's question: Who from the above-mentioned persons, and how well did they speak Estonian?

This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

Answer:         Anti Nööp was fluent in Estonian. I was fluent. I do not know about the others because I did not communicate with them in Estonian. I did not speak with Rotko in Estonian, either.

Prosecutor's question: How did you learn to speak Estonian?

Answer:         Until the age of thirteen, I was raised by my stepfather, he was an Estonian. From there I can speak Estonian. I spoke Russian to my mother. With my half-brother, I spoke both Estonian and Russian.

Prosecutor's question: Who prepared the Estonian-language documents of the Seaplane Harbor?

Answer:         Some documents were prepared by me, a part of them by lawyers, some documents were prepared by accountants and Olga.

Prosecutor's question: What did you do in Canada?

Answer:         In the beginning, for about 2.5 years, I studied. Then I started working, I was support staff in various companies.

Prosecutor's question: Who financed your life in Canada?

Answer:         I worked in Canada all the time, even during the studies. I also got a scholarship. I financed myself.

Prosecutor's question: What do you know about Aleksandr Rotko's life before the Seaplane Harbor?

Answer:         I know he was a master of a ship. I know that he was born in Ukraine. I do not know when he got into Estonia.

Prosecutor's question: Have you heard that Aleksandr Rotko would have spoken to Estonian with anyone?

Answer:         I don't remember.

Prosecutor's question: Do you know if Aleksandr Rotko spoke Estonian?

Answer:         I do not know this because I did not speak to him in Estonian.


Olga Kotova is presented with the mandate No. 3-131 issued on behalf of AS Verest on 09.12.2002. 2002 no 3-131.

Prosecutor's question: In connection with what did you issue mandates on the name of Aleksandr Rotko, one of which was No. 3-131 issued on behalf of AS Verest on December 9, 2002?

Answer:         In fact, Aleksandr Rotko actually had a general mandate from all the companies. I do not know why such a specific mandate was issued. I do not remember if I prepared this document myself, or I only provided a signature to the document.

Prosecutor's question: Whether and what exactly did you know about the civil proceedings of all the companies listed in the suspicion that occurred before you left Estonia?

Answer:         Everyone knew something was happening. I also knew. The companies were represented by lawyers at the court.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

I don't remember the names of the lawyers. I do not know who contacted the lawyers on behalf of the companies. I did not interact with these on behalf of the companies.

Prosecutor's question: Where was Aleksandr Rotko in 2007?

Answer:        As far as I know, in the USA.

Prosecutor's question: How many times did you meet Aleksandr Rotko in 2007 and where?

Answer:        He visited me in Canada about once in two months. First in Welland, later in Saint-Catharine.. These cities were my places of residence

Defender's Question:   What was your life like with Rotko in America?

Answer:        I received the United States visa in 2011 and moved from Canada to America. In September 2011, we submitted applications for divorce.

Prosecutor's question: During the period 2001-2006 you lived in Tallinn. Where exactly?

Answer:        At the beginning, there was a rental flat in Lasnamäe, I don't remember the street. Later I moved to Kopli; I remember the street was called Puuvilla. That was a rental flat too.

Prosecutor's question: Did you have a TV set in the above-mentioned places?

Answer:        I do not remember if there were televisions, they probably were. But I watch TV very little.

Prosecutor's question: In what circumstances and when did Aleksandr Rotko register Acura Trooper SLX reg., number 61ZGB to your name?

Answer:        In the autumn, Rotko announced that he would register the car in my name. Before that, the car belonged to a third person whose name I do not remember. He registered the car temporarily to my name, not explaining more.

Prosecutor's question: For what reasons did you register the car in the name of Olga Novoseltseva?

Answer:        All I know is that the car belonged to Rotko and he wanted me to register the car in the name of Novoseltseva.

Prosecutor's question: Did you have driver's license?

Answer:        I did.

Defender's Question:   Did you use the car Acura Trooper SLX with the registration number 61ZGB?

Answer:        I didn't. I did have the license, but I did not drive the car

Prosecutor's question: Who was involved in the movement of money of the companies referred to in the suspicion in banks?

Answer:        The accountants, I do not know by names, and whether it was both of the accountants or one of them. I did not deal with it.

Prosecutor's question: Who gave accountants the power to use bank accounts?

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Indrus Tupits
Project manager

Answer:      Not me. You must ask the manager of the company, Rotko. I would add that I have never visited the banks to handle things of the companies mentioned in the suspicion.

Prosecutor's question:  According to the data of the population register, you still have Estonian citizenship. Did you inform the Republic of Estonia about receiving the citizenship of the United States? And if you did, how and when exactly?

Answer:      In Finland, when I was detained, I sent a letter to the Embassy or the consulate of the Republic of Estonia I do not remember exactly) asking for the abandonment of Estonian citizenship. I got no response.

Prosecutor's question:  Which documents of the Republic of Estonia did you have?

Answer:      I had an Estonian passport, but it's expired. I left Estonia 10 years ago; I don't remember if I had an identity card.

Annexes to the Record: None.


Notes on the Record: (handwritten): Record is written according to my words and translated to me.


The parties to the investigation procedure (except for the suspect and the accused) have been explained that, according to § 214 of the CCP, the data of pre-trial proceedings may be disclosed solely with the permission of the Prosecutor's Office and to the extent determined by him or her.

Defense is required to keep confidential the information he or she received during criminal proceedings in the course of the provision of legal assistance. The defense is permitted to disclose to the defendant the information obtained during criminal proceedings in the course of the provision of legal assistance. The details of the proceedings relating to the defendant can only be disclosed by the defense on the consent of the defendant and if the interests of justice require it.


End of Investigation Action: 13.10


Siret Rätsepp

Olga Kotova

Janek Valdma

Andrei Voronin

Ele Uutmaa



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits

Project manager

**POLITSEI-JA PIIRIVALVEAMET**

## TUNNISTAJA ÜLEKUULAMISE PROTOKOLL
kriminaalasjas nr 06730000427

23.11.2016 Tallinn

Uurimistoimingu algus: 09.00

Politsei-ja Piirivalveameti Põhja prefektuuri kriminaalbüroo raskete kuritegude talituse üldkuritegude teenistuse vanemuurija vanemkomissar Natalja Tšuga, juhindudes KrMS §-dest 68, 74 ja 146, kuulas üle tunnistaja:

1. Tunnistaja andmed:

   a. Nimi:                 Olga Novoseltseva

   b. Isikukood või sünniaeg: 47203270350

   c. Kodakondsus:          eesti

   d. Haridus:             kesk

   e. Elu- või asukoht ja aadress: Tallinn, Liikuri 36-26

   f. Töökoht või õppeasutus:    AS Kaupmees&Ko

   g. Kontaktandmed:         tel 55 610 434

   h. Suhe kannatanu ja kahtlustatavaga: endine BPV AS töötaja

   i. Isikusamasus tuvastatud:     ID-kaart AA0432754

**Tunnistaja õigused ja kohustused**

Tunnistaja on kohustatud andma tõeseid ütlusi, kui ütluste andmisest keeldumiseks puudub seaduslik alus käesoleva seadustiku §-de 71–73 järgi (KrMS § 66 lõige 3). Tunnistajale selgitatakse tema õigust kirjutada ütlusi omakäeliselt (KrMS § 68 lõige 1). Tunnistaja võib ütlusi andes kasutada arvandmete ning nimede ja muude raskesti meelespeetavate andmete kohta märkmeid ja muid dokumente (KrMS § 68 lõige 3). Tunnistaja võib taotleda, et tema õiguste kaitseks viibiks kohtueelses menetluses tema ülekuulamise juures tema lepingulise esindajana advokaat või muu käesoleva seadusega lepingulisele esindajale kehtestatud haridusnõuetele vastav isik (KrMS § 67¹ lõige 1). Kui tunnistajal ei õnnestu kahe tööpäeva jooksul toimingu alguse ajast ilmuda koos esindajaga, viiakse ülekuulamine läbi ilma esindajata ( KrMS § 67¹ lõige 3). Esindaja ei või olla KrMS § 67¹ lõikes 2 sätestatud isik. Õigus keelduda tunnistajana ütluste andmisest on kahtlustatava või süüdistatava: alanejal ja ülenejal sugulasel; õel, poolõel, vennal, poolvennal või isikul, kes on või on olnud abielus kahtlustatava või süüdistatava õe, poolõe, venna või poolvennaga; võõras- või kasuvanemal, võõras- või kasulapsel; lapsendajal ja lapsendatul; abikaasal, püsivas kooselus oleval isikul ja tema vanemal, sealhulgas pärast abielu või püsiva kooselu lõppemist (KrMS § 71 lõige 1). Tunnistaja võib keelduda ütluste andmisest ka siis, kui ütlused võivad kuriteo või väärteo toimepanemises süüstada teda ennast või KrMS § 71 lõike 1 loetletud isikuid ja juhul, kui ta on kaastäideviijana või osavõtjana samas kuriteos süüdi või õigeks mõistetud (KrMS § 71 lõige 2). Õigus tunnistajana keelduda kutsetegevuses teatavaks saanud asjaolude kohta ütluste andmisest on: Eestis registreeritud usuorganisatsiooni vaimulikul; kaitsjal ja notaril, kui seaduses ei ole sätestatud teisiti; tervishoiutöötajal ja farmatseudil isiku päritolusse, kunstlikku viljastamisse, perekonnasse või tervisesse puutuvate asjaolude puhul; isikul, kellele on seadusega pandud ameti- või kutsesaladuse hoidmise kohustus (KrMS § 72 lõige 1). Tunnistajal on õigus keelduda ütluste andmisest nende asjaolude kohta, mille suhtes kohaldatakse riigisaladuse seadust (KrMS § 73 lõige 1). Tunnistajal on õigus taotleda, et ülekuulamisprotokollis ei märgita tema elu- või töökohta või õppeasutuse nimetust (KrMS § 74 lõige 3).

2. Tunnistajale on tutvustatud tema õigusi ja kohustusi KrMS §-des 66–74 ning selgitatud nende sisu. Vähemalt 14-aastast tunnistajat on hoiatatud, et ütluste andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb vastutus KarS §-de 318 ja 320 järgi.

(tunnistaja allkiri)

3. Uurimistoimingus osaleb tõlk Galina Mägi, kes on KrMS § 161 lõike 6 kohaselt kohustatud tõlkima kõik menetlustoimingusse puutuva täpselt ja täielikult ning hoidma saladuses talle tõlkimisel teatavaks saanud andmeid. Teda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

(tõlgi allkiri)

4. Ülekuulamisel osaleb: protokollija Siret Rätsepp

5. Kasutatud tehnikavahendid: ei kasutatud

6. Ütlused:

Mina otsisin tööd, panin ajalehte kuulutuse. Selle peale võttis minuga ühendust Aleksandr Rotko, kes pakkus minule tööd. Ma asusin tööle AS-i BPV pearaamatupidajana aastal 2002. Seal oli tööl veel üks raamatupidaja Tatjana Jekimova. Minu ülesandeks oli aruannete, bilansi koostamine, palgaarvestus, arvete koostamine.

Agrin Partion OÜ-s olid tööl valvurid, teistest firmadest mäletan ainult seda, et neid olid olemas. Ma ei tea, millega AS Verest, AS Ela Tolli ja Ella kaubanduse AS. BPV AS-i puidu ümbertöötlemisega. Et kõik ettevõtted tegutsesid, sest kõigi ettevõtete nimel esitati arveid.

Töökoht asus Küti tänaval administratiivhoones. Kui mina tööle tulin, oli kontorihoone remonditud, kõik oli korras, küte, vesi ja elekter olid olemas. Territooriumil midagi suurt enam ei ehitatud, kui mina tööl olin. Kõik oli juba selleks ajaks valmis, kui ma tööle asusin. Ma nägin mingeid ehitusega seotud arveid küll, mis olid ajast, mil mina veel AS-iga BPV seotud ei olnud. Praeguseks ma enam ei mäleta nende täpset sisu. Kui mina seal töötasin, siis mingeid ehitusega seotud arveid enam peale ei tulnud. Mäletan, et kohtuvaidluste ajaks palus Rotko, et ma arvutaksin kokku, kui palju on raha ehitusse sisse pandud. Minu mäletamist mööda oli see summa 33 miljonit krooni.

Administratiivhoone keldrikorrusel oli Milaro AS ravioolide tootmine. Mäletan, et seda ettevõtet juhtis keegi pooleks. Ma mäletangi, et kontorihoones oli ravioolide tootmine ja siis meie kontor. Kontoris töötasid Olga Kotova sekretärina, raamatupidajana Tatjana Jekimova, Anti Nööp sadama kaptenina, laos Anželika Korotkaja. Kui Anželika lahkus, tuli tema kohale Olga Savitskaja. Olga Kotova valmistas ette dokumente, tegi telefonikõnesid, tõlkis dokumente eesti keelde. Mulle justkui meenub, et Olga Kotova käis kohtuistungitel, sest Aleksandr Rotko eesti keelt ei valda. Aga täpsustada ma seda kuidagi ei saa, sest ei mäleta. Tööle võttis kõik inimesed Aleksandr Rotko. Igapäevast juhtimist teostas Aleksandr Rotko, kõik otsused võttis samuti vastu tema. Me töötajatega omavahel eriti palju ei suhelnud. Ma ei oska välja tuua, et Olga Kotova oleks kellegagi töö juures rohkem suhelnud, kui teistega. Kõik suhtlesid töö-alaselt, kui vaja oli.

Minul oli ligipääs ettevõtete kontodele. BPV AS-il oli PIN kalkulaator, teistel ettevõtetel olid ulmas pangaparoolid. Ma ei mäleta, kas PIN kalkulaator oli minu või Rotko käes. Tean, et Aleksandr Rotkol oli kindlasti ligipääs. Ma ei mäleta, kas Olga Kotoval oli kontodele ligipääs. Kui mina suvel Rotko firmadest lahkusin, siis mina enam kontosid ei kasutanud. Mäletan ainult, et peale suve 2006 väljastasin mõned arved Ella kaubanduse AS nimel.

Kui mina lahkusin töölt, võtsin endaga kaasa mõned Ella kaubanduse dokumendid, mille alusel hiljem arved esitasin. Ülejäänud ettevõtete dokumendid viis minu mäletamist mööda ära kontorist Aleksandr Rotko. Aga meil ei olnud juttu, kuhu ta need viib. Need Ella kaubanduse dokumendid, mille ma kaasa võtsin hävitasin 7 aasta möödudes.

2006 ütles Rotko, et peame vabastama territooriumi ja administratiivhoone. Sadamakraana viidi metalli kokkuostu, nägin sellekohast arvet. Samuti sain aru, et müüdi mingeid katteplaate. Ma ei oska täpsustada, millal ja millises ulatuses müüdi. Mina sain aru, et Rotko üritas maha müüa kõike, mida ta ise oli sinna paigutanud ja rajanud ja mida

EXT-ROTKO-000148

sai maha müüa, sest et tema firmad pidid territooriumilt lahkuma. Täpsemaid asjaolusid ei mäleta. Sain aru, et kuna Rotko oli paigutanud sellesse territooriumi suuri summasid, siis olukorras, kus ta pidi territooriumilt välja kolima, müüs ta maha asjad, selleks et mingi raha tagasi saada.

Mina ei oska öelda, mis sai ettevõtetest edasi, kui suvel 2006 välja kolisime. Ma ei ole peale seda töötajatest kellegagi suhelnud. Ainult kord aastas Tatjana Jekimovaga.

Viimast korda nägin ma Olga Kotovat detsembris 2006. Aleksandr Rotkod ei näinud enam peale suve 2006. Ma ei mäleta, millest me viimasel kohtumisel Olgaga rääkisime. Mäletan, et auto kirjutati minu nimele seepärast, et kui auto saab maha müüdud, siis mina oleksin edastanud müügist laekunud raha. Kellele täpselt, seda ma ei mäleta. Mulle ütles Olga, et hiljem võetakse minuga ühendust ja öeldaks, kuhu rahad kanda. Praegusel hetkel ei mäleta ma enam minu ja Olga viimase vestluse asjaolusid.

Ma tean, et AS-il BPV oli koduleht lennusadam.ee, kuid see oli väga vähe informatiivne. Sellega tegeles Dmitri Gofmekler firmast Arvid Logicum, tel 50 27705.

Ma ei mäleta, millisel põhjusel tegi Olga Kotova minule ülekande 23.03.2006 1 300 krooni ja miks mina kandsin Olga Kotovale 30.12.2006 5 000 krooni. Samuti ma ei mäleta, et minul oleks olnud laenusuhted Rotko firmadega.

Tatjana Rotko´d nägin mõnel korral kontoris, ka nende tütar oli emaga kaasas. Aga mina nendega ei suhelnud. Ma teadsin, et Aleksandril on pere Ameerikas.

Corona Resources S.A. tuleb mulle tuttav ette, kuid ma ei tea, millega seoses. Ma nägin arvatavasti mingeid arveid nendega seoses, aga ma ei mäleta enam, kas need pärinesid ajast, mil mina veel ei töötanud BPV-s või minu töötamise ajast.

Rohkem midagi lisada ei oska.

Protokolli lisad: ei ole

7. Märkused protokolli kohta: ..... *C. мthese селов замечалер* ..... *верно и обеме переводено.* ..... *(Ju.)*

8. Uurimistoimingus osalejaile on selgitatud, et vastavalt KrMS §-le 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

9. Tunnistaja esindaja on kohustatud hoidma saladuses talle kriminaalmenetluse käigus õigusabi andmisel teatavaks saanud andmeid. Esindajal on lubatud kriminaalmenetluse käigus õigusabi andmisel teatavaks saanud andmeid avaldada esindatavale. Esindatava kohta käivaid kohtueelse menetluse andmeid võib esindaja avaldada vaid esindatava nõusolekul ning KrMS §-s 214 ettenähtud tingimustel.

Uurimistoimingu lõpp: 11.10

Natalja Tšuga

Siret Rätsepp

Olga Novoseltseva

Galina Mägi

*Tõlge vene keelest:*
*p. 7. Minu sõnade järgi*
*õigesti üles kirjutatud ja*
*mulle tõlgitud.*

Tõlk Galina Mägi on hoiatatud vastutusest KarS §-de 318 ja 321 järgi
.......... *gllg* .......... (allkiri)

10. Uurimistoimingust osa võtnud [menetlusseisund ja nimi] keeldus protokollile alla kirjutamast, sest [märgitakse keeldumise põhjus].

EXT-ROTKO-000149

[menetleja nimi ja allkiri]

EXT-ROTKO-000150

POLICE AND BORDER GUARD BOARD

SUSPECT INTERROGATION RECORD

in the criminal matter No. 06730000427

23.11.2016 Tallinn

Beginning of the investigation activities:        09.00

Police   Lieutenant Natalja Tsuga, General Crimes Service, Divison of Severe Crimes, Criminal Bureau of North Prefecture of Police and Boder Guard Board, guided by §§ 34, 68, 74 and 146 of the Code of Criminal Procedure, interrogated the witness:

1.      Witness details:

a)      Name:  Olga Novoseltseva

b)      Personal ID code or date of birth:        47203270350

c)      Nationality:      Estonia

d)      Education:      secondary

e)      Place of residence or location and address:        Tallinn, Liikuri 36-26

f)      Workplace or educational institution:   AS Kaupmees&Ko

g)      Contacts:      tel 55 610 434

h)      The relationship between the victim and the suspect:   a former employee of BPV AS

i)      Identified:      ID-card AA0432754

Rights and obligations of the witness

A witness is required to give true testimony if there is no legal basis for the refusal to testify in accordance with §§ 71-73 of this Code (§ 66 (3) of the CCP). The witness is explained his or her right to write testimony in person (§ 68 (I) of the CCP). The witness can give testimony using notes and other documents for numbers and names and other hard-to-remember data (§ 68 (3) of the CCP). A witness may request that an advocate or any other person who meets the educational requirements established for contractual representatives be present for the protection of his or her rights at the interrogation of the witness in the pre-trial proceedings. (Clause § 671 (1) of the CCP).

If a witness fails to appear for hearing within two working days as of the time of the act specified in the summons of the body conducting proceedings together with a representative, the hearing shall

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

be conducted without a representative. (§ 671 (3) of the CCP). The representative may not be a person specified in § 671 (2) of the CCP.

The following persons have the right to refuse to give testimony as witnesses: the descendants and ascendants of the suspect or accused; a sister, stepsister, brother or stepbrother of the suspect or accused, or a person who is or has been married to a sister, stepsister, brother or stepbrother of the suspect or accused; a step or foster parent or a step or foster child of the suspect or accused; an adoptive parent or an adopted child of the suspect or accused; the spouse of or a person permanently living together with the suspect or accused, and the parents of the spouse or person, even if the marriage or permanent cohabitation has ended.(§ 71 (1) of the CCP). A witness may also refuse to give testimony if: the testimony may lay blame on him or her or a person listed in § 71 (1) of the CCP for the commission of a criminal offence or a misdemeanour; he or she has been acquitted or convicted in the same criminal offence as a joint principal offender or an accomplice. (§ 71 (2) of the CCP). The following persons have the right to refuse to give testimony as witnesses concerning the circumstances which have become known to them in their professional or other activities: the ministers of religion of the religious organisations registered in Estonia; counsels and notaries unless otherwise provided by law; healthcare professionals and pharmacists regarding circumstances concerning the descent, artificial insemination, family or health of a person; a person who is legally obliged to observe professional secrecy (§ 72 (1) of the CCP). A witness has the right to refuse to give testimony concerning circumstances to which the State Secrets and Classified Information of Foreign States Act applies (§ 73 (1) of the CCP) At the request of a witness, the residence or place of work or the name of the educational institution of the witness shall not be indicated in the minutes of the hearing of the witness.  (§ 74 (3) of the CCP).

2.      The suspect has been introduced her rights and obligations in §§ 66-74 of the CCP and explained their content. At least 14-year-old witnesses are warned that responsibility for the refusal to give testimony without legal grounds and for knowingly providing false testimony follows according to §§ 318 and 320 of the Penal Code.


(signature of the witness):


3.      Galina Mägi an interpreter who, according to § 161 (6) of the CCP, is obligated to translate everything related to the procedural activities precisely and completely and shall maintain the confidentiality of the information which became known to him or her in the course of the translation, is involved in the investigative activity. She has been warned that she is responsible for the unjustified refusal of fulfilling her duties and for knowingly false translation in accordance with §§ 318 and 321 of the Penal Code.

(interpreter's signature)


4.      The following persons are present at the interrogation: Records taken by Siret Rätsep

5.———  Used equipment:       not used.

6.      Testimony:

This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and corresponds to the original text in Estonian.

Andrus Tupits
Project manager

I was looking for a job; I posted a newspaper ad. After that Aleksandr Rotko contacted me and offered me work. I started employment in AS BPV as Chief Accountant in 2002. There was already another accountant, Tatjana Jekimova. My task was to produce reports, balance sheets, payroll, invoices.

Agrin Partion OÜ had guards at work, but from other companies, I only remember that they were there. I do not know what AS Verest, AS Ela Tolli and Ella Kaubanduse AS were engaged in. BPV AS was engaged in wood processing. All companies were operating because invoices were issued on behalf of all companies.

The workplace was located in the administrative building of Küti Street. When I came to work, the office building had been redecorated; everything was fine, heating, water, and electricity were there. There was nothing much more being built on the territory when I was at work. Everything was ready by the time when I started working. I did see some construction-related invoices that were from the time I was yet not associated with AS BPV. By now, I no longer remember their exact content. When I was working there, no more construction invoices came up. I remember that during the court action, Rotko asked me to calculate how much money had been put into construction. By my memory, this amount was 33 million kroons.

At the basement of the administrative building, there was Milaro AS producing ravioli. I remember that this company was headed by some Polish person. I remember that in the office building was the production of ravioli and then our office. In the office, Olga Kotova worked as a secretary, Tatjana Jekimova as an accountant, Anti Nööp as the harbor master and Anzelika Korotkaja worked in the warehouse. When Anzelika left, Olga Savitskaja came to her place. Olga Kotova prepared documents, made phone calls, translated documents into Estonian. It seems to me that Olga Kotova went to court sessions because Aleksandr Rotko does not speak Estonian. But I cannot give you details because I don't remember. All people were employed by Aleksandr Rotko. Everyday management was carried out by Aleksandr Rotko, and all decisions were also taken by him. We, the staff, did not really interact with each other very much. I cannot say that at work Olga Kotova would have communicated with someone more than with others. Everyone interacted only on the work-related issues, as needed.

I had access to the accounts of the companies. BPV AS had a PIN calculator, and other companies had bank passwords. I cannot remember if the PIN calculator was kept by Rotko or by me. I know that Aleksandr Rotko definitely had access. I do not remember whether Olga Kotova had access to accounts. When I left Rotko's companies in the summer, I no longer used the accounts. I only remember that after the summer of 2006 I issued some invoices on behalf of Ella trade AS.

When I left work, I took with me some Ella trade documents, under which I later submitted invoices. As far as I remember, the documents of the other companies were taken out of the office by Aleksandr Rotko. But we did not talk about where he was taking them. I destroyed these Ella trade documents which I took with me 7 years later.

In 2006, Rotko said that we must release the territory and the administrative building.

The harbor crane was taken to the scrap metal buying-in point; I saw an invoice for that. I also understood that some cover plates were being sold. I cannot tell exactly when and to which extent they were sold. I realized that Rotko was trying to sell everything he had put in there that could be sold because his companies had to leave the territory. I do not remember more specific

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

circumstances. I understood that since Rotko had invested large amounts of money in this territory, then in the situation where he had to move out of the territory, he was selling the things to get some money back.

I don't know what happened to the companies after we moved out in the summer of 2006. I have not spoken to any of the employees after that. Only once a year with Tatjana Jekimova.

Last time I saw Olga Kotova in December 2006. I did not see Aleksandr Rotko again after summer of 2006. I don't remember what Olga and I talked about at our last meeting. I remember that the car was written to my name because if the car was sold, I would have transferred the money from the sale. To whom exactly, I do not remember. Olga told me that I would later be contacted and told where to transfer the money. At this moment, I no longer remember the circumstances of my last conversation with Olga.

I know that AS BPV had a homepage at lennusadam.ee, but it was not very informative. This was dealt with by Dmitri Gofmekler from Arvid Logicum, phone 50 27705.

I cannot remember why Olga Kotova made me a transfer of 1300 kroons on 23.03.2006 and why I transferred 5000 kroons to Olga Kotova on 30.12.2006. I also do not remember that I would have had a loan relationship with Rotko's companies.

I saw Tatjana Rotko in the office a couple of times, their daughter was also with her mother. I did not interact with them. I knew that Aleksandr had a family in America.

The name Corona Resources S.A. rings a bell to me, but I do not know why. I probably saw some invoices connected with them, but I cannot remember if they came from a time when I was not yet working in BPV or from the time I was working there.

I cannot add anything more.

Annexes to the Record: no

7.      Notes on the Record (handwritten): Correctly written according to my word and translated to me.

8.      The parties to the investigation procedure have been explained that, according to § 214 of the CCP, the data of pre-trial proceedings may be disclosed solely with the permission of the Prosecutor's Office and to the extent determined by it.

9.      The representative of the witness is required to keep the information he or she received during criminal proceedings in the course of the provision of legal assistance confidential. The representative is permitted to disclose to the principal the information obtained during criminal proceedings in the course of the provision of legal assistance. The data of the pre-trial proceedings concerning the principal can be disclosed by the representative only with the consent of the principal and under the conditions provided for in § 214 of the CCP.

End of Investigation Action:      11.10

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Audrus Tupits
Project manager

(handwritten):  Translation from Russian

p. 7    Correctly written according to my word and translated to me.


Natalja Tsuga


Siret Rätsepp


Olga Novoseltseva


The interpreter Galina Mägi has been warned of liability under §§ 318 and 321 of the Penal Code

............................        (signature)


10.     The [procedural status and name] who participated in the investigation refused to sign the
protocol because [the reason for the refusal is indicated].


[name and the signature of investigator]



This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and
corresponds to the original text in Estonian.

Andrus Tupits
Project manager

EXT-ROTKO-000155

Translation from Estonian language

KOOPIA

50

TRUE COPY
22.12.2006
Jekaterina Erlic
The director's assistant
/signature/

Paldiski Ports Ltd.
Peetri 31
76801 Paldiski

The 25th of August no. 6-206B

Application

Hereby the BPV Company is requesting you to pay our invoice no. 292/25.08.2006 to Merimpex Company's (P.O. Box 1525, Kotzebue 9/11, 10402 Tallinn) account pursuant to mutual agreement between the BPV Company and Merimpex Co.Ltd.

Account no. 5005786729
Nordea Bank Danmark Ltd.
International Branch
Strandgade 3
Postboks 850 0900 Kobenhavn C

Regards,

Olga Kotova
The member of the board

Translator N. Ivanova has been warned of the liability pursuant to sections 318,321 of the Penal Code.

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPRIIKURATUUR
RINGKONNAPROKURÖR





# APOSTILLE

KOOPIA

(Hague Convention of 5 October 1961/Convention de La Haye du 5 Octobre 1961)

1. *Country: The Republic of the Marshall Islands*

   **This Public Document**

2. *has been signed by*   Patricia B. McDermott

3. *acting in the capacity of*   Deputy Registrar, Republic of the Marshall Islands

4. *bears the seal/stamp*   Registrar of Corporations, Republic of the Marshall Islands

   *Certified*

5. *at*   Reston, Virginia      6.   *on*   September 20, 1996

7. *by*  Deputy Commissioner of Maritime Affairs of the Republic of the Marshall Islands

8. *Number:*   R-147-9/96

9. *Seal/Stamp*      10.   *Signature:*

KOOPIA/ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

74

KOOPIA



## THE REPUBLIC OF THE MARSHALL ISLANDS

### REGISTRAR OF CORPORATIONS

RE: MERIMPEX CO. LTD.

FILED:     September 20, 1996

THIS IS TO CERTIFY that the within document is a true and correct copy of the **ARTICLES OF INCORPORATION** of the above named corporation, duly filed with the Registrar of Corporations effective on the date indicated above pursuant to the Marshall Islands Business Corporation Act.

WITNESS my hand and the official seal of the Registry on September 20, 1996.



G. B. McDermott
Deputy Registrar

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKUROR

EXT-ROTKO-000158