# REPUBLIC OF THE MARSHALL ISLANDS

## OFFICE OF THE REGISTRAR OF CORPORATIONS

KOOPIA

# Endorsement Certificate

IN ACCORDANCE WITH THE PROVISIONS OF SECTION 1.5 OF THE
ASSOCIATIONS LAW OF THE REPUBLIC OF THE MARSHALL ISLANDS 1990

I CERTIFY that I have endorsed "FILED" upon the Original Articles of Incorporation of



MERIMPEX CO. LTD.

as of

September 20, 1996

being the date upon which existence of said corporation commenced.

I FURTHER CERTIFY that a Duplicate of said Articles of Incorporation has been filed with this office.

[SEAL]



Given under my hand and seal on

this _____ 20th _____ day of _____ September _____
19 96 .

C. McDermott

Deputy Registrar of Corporations

KOOPIA ÕIGE   ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
ABIRINGKONNAPROKURÖR





76  KOOPIA

# ARTICLES OF INCORPORATION

## OF

## MERIMPEX CO. LTD.

### INCORPORATED

### IN

### THE REPUBLIC OF THE MARSHALL ISLANDS

### PURSUANT

### TO

### THE BUSINESS CORPORATION ACT

## DUPLICATE COPY

The original of this document was filed in
accordance with Section 1.5 of the
Business Corporation Act on

NON RESIDENT

September 20, 1996

_____
J. mc Dermott
Deputy Registrar

KOOPIA ÕIGE

ANDREI VOHONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

ARTICLES OF INCORPORATION

KOOPIA

OF

## MERIMPEX CO. LTD.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATION ACT

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Marshall Islands Business Corporation Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.   The name of the Corporation shall be:

### MERIMPEX CO. LTD.

B.   The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporation Act.

C.   The registered address of the Corporation in the Marshall Islands is R.R.E. Commercial Center, Delap Wing Suite 208, P.O. Box 1405, Majuro, Marshall Islands MH96960.   The name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.   The aggregate number of shares of stock that the Corporation is authorized to issue is Ten (10) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

E.   The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporation Act may have.



REGISTRAR OF CORPORATIONS
FILED
SEP 20 1996
REPUBLIC OF THE MARSHALL ISLANDS

EXT-ROTKO-000161

78   KOOPIA

F.   The name and address of the incorporator is:

Name

Majuro Nominees Ltd.

Post Office Address

P.O. Box 1405
Majuro
Marshall Islands

G.   The number of directors constituting the initial board of directors is one (1), and he is:

Name

Mr. Aleksander Rotko

Address

Olevimagi 12
EE0001 Tallinn
Estonia

H.   The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the by-laws of the Corporation.

I.   Corporate existence shall begin upon filing these Articles of Incorporation with the Registrar of Corporations as of the filing date stated on these Articles.

IN WITNESS WHEREOF I have executed this instrument on September 20, 1996.

Majuro Nominees Ltd.
Incorporator

by: _Vicki Chase_

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

REGISTRAR OF CORPORATIONS
FILED
SEP 20 1996
REPUBLIC OF THE MARSHALL ISLANDS

EXT-ROTKO-000162

KOOPIA

79

On September 20, 1996 before me personally came Vicki Chase to me known and known to me to be the individual described in and who executed the foregoing instrument and who is authorized to sign on behalf of Majuro Nominees Ltd. and can act individually for that corporation and she duly acknowledged to me that the execution thereof was her act and deed.



KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

EXT-ROTKO-000163



## MINUTES OF THE ORGANIZATIONAL MEETING

### OF THE BOARD OF DIRECTORS

KOOPIA

*OF*

# "MERIMPEX Co. Ltd."

The director held the Organizational meeting of

*MERIMPEX Co. Ltd.*

at (address): <u>R.R.E. Commercial  Center, Delap Wing Suite 208, P.O. Box 1405, Majuro, Marshall Islands MH96960</u>

on (date):    <u>25th September 1996</u>    at (time):  <u>11:00 AM</u>


The meeting was called to order by Vicki Chase, who is authorized to sign on behalf of Majuro Nomineis Ltd., which served as *incorporator* on its clients request for MERIMPEX Co. Ltd. and is named in its *Certificate of Incorporation*. He submitted the appropriate document, acknowleged before a notary, sertifying that the *Incorporator* nor the *Registered Agent* will not have any authority nor responsibility regarding said corporation.

A motion was made, seconded and carried electing Vicki Chase as Chairman of the meeting and Aleksander Rotko as Secretary thereof. These positions were accepted by the respective persons, who proceeded to carry out their duties.

The following persons were present at the meeting:


 <u>Aleksander Rotko</u>

 <u>Vicki Chase</u>

*8 1*

KOOPIA

*-Minutes: page 2-*

The secretary then submitted a proposed form of the corporate seal and upon motion, duly
made, seconded and carried, the following form was selected as the seal of corporation,
imprint of which has been affixed hereto:

MERIMPEX KFT
1145 Bp Amerikal út. 89
Tel: 183-76-50
Adószàm: 10804692-2-01
MKB: 203-46003

The Chairman then submitted a bill for services rendered by the Incorporator and the
Registered Agent and indicated said amount to be due and owing. On motion duly made,
seconded and carried the Treasurer of the corporation was directed to pay from the
corporate funds the total expenses of organizing the corporation, approval for payment
being given.

The following resolution was then duly made and carried:

RESOLVED: That the Treasurer is directed to open an account and deposit the funds
of the corporation with (name of bank):

_____ Unibank A/S , Copenhagen ,   Denmark __

All drafts, cheques and notes of the corporation, payable on said account, is hereby
directed to be made in the name of the corporation, and signed by any of the following
individuals:

_ Aleksander Rotko _____

Furthermore, it is resolved that any and all resolutions required by the Bank to effect
the foregoing arrangement are hereby authorised and adopted as the actions of the Board
of Directors of the corporation.

Then it was decided that each  Share Certificate of the corporation will represent ten
(10%) persent of the total stock of the Corporation, the total stock of the corporation
being (amount):

_____ 10.000 (ten thousand)  US dollars __

EXT-ROTKO-000165

82

KOOPIA

*-Minutes: page 3-*

Upon motion, duly made, seconded and carried, the resolution was made that each shareholder will contribute in the initial funds of the corporation in proportion of shares held by him. The deadline for making such contributions was established on the 31 day of December, 1998.

The following persons manifested their will to be and were accepted as Shareholders of                                                                                                                                        the Corporation with respective proportion of shares held:

| NAME OF SHAREHOLDER | PERCENT OF THE STOCK (%) HELD | No. of Share Certificate |
|---|---|---|
| Aleksander Rotko | 100 | 1-10 |

The Chairman then proposed to nominate Aleksander Rotko as a President and a Secretary of the Corporation. On motion duly made, saconded and carried, the nomination was done and approved.

The following resolution was then duly made and carried:
As it required by the business of the corporation and its interests, the business office of the corporation shall be located at address:
  Olevimagi 12,  EE0001,   Tallinn,   Estonia

There being no further business requiring Board Action or consideration, and on motion duly made, seconded and carried,  the meeting was adjourned.

Dated: 25 of September 1996.

Signed: _____ Aleksander Rotko
        (Secretary of the Meeting)

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÕR

27/89/96      18:32      INTERNATIONAL  BRANCH → 083726411217      NR. 922    601

**Mandate**

83

**COPY**

KOOPIA

Unibenk A/S

– 8 OKT. 1996

2040
2040
11  Int. Branch

| Company | MERIMPEX   CO. LTD. | Account No. | |
|---|---|---|---|
| Address | ESTONIA   OLEVIMÄGI 12, EE0001 TALLINN | Branch | |

I/We state below the specimen signatures of the persons who are authorized to sign for my/our company on the above account.
The same persons are also  authorized to give receipt for or endorse cheques and to draw and endorse bills of exchange to discounted, whether the amounts are paid into the account or paid from the account in cash.
All amounts which are paid to the bank for my/our account, or which the bank might for any reason have to pay or credit to me/us, may be credited to the account.

**Anyone to sign singly**

| Name | ROTKO ALEKSANDER | Will sign | 1. |
|---|---|---|---|
| Title | Director | | |
| Name | | | 2. |
| Title | | | |
| Name | | | 3. |
| Title | | | |
| Name | | | 4. |
| Title | | | |

**Anyone to sign jointly**

| Name | | Will sign | 1. |
|---|---|---|---|
| Title | | | |
| Name | | | 2. |
| Title | | | |
| Name | | | 3. |
| Title | | | |
| Name | | | 4. |
| Title | | | |

Remarks _____

This authority shall remain valid until the Bank has received written notice revoking the same.

02nd of oct  1996

Stamp and Holding Signature

We hereby confirm the authenticity of the beside signatures:

date

Stamp and binding signature

**Unibank**

TRAM NGUYEN
NOTARY PUBLIC-MINNESOTA
HENNEPIN COUNTY
My Commission Expires Jan. 31, 2000

27/09 '96 11:32      TX/RX NO.476?      P.001

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

KOOPIA

Предъявитель сего, граждан**ин** СОЮЗА СОВЕТСКИХ
СОЦИАЛИСТИЧЕСКИХ РЕСПУБЛИК

РОТКО
(фамилия)

Алексоандр Михайлович
(имя и отчество)

1949 г., Винницкая область
(дата и место рождения—date et lieu de naissance)

ROTKO
(nom)

ALEKSANDR
(ет prénom)

отправляется за границу.
se rend à l'étranger.



Лица, внесенные в паспорт
Personnes inscrites dans le passeport

15 . ИЮНЯ . 93
19 г.

Паспорт действителен до 31.12. 95
passeport est valable jusqu'au 19 г.

Подпись

ОК-П № 746395

(Head of Passport.)
12.10.19

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

COPY

# Registration Details

85

Unibank A/S

1 7 OKT. 1996

2040
Int. Branch
2040
Int. Branch

Registered Title: _MERIMPEX CO. LTD._ KOOPIA

Registered Office: _R.R.E. Commercial Center, Delap Wing Suite 208, P.O.Box 1405, Majuro, Marshall Islands MH 96960_

Changed to: _____

Certificate Number: _____

Certificate held at: _____

Incorporation Date: _20th September 1996_

Seal held at: _____

Seal held at: _____

KOOPIA ÕIGE

ANDREI VORONIN
PÕHJA RINGKONNAPROKURATUUR
RINGKONNAPROKURÖR

# Register of Members

86

| Folio Ref | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| S 1 | Date of Membership *25th September 1996* Date of Membership Termination _____ | | | | | | | KOOPIA | |

Name *Aleksander Rotko*

Occupation _____

Address *222-6, Sopruse pst., Tallinn, Estonia*

| Date of Acquisition by Allotment or Transfer | Allotment Number | Transfer No. | No. of Shares | No. of Share Certificate | Amounts Paid or Agreed to be Considered as Paid | Class of Share | Description of Payment | Acquisitions |
|---|---|---|---|---|---|---|---|---|
| 25.09.96 | | | ten | 01 | $ 10.000 - | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Folio Ref | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Date of Membership _____ | | | | Date of Membership Termination _____ | | | | |

Name _____

Occupation _____

Address _____

| Date of Acquisition by Allotment or Transfer | Allotment Number | Transfer No. | No. of Shares | No. of Share Certificate | Amounts Paid or Agreed to be Considered as Paid | Class of Share | Description of Payment | Acquisitions |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# Share Ledger

*87*

KOOPIA

Class of Shares _____ ordinary _____

Dividends To _____

| Disposals | Balance | | | | Remarks |
|---|---|---|---|---|---|
| | Date of Disposal | Number of Shares | Class of Shares | Nominal Value of Shares | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Class of Shares _____

Dividends To _____

| Disposals | Balance | | | | Remarks |
|---|---|---|---|---|---|
| | Date of Disposal | Number of Shares | Class of Shares | Nominal Value of Shares | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | KOOPIA ÕIGE |
| | | | | | ANDREI VORONIN |
| | | | | | PÕHJA RINGKONNAPROKURATUUR |
| | | | | | RINGKONNAPROKURÖR |

## BY LAWS

### of

### MERIMPEX CO LTD.

### Incorporated in the Republic of Marshall Islands

### Filed in Reston, Virginia

### September 20, 1996

### ARTICLE 1. OFFICE

The principle office of the Corporation in the Republic of Marshall Islands shall be located at the R.R.E. Commercial Center, Delap Wing Suite 208, P.O. Box 1405, Majuro, Marshall Islanfds MH96960. The Corporation may have such other offices, either within or outside the Republic of Marshall Islands, as the Board of Directors may designate or as the business of the Corporation may require from time to time.

The registered office of the Corporation to be nominated in the Republic of Marshall Islands be, but need not to be identical with the principal office, and may be changed from time to time by the Board of Directors.

### ARTICLE II. SHAREHOLDERS

**Section 1 Annual Meeting.**

The Annual meeting of the Shareholders may be held anywhere in the world and at any date set by the President within one year from the date of incorporation. The Annual Meeting shall be for the election of Directors and for the transaction of such other business as may come before the meeting.

**Section 2 Quorum.**

A majority of the outstanding shares of the Corporation entitled to vote, represented in the person or by proxy, shall constitute a quorum at a Meeting of Shareholders. Action required or permitted to be taken at a shareholdres' meeting may be taken without a meeting if notice of the proposed action is given to or waived to all voiting shareholders and the action is taken by the holders of all the shares entitled to vote on the action.

KOOPIA

*bylaws - page 2 -*

## ARTICLE III. BOARD OF DIRECTORS

**Section 1** *General Powers.*

  The business and affairs of the Corporation shall be managed by its Board of Directors. The three officers are:

**President**

**Secretary**

**Treasurer**

  One person from anywhere in the world may serve as director and may hold all officers, and this "person" may be an individual or a corporation. If it is a corporation, then the corporate director will need to adopt a resolution to designate an individual to cast its vote. Unless a special meeting is called by the shareholders this officer or these officers are automatically renewed from year to year.

**Section 2** *Special Meetings.*

  Special meetings of the Board of Directors may be called either within or outside the Republic of Marshall Islands by or request of the President or any two Directors.

**Section 3** *Quorum.*

  A majority of the number of directors fixed by Section 2 of this Article III shall constitute a quorum for the transaction of business at any meeting at which a quorum is present at any  meeting of the Board of Directors.

**Section 4** *Manner of acting.*

  The act of the majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

**Section 5** *Vacancies.*

  Any vacancy occuring in the Board of Directors may be filled by the affirmative vote of a majority of the Shareholders or a majoruty of the remaining Directpors through less than a quorum of the Board of  Directors. Any Directorship shall be filled by election at an  Annual  Meeting or at a Spetial Meeting of Shareholders called for that purpose



*bylaws – page 3 –*

KOCPIA

**Section 6** *Informal action by Directors.*

  Any action required to be taken at a Meeting of Directors, ar any action which may be taken at a meeting of Directors, may be taken without a meeting if authorised by the President.

## ARTICLE IV.  OFFICERS

**Section 1** *Number.*

  The officers of the Corporation shall be a President, a Secretary and a Treasurer, each of whom shall be elected or appointed by the Board of Directors. Such other officers and Assistant Officers as may be elected or appointed by the Board of Directors. Any two more officers may be held by the same person.

**Section 2** *President.*

  The President shall be the  principal Executive of the Corporation and shall in general supervise and control all of the business and affairs of the Corporation. He may sign certificates for shares of the corporation, any deeds, bonds, contracts or other instruments exept those which shall be required by law, by these Bylaws, or by the Board of Directors to be otherwise signed or executed; and in general shall have authority to act on behalf of the Corporation.

**Section 3** *Secretary.*

  The secretary shall:
  (a)   keep the Minutes of the Shareholders' and of the Board of Directors' Meeting in one or more s' books provided for that purpose;
  (b)   be custodian of the corporate records, if any;
  (c)   keep a register of the post office address of each shareholder;
  (d)   sign with the President or a Vice-President certificates for the shares of the Corporation, the issuance of which shall have been authorized  by the Prezident  and the Secretary  (if combined the President will sign twice: once as President and  once as Secretary);
  (e)   have general charge of the Stock Transfer Books of the Corporation; and
  (f)   in general perform all duties incident to the office of Secretary

*bylaws - page 4 -*

KOOPIA

**Section 4 *Treasurer***

Shall:

(a)  have charge and custody of and be responsible for all funds and securities of the Corporation; receive and give receipts for monies in the name of the Corporation in such banks, trust companies or other depositories as shall be selected in accordance with the direction of the President; and

(b)   in general perform all of the duties incident to the office of the Treasurer and such other duties as from time to time be assigned to him by the Board of Directors.

## ARTICLE V. CONTRACTS, LOANS, CHEQUES AND DEPOSITS

**Section 1 *Contracts.***

The Board of Directors may authorize any Officer or Officers, Agent or Agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Corporation, and such authority may be general or confined to specific instances.

**Section 2 *Loans.***

No loans shall be contracted on behalf of the Corporation and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the Board of Directors.

**Section 3 *Cheques, Drafts, etc.***

All cheques, drafts, or other orders for payment of money, notes or other evidence of indebtedness issued in  the name of the Corporation shall be signed by such Officer or Officers, Agent or Agents, of the Corporation and in such manner as shall from time to time be determined by the resolution of the Board of  Directors.

**Section 4 *Deposits.***

All funds of the Corporation if not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board of Directors may select.

KOOPIA

*bylaws - page 5 -*

## ARTICLE VI.   CERTIFICATES FOR SHARES; TRANSFERS

Shares may or may not be represented by certificates.

(a)   If not represented by certificates, the shareholders will be represented by notation in the corporate records, signed by the President and the Secretary.

(b)   If certificates are used, they shall be in such form as shall be determined by the Board of Directors. Such certificates shall be signed by the President and the Secretary. If the President also holds the office of Secretary, he shall sign twice, once in each capacity.

## ARTICLE VII. FISCAL YEAR

The fiscal year of the Corporation shall begin on the first day of January and end on the last day of December.

## ARTICLE VIII. WAIVER OF NOTICE

Whenever any notice is required to be given to any Shareholder or Director of the Corporation under the provision of these Bylaws or under the provisions of the Marshall Islands Business Corporation Act, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated herein, shall be deemed equivalent to the giving of such notice.

## ARTICLE IX. AMENDMENTS

These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by the Board of Directors or by the Shareholders at any regular or Special Meeting of the Board of Directors.

CERTIFICATION: I hereby certify that the foregoing Bylaws constitute the Bylaws of MERIMPEX CO. LTD. (incorporated in the Republic of Marshall Islands: September 20, 1996) and were adopted by the Board of Directors as of 25 th of September, 1996.

President _____ Aleksander Rotko

KOOPIA ÕIGE

ANDREI VORONIN
OÜHJA RINGKINKÄIKÄPHOKURATUUR
RINGKONNAPROKURÖR



POLITSEI- JA PIIRIVALVEAMET

# ÄRATUNDMISEKS ESITAMISE PROTOKOLL

kriminaalasjas nr 06730000427

12.12.2017, Tallinn
Uurimistoimingu algus: 13.00

Politsei- ja Piirivalveameti Põhja prefektuuri kriminaalbüroo raskete kuritegude talituse juhtivuurija Siret Rätsepp, juhindudes KrMS §-dest 81, 82 ja 146, viis läbi äratundmiseks esitamise:

1. Objekt esitatakse äratundmiseks: Olga Novoseltsevale (ik 47203270350), kelle isikusamasus on tuvastatud ID-kaart AA0432754 abil.
2. Uurimistoimingus osaleb: ei osale.
3. Kasutatud tehnikavahendid: ei kasutatud.
4. Vähemalt 14-aastast tunnistajat on hoiatatud, et ütluste andmisest seadusliku aluseta keeldumise ja teadvalt vale ütluse andmise eest järgneb vastutus KarS §-de 318 ja 320 järgi.

(tunnistaja allkiri)

5. Uurimistoimingus osaleb tõlk Kadi Kuusk, kes on KrMS § 161 lõike 6 kohaselt kohustatud tõlkima kõik menetlustoimingusse puutuva täpselt ja täielikult ning hoidma saladuses talle tõlkimisel teatavaks saanud andmeid. Teda on hoiatatud, et oma ülesannete täitmisest alusetu keeldumise ja teadvalt valesti tõlkimise eest vastutab ta KarS §-de 318 ja 321 järgi.

(tõlgi allkiri)

6. Äratundmiseks esitati: Aleksandr Rotko koos vähemalt kahe sellega sarnase objektiga:
   a. Andres Albert
   b. Igor Aleksejev
7. Objektide sarnasuse kirjeldus: keskealised tumedate juuste ja tumedate silmadega meesterahvad.
   Äratundmiseks esitatud objekt paiknes teiste objektide hulgas fototabelil.
8. Äratundmiseks esitatud isik valis oma asukohaks: nr 3.
9. Äratundjale on tehtud ettepanek vaadata talle esitatud objekti või objekte ja selgitada, kas ta tunneb uuritava sündmusega seotud objekti ära ning kas ta nendib selle sarnasust teiste objektidega või erinevust nendest. Äratundja selgitus:
   Tunnen ära fotol nr 3 oleva meesterahva. Tema on Aleksandr Rotko nimeline isik, kelle ettevõttes AS BPV Tallinnas Küti tänaval töötasin aastatel 2002 – 2006. Tunnen ta ära ilmeksimatult, tema ninakuju, juuste, huulte järgi, sest ma töötasin tema ettevõttes pikalt.
10. Protokolli lisad: puuduvad.
11. Märkused protokolli kohta: *Protokoll ...................................................................*
    *........................................................................................................................*
    *........................................................................................................................*
12. Uurimistoimingu osalejaile (välja arvatud kahtlustatavale) on selgitatud, et vastavalt KrMS § 214 võib kohtueelse menetluse andmeid avaldada üksnes prokuratuuri loal ja tema määratud ulatuses.

ASUTUSESISESEKS KASUTAMISEKS

Uurimistoimingu lõpp:13.15

Siret Rätsepp

Olga Novoseltseva

Kadi Kuusk

p. 11 tõlgi: "Protokoll on koostatud minu sõnade järgi õigesti ja tõlgitud mulle sellest keelde. Märkusi ei ole."

Tõlk... *Kadi Kuusk*
on hoiatatud vastutusest KarS § 318
ja § 321 järg



FOTOTABEL

POLITSEI- JA PIIRIVALVEAMET

Foto 1.

Foto 2.

Foto 3.

Fototabeliga tutvunud "_2_" detsember 2017 _Olga Vanovitsev_ 4

Fototabeli koostas "_2_" detsember 2017 juhtivuurija S. Rätsepp

EXT-ROTKO-000179

FOR INTERNAL USE
Holder of information:  Police and Border Guard Board
Basis of the restriction on access:        § 35 clause 1 (1), (12) of the Public Information Act
The final date for application of the restriction on access:        12.12.2029
Date of notation:        12.12.2017

POLICE AND BORDER GUARD BOARD

PRESENTATION FOR IDENTIFICATION MINUTES
in criminal matter 06730000427

12.12.2017, Tallinn
Start of investigative activity: 13.00

Siret Rätsepp, Principal Investigator of the Serious Crime Office of the North Prefecture of the Police and
Border Guard Board, executed presentation for identification pursuant to § 81, 82 and 146 of the Code of
Criminal Procedure:

1.  1. Object presented for identification:   to Olga Novoseltseva (personal identification code
    47203270350) whose identity has been confirmed with ID card no AA0432754.
2.  Participating in the investigative activity:        no.
3.  Technical equipment used:        none.
4.  The witness of at least fourteen years of age has been warned against refusal to give testimony without
    a legal basis and giving knowingly false testimony is punishable according to § 318 and 320 of the
    Penal Code.

(signature of the witness)

5.  Translator Kadi Kuusk is participating in the procedure and is under an obligation to translate any
    aspect of procedural act precisely and completely and maintain the confidentiality of the information
    which became known to her in the course of translation pursuant to § 161 (6) of the Code of Criminal
    Procedure. She has been warned against refusal to fulfil her obligations without a legal basis and
    wrongful translation is punishable according to § 318 and 321 of the Penal Code.

(signature of the translator)

6.  Presented for identification:      Aleksandr Rotko together with at least two similar objects:
a.  Andres Albert
b.  Igor Aleksejev
7.  Description of similarities of the objects:        middle-aged males with dark hair and dark eyes.
    The object presented for identification was positioned among the other objects on photo table.
8.  The object presented for identification chose its position to be:  no 3.
9.  The identifier was presented with a proposition to look at the presented object or objects and explain
    whether she recognizes the object related to the event and whether she establishes similarities and
    distinctions with other objects. Explanation of the identifier:
    I recognize the male on photo no 3. He is a person named Aleksandr Rotko in whose company in
    BPV in Tallinn on Küti street I worked during 2002 – 2006. I recognize him unmistakably by his
    nose, hair, lips because I worked in his company for a long time.
10. Annexes to the minutes:        none.
11. Notes to the minutes:

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and
corresponds to the original text in Estonian.

Andrus Tupits
Project manager

*(hand-written in Russian language)*
12. The participants of the proceeding (except the suspect) have been explained that pursuant to § 214 of the Code of Criminal Procedure, Information concerning pre-trial proceedings shall be disclosed only with the permission of and to the extent specified by a prosecutor's office.

End of investigative activity:          13.15

Siret Rätsepp
Olga Novoseltseva

Kadi Kuusk

*(hand-written):*
cl. 11 translation:    "the minutes have been prepared according to my words correctly and translated for me into the Russian language. No additional notes."

*(translator's stamp)*

The translator Kadi Kuusk has been warned about liabilities pursuant to § 318 and § 321 of the Penal Code.


PHOTO TABLE
POLICE AND BORDER GUARD BOARD

Photo 1.
Photo 2.
Photo 3.

Examined the photo table on December 12th 2017 *(signatures)*
Photo table was prepared on December 12th 2017 by Principal Investigator S. Rätsepp

13. ANDRES ALBERT35602135216
14. IGOR ALEKSEJEV35602020305
15. ALEKSANDR ROTKO34902270228

This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and corresponds to the original text in Estonian.
Andrus Tupits
Project manager

EXT-ROTKO-000181

1-07-10649



# KOHTUMÄÄRUS

| | |
|---|---|
| **Kohus** | Tallinna Ringkonnakohus, kriminaalkolleegium |
| **Määruse tegemise aeg ja koht** | 10. oktoober 2016. a, Tallinn |
| **Kriminaalasja number** | 1-07-10649 (06730000427) |
| **Kohtukoosseis** | eesistuja Sten Lind, liikmed Ivi Kesküla ja Urmas Reinola |
| **Sekretär** | Elina Huobolainen |
| **Vaidlustatud kohtulahend** | Harju Maakohtu 25. augusti 2007. a määrus, millega kohaldati tagaotsitavaks kuulutatud Olga Kotova suhtes tõkendina vahistamist |
| **Kaebuse esitaja ja kaebuse liik** | kahtlustatava Olga Kotova (ik 47711285211) kaitsja vandeadvokaat Janek Valdma, määruskaebus |
| **Kohtuistungil osalenud isikud** | ringkonnaprokurör Andrei Voronin, kaitsja Janek Valdma |

## RESOLUTSIOON
1. **Jätta Harju Maakohtu 25. augusti 2007. a määrus muutmata.**
2. **Määruskaebus jätta rahuldamata.**

### Edasikaebamise kord
Käesoleva määruse peale võib esitada advokaadi vahendusel määruskaebuse Riigikohtule 10 päeva jooksul alates määruse teatavaks saamise päevale järgnevast päevast.

## ASJAOLUD JA MENETLUSE KÄIK
### Vahistamistaotlus
1.   Põhja Ringkonnaprokuratuuri ringkonnaprokurör Maria Sutt-Tehver esitas 24.08.2007 Harju Maakohtule taotluse **Olga Kotova** vahistamiseks. Prokurör märkis, et O. Kotova on kuulutatud Põhja Politseiprefektuuri 20.02.2007 määrusega tagaotsitavaks ning põhjendas vahistamise vajalikkust sellega, et O. Kotova hoiab kriminaalmenetlusest kõrvale ja varjab enda asukohta.

Taotluse kohaselt kahtlustatakse O. Kotovat **KarS § 203** järgi selles, et tema, olles OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, ühiselt ja kooskõlastatult Aleksandr Rotkoga, kes on OÜ Agrin Partion, AS Verest ja AS BPV nõukogu liige ning Ela Tolli AS juhatuse liige, ajavahemikul 07.06.2006 kuni 01.08.2006 rikkusid ja hävitasid tahtlikult Eesti Vabariigi omandis olevaid ehitisi ja rajatisi asukohaga Küti 17 ja 17a Tallinn, millega tekitasid Eesti Vabariigile olulist kahju.
Nimelt eemaldati Tallinnas Küti 17 ja 17a kinnistul asuvalt sadamakailt ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata Aleksandr Rotko korraldusel ja Olga Kotova

1

teadmisel sadamakai olulised osad: teekatteplaadid suuruses 0,14x 2,00x 6,00 kokku 460 tk, katteplaadid suuruses 0,13x1,23x1,6 kokku 164 tk ning suuruses 0,13x1,23x 0,94 kokku 35 tk. Sellega tekitati Eesti Vabariigile kahju kokku 1 755 096,60 krooni;
Samuti eemaldati kinnistult ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata Aleksandr Rotko korraldusel ja Olga Kotova teadmisel kinnistu territooriumi väravad ja lõhuti need. Sellega tekitati Eesti Vabariigile kahju kokku 33 040 krooni.

Samuti kahtlustatakse O. Kotovat **KarS 201 lg 2 p 4** järgi selles, et tema, olles OÜ Agrin Partion, AS Verest, AS BPV juhatuse liige ning Ela Tolli AS nõukogu liige, ühiselt ja kooskõlastatult Aleksandr Rotkoga, kes on OÜ Agrin Partion, AS Verest ja AS BPV nõukogu liige ning Ela Tolli AS juhatuse liige:
–   teostasid alates 2000. aastast kuni 01.08.2006 ebaseaduslikku valdust Eesti Vabariigile kuuluval territooriumil Küti 17 ja 17a Tallinn. Ajavahemikul 07.06.2006 - 01.08.2006 eemaldati Aleksandr Rotko korraldusel ja Olga Kotova teadmisel ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Tallinnas Küti 17 ja 17a asuvalt territooriumilt Eesti Vabariigile kuulunud raudteerelsid kokku kaaluga 66,6 tonni. Olga Kotova ja Aleksandr Rotko müüsid 26.07.2006 ebaseaduslikult eemaldatud relsid AS BPV nimelt AS-le Kuusakoski summas 204 328,80 krooni. Sellega pöörasid nad nende ebaseaduslikus valduses oleva võõra vallasasja, s.o Eesti Vabariigile kuulunud raudteerelsid, ebaseaduslikult kolmanda isiku kasuks. Raudtee relsside müügist sai AS BPV tulu 204 328,80 krooni;
–   korraldasid ajavahemikul 07.06.2006 - 01.08.2006 ebaseaduslikult, st ilma omaniku Eesti Vabariigi esindaja Justiitsministeeriumi loata, Tallinnas Küti 17 ja 17a asuvalt territooriumilt, mille üle nad teostasid alates 2000. aastast kuni 01.08.2006 ebaseaduslikku valdust, katlamajast katla (kaaluga kuni 6,4 tonni ning maksumusega vähemalt 13 120 krooni) eemaldamise ja omastasid selle, toimetades selle territooriumilt minema ning omaniku kasutus- ja käsutusalast välja.

**2.**   Harju Maakohus määras 25.08.2007 määrusega, et tagaotsitavaks kuulutatud Olga Kotova tuleb tema tabamisel vahistada.
Kohtu hinnangul on kriminaalasjas on kogutud küllaldaselt faktilist materjali, mille põhjal on alust lugeda O. Kotovale esitatud kahtlustust põhjendatuks.
Kohus leidis, et kriminaalasja materjalidest nähtuvalt on O. Kotova kriminaalmenetlusest teadlik, kuid sellele vaatamata on ta realiseerinud oma Eestis asuva vara ning ilmselt Eesti Vabariigist lahkunud. O. Kotova ei ole reageerinud kutsetele ja on jätnud korduvalt menetleja juurde ilmumata. Eelnimetatud asjaolud andsid kohtule aluse arvata, et kahtlustatav võib ka edaspidi jätkata kriminaalmenetlusest kõrvale hoidumist. Seetõttu leidis kohus, et tagaotsitava kahtlustatava O. Kotova vahistamiseks esineb küllaldane alus.

**3.**   Põhja Ringkonnaprokuratuuri ringkonnaprokurör Maria Sutt-Tehver andis 29.08.2007 välja Euroopa vahistamismääruse O. Kotova vahi alla võtmiseks ja loovutamiseks Eesti Vabariigile kriminaalmenetluse läbiviimiseks või vabaduskaotusliku karistuse või kinnipidamiskorralduse täitmiseks.

**4.**   O. Kotova peeti kahtlustatavana kinni 23.09.2016 kell 15.30 ja ta toimetati järgmisel päeval küsitlemiseks Harju Maakohtu eeluurimiskohtuniku juurde.
Maakohtus väitis O. Kotova kaitsja, et kahtlustatav ei olnud teadlik tema suhtes alustatud kriminaalmenetlusest.

**5.**   Harju Maakohus, kuulanud ära O. Kotova ja tema kaitsja, jättis vahistamismääruse muutmata.

2

Kohus asus seisukohale, et O. Kotova suhtes esineb endiselt vahistamisalusena kriminaalmenetlusest kõrvalehoidumise oht. Kohus viitas asjaolule, et kahtlustatava alaline elukoht asub Ameerika Ühendriikides. Kohus leidis, et maakohtu 25.08.2007 määruses on põhjalikult analüüsitud seda, et O. Kotova on varem kriminaalmenetlusest kõrvale hoidunud. Eeltoodust tulenevalt luges kohus vahistamise õiguspäraseks.

**6.**   Harju Maakohtu 25.08.2007 määruse peale esitas määruskaebuse O. Kotova kaitsja Janek Valdma, kes palub maakohtu määrus tühistada ja kohaldada kahtlustatava suhtes elukohast lahkumise keeldu.

**6.1**   Kaitsja märgib kaebuses, et O. Kotova vahistati põhjusel, et ta hoidub kriminaalmenetlusest kõrvale ning varjab enda asukohta. Selline eeldus põhines järgnevatel andmetel: O. Kotova elukoht oli 2007. a kevadel teadmata; O. Kotovale saadeti 19.12.2006 tähitud kirjaga kutse korraldusega ilmuda 28.12.2006 uurija juurde; kutse tagastati 22.01.2007 märkega „ei asu antud aadressil"; teostati kontrollkäik Aleksandr Rotko ja O. Kotova viimasesse teadaolevasse elukohta aadressil Kungla 4-44 Rakvere, kust saadi vastuseks, et nad ei ela seal. Samuti on viidatud vahistamistaotluses sellele, et O. Kotova lähikondsetel paluti talle edasi öelda, et ta politseiga ühendust võtaks.

Kaitsja selgitab, et O. Kotova lahkus elama välismaale 2006. a detsembris, s.o enne kui ta sai teada, et politsei teda otsib. Samuti puuduvad asjas andmed selle kohta, et O. Kotova oleks olnud teadlik tema suhtes algatatud kriminaalmenetlusest. Kaitsja on esitanud kaebuse juurde dokumendid, mis tõendavad, et tagaotsitavaks kuulutamise ja vahi alla võtmise otsustamise ajal oli O. Kotova hõivatud õppetööga välismaal. Eeltoodust tulenevalt leidis maakohus kaitsja hinnangul ekslikult, et O. Kotova hoiab tahtlikult kriminaalmenetlusest kõrvale.

**6.2**   Kaitsja märgib, et kahtlustatava lähedased Iryna Talakh ja Rauno Kreemann on esitanud kinnituskirja, milles nad kohustuvad tagama O. Kotovale püsiva elukoha ja vajadusel elatusvahendid kogu kriminaalmenetluse toimumise aja jooksul. Kaitsja palub võtta asja juurde veel mitmeid dokumente, mis kinnitavad tema hinnangul seda, et O. Kotova on aus, töökas ja usaldusväärne inimene, samuti pühendunud ja heade õppetulemustega õpilane.

Eeltoodust tulenevalt leiab kaitsja, et O. Kotova suhtes on võimalik kohaldada eeluurimise ajaks kergemaliigilist tõkendit – elukohast lahkumise keeldu.

## RINGKONNAKOHTU SEISUKOHT

**7.**   Ringkonnakohus, vaadanud kriminaalasja materjalid ja esitatud määruskaebuse läbi ning kuulanud ära menetluse pooled, leiab, et määruskaebuse argumendid ei anna alust maakohtu määruse tühistamiseks.

**8.**   Määruskaebus põhineb väitel, et O. Kotova ei olnud tema suhtes toimuvast kriminaalmenetlusest teadlik. Ringkonnakohus leiab, et toimikus olevad tõendid lükkavad selle väite ümber.

Vaidlus puudub selles, et O. Kotovale ei õnnestunud kätte toimetada kutset menetleja juurde. Kriminaalasja materjalidest nähtub, et menetleja on püüdnud erinevaid kanaleid pidi O. Kotovaga ühendust saada.

Asja materjalide hulgas olevast 19.02.2007 õiendist (kd I; toim.1 190) nähtub, et uurija helistas alates 15.01.2007 korduvalt O. Kotova telefonile numbril 56492932, kuid ei saanud kedagi kätte. 12.02.2007 võttis telefoni vastu tundmatu vene keelt kõnelev mees, kes kuuldes, et helistatakse politseist ja soovitakse rääkida O. Kotovaga, katkestas kõne ning hiljem enam telefonile ei vastanud.

Samuti püüti O. Kotovaga ühendust saada tema lähedaste kaudu. Viidatud õiendi kohaselt vestles Rakvere linna konstaabel 18.01.2007 O. Kotova ema Nadežda Kreemanniga. Viimane kinnitas, et O. Kotova ega A. Rotko ei ela enam aadressil Kungla 4-44 Rakvere ning mõlemad

3

viibivad väljaspool Eestit. 01.02.2007 vestles uurija N. Kreemanni poja Rauno Kreemanniga, kes väitis, et O. Kotova viibib Venemaal.

12.07.2007 õiendist (kd I; toim.l 247) nähtub, et uurija helistas 23.05.2007 O. Kotova vennale Aleksandr Kotovile numbrile 5187112. Viimane lubas O. Kotovaga ühendust võtta ja paluda õde politseiga kontakteeruda. Selleks edastas uurija A. Kotovile oma kontaktandmed (telefoni numbri ja e-posti aadressi). A. Kotov väitis, et ta on ise Soomes tööl, kuid proovib leida võimaluse õele info edasiandmiseks. Sama õiendi kohaselt helistas uurija 28.05.2007 ka N. Kreemannile numbrile 56495403. Viimane väitis, et O. Kotova saatis talle küll emadepäevaks kaardi, kuid sellele ei olnud saatja aadressi märgitud. N. Kreemann teadis ainult seda, et O. Kotova soovis minna Venemaale disaini õppima, kuid tütre täpset aadressi tal ei olnud.

Nagu näha, väitsid O. Kotova lähedased, et neil ei ole sisuliselt kontakti O. Kotovaga ja nad ei tea, kus O. Kotova viibib. 12.07.2007 jälitusprotokollist (kd I; toim.l 249 - 249 pöördel) ilmneb aga, et abonent 56492932 (omanik ja kasutaja O. Kotova) on perioodil 25.12.2007 – 30.12.2007 suhelnud igapäevaselt abonentidega 56495403 (N. Kreemann), 56495503 (R. Kreemann) ja 5187112 (A. Kotov). S.t samalt abonentnumbrilt, millel püüdis uurija O. Kotovaga edutult ühendust saada, suheldi hiljem aktiivselt O. Kotova sugulastega.

Seega suhtles O. Kotova jälitustoimiku kohaselt aktiivselt oma sugulastega, kellel oli palutud anda talle edasi info, et O. Kotova suhtes toimub kriminaalmenetlus. Seega on alust arvata, et see info oli O. Kotovale teada. O. Kotova lähedaste käitumine aga näitab, et O. Kotova hoidis kriminaalmenetlusest kõrvale. Kuigi nad suhtlesid O. Kotovaga, väitsid nad politseile, et ei tea kahtlustatava täpset asukohta. Nimetatu viitab kohtu hinnangul kahele alternatiivsele võimalusele: kas O. Kotova valetas sugulastele oma asukoha kohta (nt väites, et viibib Venemaal) või lähedased küll teadsid tema asukohta, kuid kokkuleppel O. Kotovaga esitati politseile tema asukoha osas valeinfot.

Kõik eelnimetatud asjaolud kogumis viitavad sellele, et O. Kotova oli teadlik tema suhtes käivast kriminaalmenetlusest, kuid ta ei soovinud, et tema asukoht politseile teatavaks saaks.

Märkida tuleb ka seda, et asja materjalide kohaselt on Olga Novoseltseva andnud 06.11.2012 tunnistajana ülekuulamisel ütlusi (kd I; toim.l 299 - 302), millest nähtub, et O. Novoseltseva suhtles A. Rotkoga telefonis ja ütles viimasele, et ta käis alustatud uurimisega seoses politseis ütlusi andmas ning et politsei soovib rääkida muuhulgas ka A. Rotkoga. Selle peale vastas A. Rotko, et O. Novoseltseva ei pea muretsema.

Seega oli A. Rotko kriminaalmenetlusest teadlik. Kuna A. Rotko oli eelnimetatud ajal O. Kotova abikaasa, siis ei pea ringkonnakohus usutavaks seda, et O. Kotova ei olnud tema tagaotsimisest teadlik. Tähelepanu väärib seegi, et A. Rotko käitumismuster oli sarnane O. Kotova omaga: ta küll suhtles Eestis viibivate isikutega, kuid tegi seda nii, et neil ei olnud andmeid, kuidas A. Rotkoga ühendust saada (tunnistaja O. Novoselskaja väitel võttis A. Rotko temaga alati ise ühendust, helistades lauatelefonil. O. Novoselskaja väitel ei teadnud ta, kus A. Rotko viibib ja kuidas temaga ühendust saada).

Veel peab ringkonnakohus oluliseks prokuröri kohtuistungil esitatud koopiat 01.12.2007 Verest AS, Agrin Partion OÜ ja BPV AS (Kostjad I, II ja III) poolt Harju Maakohtule esitatud täiendavatest taotlustest, mille allkirjastas 02.12.2007 digitaalselt O. Kotova.

Nimetatud dokumendi II punktis (Taotlused) on märgitud järgmist: „Eesti Vabariik kasutab praegu kõiki surve meetmeid, et kostjaid hävitada ja vältida kohtuprotsessi Euroopa Inimõiguste Kohtus. Nimelt, Kriminaalpolitsei ähvardab kostjate endiseid töötajaid ja sugulasi, teeb lõpmatuid ülekuulamisi, arestitud on raamatupidaja sõiduauto, kostjate arved ja vara, esitatud kunstlik hagi kasutuseeliste väljanõudmiseks." Seega on O. Kotova selgesõnaliselt andnud teada, et on teadlik toimuvast kriminaalmenetlusest ning sellest, et uurija on püüdnud sugulaste kaudu temaga ühendust saada.

4

**9.**    Eeltoodud asjaolusid kogumis arvesse võttes nõustub ringkonnakohus maakohtuga, et O. Kotova oli kriminaalmenetlusest teadlik, kuid hoidis sellest teadlikult kõrvale.

Ringkonnakohtu hinnangul suurendab kriminaalmenetlusest kõrvalehoidumise tõenäosust tõsiasi, et O. Kotova on Ameerika Ühendriikide kodanik, kelle elukohaks on kahtlustatava ülekuulamise protokolli kohaselt (kd II; toim.l 66 - 71) Ameerika Ühendriigid, s.o kahtlustatav ei oma Eesti Vabariigis alalist elukohta. Määruskaebusele lisatud tõenditest nähtub, et O. Kotova ei ole olnud enam aastaid Eestiga seotud – siin elavad küll ta sugulased, kuid ta õppis ja töötas välismaal ning praegu asub tema alaline elukoht Ameerika Ühendriikides. Seega viitavad kriminaalasjas kogutud andmed sellele, et O. Kotoval on sidemed ja võimalus lahkuda taas Eesti Vabariigist, et hoiduda kõrvale õigusemõistmisest.

Asjaolu, et O. Kotovale on pakutud eeluurimise ajaks Eestis ajutist elukohta, ei välista tema Eestist lahkumist. Samuti ei välista kriminaalmenetlusest kõrvalehoidumise ohtu O. Kotova head õppetulemused ega teda kiitvad iseloomustused.

Arvestades asjaolu, et O. Kotova on hoidnud aastaid kriminaalmenetlusest kõrvale ja tal on olemas sidemed ning võimalus lahkuda Eesti Vabariigist, siis esineb kohtukolleegiumi hinnangul põhjendatud kahtlus, et O. Kotova võib asuda taas kriminaalmenetlusest kõrvale hoiduma ning hakata end välisriigis varjama.

Eeltoodu põhjal leiab ringkonnakohus, et muud menetluse tagamise vahendid kui O. Kotova vahistamine ei ole piisavad kriminaalmenetluse tõhusa läbiviimise tagamiseks, mistõttu tema vahistamine on vältimatult vajalik.

**10.**    Eelnevast lähtuvalt ning juhindudes KrMS § 337 lg 1 p-st 1 ja §-st 390 jätab ringkonnakohus vaidlustatud kohtumääruse muutmata ja määruskaebuse rahuldamata.

(allkirjastatud digitaalselt)

Sten Lind                              Ivi Kesküla                              Urmas Reinola

5

# DIGITAALALLKIRJADE KINNITUSLEHT

## ALLKIRJASTATUD FAILID

| FAILI NIMI | FAILI SUURUS |
|---|---|
| 1-07-10649 Olga Kotova v.doc | 91 KB |

## ALLKIRJASTAJAD

| nr. | NIMI | ISIKUKOOD | AEG |
|---|---|---|---|
| 1 | Sten Lind | 37907230220 | 10.10.2016 13:21:26 +03:00 |

ALLKIRJAKEHTIVUS

ALLKIRI ON KEHTIV

ROLL/RESOLUTSIOON

ALLKIRJASTAJA ASUKOHT (LINN, MAAKOND, INDEKS, RIIK)

ALLKIRJASTAJA SERTIFIKAADI SEERIANUMBER

486472223366816283596321237880014266584

| SERTIFIKAADI VÄLJAANDJA NIMI | VÄLJAANDJA VÕTME IDENTIFIKAATOR |
|---|---|
| ESTEID-SK 2011 | 7B 6AF2 55 50 5C B8 D9 7A 08 87 41 AE FAA2 2B 3D 5B 57 76 |

ALLKIRJA SÕNUMILÜHEND

30 31 30 0D 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 60 79 AE 24 63 09 83 4F 40 35 2F FB E0 E5 D4 91 6A 2F 61 6E CA 36 F0 BA48 13 51 C3 E2 8E 44 E7

| nr. | NIMI | ISIKUKOOD | AEG |
|---|---|---|---|
| 2 | Urmas Reinola | 35709066015 | 10.10.2016 13:23:34 +03:00 |

ALLKIRJAKEHTIVUS

ALLKIRI ON KEHTIV

ROLL/RESOLUTSIOON

ALLKIRJASTAJA ASUKOHT (LINN, MAAKOND, INDEKS, RIIK)

ALLKIRJASTAJA SERTIFIKAADI SEERIANUMBER

31894266621464344753344150447897505243

| SERTIFIKAADI VÄLJAANDJA NIMI | VÄLJAANDJA VÕTME IDENTIFIKAATOR |
|---|---|
| ESTEID-SK 2011 | 7B 6AF2 55 50 5C B8 D9 7A 08 87 41 AE FAA2 2B 3D 5B 57 76 |

ALLKIRJA SÕNUMILÜHEND

30 31 30 0D 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 24 3B D3 EF F8 43 F4 2E BB B3 A6 2B 4C 6B 25 EB DE 99 6E 6D E 1 EA04 E1 DC 7B DB 47 1F 93 C5 D6

| nr. | NIMI | ISIKUKOOD | AEG |
|---|---|---|---|
| 3 | Ivi Kesküla | 46304280287 | 10.10.2016 13:25:52 +03:00 |

ALLKIRJAKEHTIVUS

ALLKIRI ON KEHTIV

ROLL/RESOLUTSIOON

ALLKIRJASTAJA ASUKOHT (LINN, MAAKOND, INDEKS, RIIK)

ALLKIRJASTAJA SERTIFIKAADI SEERIANUMBER

| 1334055361766159857787978521112544646688 |
|---|

| SERTIFIKAADI VÄLJAANDJA NIMI | VÄLJAANDJA VÕTME IDENTIFIKAATOR |
|---|---|
| ESTEID-SK 2011 | 7B 6AF2 55 50 5C B8 D9 7A 08 87 41 AE FAA2 2B 3D 5B 57 76 |

ALLKIRJA SÕNUMILÜHEND

| 30 31 30 0D 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 80 0F 1AB0 6B BB A2 77 CE 02 DB 2E 73 7AE3 BC 01 77 AD A0 57 28 C3 BC 8B D3 F6 5F 73 FC B9 6B |
|---|

Selle kinnituslehe lahutamatu osa on õigus **"Allkirjastatud failid"** nimetatud failide esitus paberil.

MÄRKUSED

|   |
|---|
|   |

1-07-10649

COURT RULING

| | |
|---|---|
| The court | Tallinn Circuit Court, Criminal Chamber |
| The time and place of the court ruling | 10.10.2016, Tallinn |
| Number of the criminal matter | 1-07-10649 (06730000427) |
| Panel | Presiding judge Sten Lind, members Ivi Kesküla and Urmas Reinola |
| Secretary | Elina Huobolainen |
| Contested court ruling | Ruling of Harju County Court of August 25, 2007, to impose a preventive custody of Olga Kotova who has been declared fugitive |
| The complainant and the type of complaint | Appeal against court ruling filed by the sworn advocate Janek Valdma acting as a defense counsel for the suspect Olga Kotova (ID code 47711285211) |
| Persons present at the court session | district prosecutor Andrei Voronin, defence counsel Janek Valdma |

RESOLUTION

1.      To leave the ruling of Harju County Court on August 25, 2007, unchanged

2.      To dismiss the appeal against the court ruling.

Appeal procedure

An appeal against this ruling may be submitted to the Supreme Court through a lawyer within ten (10) days from the day following the day of notification of the ruling.

FACTS AND PROCEEDINGS

The arrest warrant

This document has been translated by Unicom Translation Agency (Unicom Tõlkebüroo OÜ) and corresponds to the original text in Estonian.

EXT-ROTKO-000189

1.      District Attorney General of the Northern District Prosecutor Maria Sutt-Tehver submitted an application to Harju County Court on August 24, 2007, to arrest Olga Kotova. The prosecutor noted that Olga Kotova was declared a fugitive by the ruling of North Police Prefecture on February 20, 2007, and justified the need for arrest by the fact that Kotova absconds the criminal proceedings and conceals her whereabouts.

According to the request, O.Kotova is suspected according to § 203 of the Penal Code of the fact that her, being a member of the management board of OÜ Agrin Partion, AS Verest, AS BPV and a member of the supervisory board of Ela Tolli AS, jointly and in concert with Aleksandr Rotko, who is the member of the management board of OÜ Agrin Partion, AS Verest and AS BPV and the member of the supervisory board of Ela Tolli AS, during the period from 07.06.2006 to 01.08.2006, intentionally damaged and destroyed the buildings and facilities in the ownership of the Republic of Estonia located at Küti 17 and Küti 17a Tallinn, by which they caused material damage to the Republic of Estonia.

Namely, on the order of  Aleksandr Rotko and Olga Kotova, the following essential parts of the wharf were removed from the wharf located in Tallinn, at Küti 17 and 17a, without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia:    pavement plates in the size 0.14x2.00x6.00 total 460 pcs, cover plates in the size 0.13x1.23x1.6 total 164 pcs and cover plates in the size 0.13x1.23x0,94 in total 35 pcs; By this, they caused damage to the Republic of Estonia in the total amount of 1,755,096.60 kroons;

Namely, on the order of Aleksandr Rotko and in the knowledge of Olga Kotova, gates of the territory of the registered immovable were removed from the registered immovable and destroyed without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia. By this, damage was caused to the Republic of Estonia in the total amount of 33 040 kroons;

According to § 201 (2) 4) of the Penal Code, O. Kotova is also suspected of the fact that  she, being a member of the management board of OÜ Agrin Partion, AS Verest, AS BPV and a member of the supervisory board of Ela Tolli AS, jointly and in concert with Aleksandr Rotko, who is the member of the management board of OÜ Agrin Partion, AS Verest and AS BPV and the member of the supervisory board of Ela Tolli AS:

-       from 2000 until 1 August 2006, carried out unlawful possession on the territory at Küti 17 and 17a, Tallinn, belonging to the Republic of Estonia. During the period from 07.06.2006 to 01.08.2006, on the order of Aleksandr Rotko and in the knowledge of Olga Kotova, illegally without the permission of the the Ministry of Justice, the representative of the owner, the Republic of Estonia, 66.6 tons of railway  tracks belonging to the Republic of Estonia were removed in the territory located at in Küti 17 and 17a in Tallinn. On 26.07.2006, Olga Kotova and Alexander Rotko sold the illegally removed railway  tracks on behalf of AS BPV to AS Kuusakosk for the amount of 204 328.80 kroons. In this, they converted a foreign movable property illegally in their possession, thus the railway tracks belonging to the Republic of Estonia illegally to the benefit of a third party, AS BPV earned 204,328.80 kroons in sales of railway tracks;

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

-       organized between July 7, 2006 and August 1, 2006 unlawfully, ie without the permission of the Ministry of Justice, the representative of the owner, the Republic of Estonia from the territory located in Küti 17 and 17a in Tallinn, over which they excercised illegal possession from 2000 until 1 August 2006, a removal of a boiler from the boilder house  (weighing up to 6, 4 tons and costing at least 13,120 kroons), and took possession of it by transferring it from the territory and out of the owner's use and disposal area.

2.       On August 25, 2007, the Harju County Court ruled that Olga Kotova who was declared fugitive be arrested.

In the opinion of the court, enough factual material has been gathered in the criminal matter on the basis of which there are grounds for considering the suspicion of O. Kotova to be well-founded.

The court found that, according to the materials of the criminal matter, O. Kotova is aware of the criminal proceedings, but nevertheless, she has realized her property in Estonia and apparently left the Republic of Estonia. O. Kotova has not responded to the summons and has repeatedly failed to appear before the prosecutor. The aforementioned facts gave the court a reason to believe that the suspect may continue to abscond from criminal proceedings. Therefore, the court found that there is an adequate ground for arresting the Suspect O.Kotova who has been declared fugitive.

3.       On 29 August 2007, District Prosecutor of the Northern District Prosecutor's Office Maria Sutt-Tehver issued a European arrest warrant for taking O.Kotova into custody and to surrender to the Republic of Estonia for conducting a criminal proceeding or to execute a custodial sentence or detention order.

4.       Kotova was detained as a suspect on 23.09.2016 at 15.30 pm and was delivered the next day for questioning to the preliminary investigating judge at the Harju County Court.

In the County Court, O. Kotova's defense counsel argued that the suspect was not aware of the criminal proceedings initiated against her.

5.       Harju County Court, having heard O. Kotova and her defense counsel left the arrest warrant unchanged.

The court held that in case of O.Kotova there is still the risk of absconding from criminal proceedings as a basis for an arrest warrant. The court referred to the fact that the permanent place of residence of the suspect is the United States of America. The court found that the regulation of the County Court of 25.08.2007 had thoroughly analyzed the fact that O.Kotova had previously absconded from criminal proceedings. As a result, the court considered the arrest to be lawful.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

6.     An appeal was brought against the ruling of Harju County Court on 25.08.2007 by O.Kotova's counsel Janek Valdma, who asks for the ruling of the county court to be annulled and to subject the suspect to the prohibition on leaving the place of residence.

6.1     The defender notes in the appeal that O.Kotova was arrested on the grounds that she would abscond from criminal proceedings and hide her location. This assumption was based on the following data: Kotova's place of residence was unknown in spring 2007; O. Kotova was sent a registered letter dated December 19, 2006, with an order to appear on 28.12.2006 at the investigators office; the invitation was returned on January 22, 2007, with the indication "not located at this address"; a verification visit was carried out at the last known residence of Aleksander Rotko and O. Kotova at Kungla 4-44, Rakvere, from which a reply was received that they do not live there. It has also been pointed out in the arrest warrant that O.Kotova's relatives were asked to tell her to contact the police.

The defender explains that O Kotova left for a place of residence abroad in December 2006, that is before she learned that the police were looking for her. Nor are there any indications that O.Kotova would have been aware of the criminal proceedings initiated against her. To support the appeal, the defense counsel has filed documents confirming that O. Kotova was engaged in studying abroad when she was declared as a fugitive and when the decsion of taking her into custody was made. Based on the foregoing, the County Court, in the view of the defense counsel, erroneously found that O. Kotova deliberately absconded from criminal proceedings.

6.2     The defense counsel notes that close relatives of the suspect, Iryna Talakh and Rauno Kreemann, have submitted a letter of confirmation in which they undertake to guarantee for O. The defense counsel asks to include a number of documents to the matter to prove that O. Kotova a permanent residence and, if necessary, livelihood during the whole period of the criminal proceedings.

Based on the foregoing, the defense counsel considers, that for the time of preliminary investigation it is possible to subject O. Kotova to a lighter type of preventive measure - a prohibition on leaving the place of residence.


THE POSITION OF THE CIRCUIT COURT

7.     The Circuit Court, having reviewed the materials of the criminal matter and the submitted the appeal against court ruling and heard the parties to the proceedings, finds that the arguments of the appeal do not give rise to the annulment of the ruling of the County Court.


8.     The appeal against court ruling is based on the allegation that O.Kotova was not aware of the criminal proceedings against her. The Circuit Court finds that the evidence in the file rejects this claim.

There is no dispute that it the attempt to serv O. Kotova with a summons to the investigator failed. The materials of the criminal case show that the investigator has tried to contact O. Kotova through different channels.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

It is evident from the note of April 19, 2007 (vol. I, file 190) that the investigator repeatedly called to O. Kotov's telephone number 56492932 from January 15, 2007 but received no response.

On February 12, 2007, an unknown Russian-speaking man answered the phone, who, hearing that the call was made from the police who wanted to talk to O. Kotova, cut off the call and later did not answer the phone.

Police were also trying to contact O. Kotova through her relatives According to the note referred to, on 18.01.2007, the constable of Rakvere city talked to O.Kotova's mother, Nadezhda Kreemann. The latter confirmed that neither O. Kotova nor A. Rotko longer live at Kungla 4-44 in Rakvere and both are outside Estonia. On February 01, 2007, the investigator talked to N. Kreemann's son Rauno Kreemann, who claimed that O.Kotova was staying in Russia.

It is evident from the note of July 12, 2007 (vol. I, file 247) that on May 23, 2007, the investigator called O.Kotova's brother Aleksandr Kotov on the telephone number 5187112. The latter promised to contact O.Kotova and ask her sister to contact the police. To this end, the investigator forwarded A. Kotov his contact details (telephone number and e-mail address). A. Kotov said that he was working in Finland, but he would try to find a way for conveying the information to the sister. According to the same note, on May 28, 2007, the investigator called N. Kreemann's telephone number 56495403. The latter argued that O.Kotova sent her a card for Mother's Day, but the address of the sender was not indicated on it. N. Kreemann knew only that O. Kotova wanted to go to Russia to study design, but she did not have the exact address of her daughter.

As one can see, O. Kotova's relatives have argued that they do not have a substantive contact with O. Kotova and they do not know where O. Kotova is staying. The surveillance record of 12.07.2007 (vol I, file pp. 249) reveals that the subs Kotova) has contacted subscribers 56495403 (N. Kreemann), 56495503 (R. Kreemann) and 5187112 (A. Kotov). on a daily basis in the period from 25.12.2007 to 30.12.2007.criber 56492932 (the owner and user O. That means, the same subscriber number, on which the investigator tried unsuccessfully contact O. Kotova, was later actively used for communication with O. Kotova's relatives

Thus, according to the surveillance file, O. Kotova actively interacted with her relatives who had been asked to give her information that O. Kotova was subjected to criminal proceedings. So there is a reason to believe that this information was known to O. Kotova. However, the behavior of Kotov's relatives shows that O. Kotova absconded from criminal proceedings. Although they interacted with O.Kotova, they toldd the police that they did not know the exact location of the suspect. According to the court, the abovementioned  suggests two alternative possibilities:  whether O.Kotova lied to her relatives about her whereabouts (for example, claiming to be staying in Russia) or her relatives knew her whereabouts, but, in agreement with O. Kotova, provided false information to the police about her location.

All of the aforementioned circumstances indicate that O.Kotova was aware of the criminal proceedings against her, but did not want the police to learn about her location.

It should also be noted that, according to the materials of the matter, Olga Novoseltseva has given testimony as a witness during the hearing of 06.11.2012 (vol. I file pp. 299-302), which shows that O. Novoseltseva communicated with A. Rotko on the telephone and told the latter that she had testified

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

to the police in connection with the investigation that had been started and that the police would like to speak, among other things, with A. Rotko. To this, A. Rotko replied that O. Novoseltseva did not have to worry.

Thus, A. Rotko was aware of the criminal proceedings. Since A. Rotko was the spouse of O.Kotova during the aforementioned period, the District Court does not consider it credible that O. Kotova was not aware of her being declared fugitive. It is also worth noting that A. Rotko's behavior pattern was similar to that of O. Kotova:      although he interacted with the people in Estonia but did so without that, they had no information on how to contact A. Rotko (witness O. Novoselskaja claimed that A. Rotko always contacted her by calling the landline phone. O. Novoselskaja said that she did not know where A. Rotko was staying and how to contact him).


In addition, the Circuit Court attaches great importance to a copy of the additional request submitted by Verest AS, Agrin Partion OÜ and BPV AS (Defendants I, II and III) to the Harju County Court on December 1, 2007, signed by O. Kotova on 2 December 2007 digitally presented to the court by the prosecutor.

Point II (requests) of that document states the following:      "The Republic of Estonia is currently using all the coercive measures to eliminate defendants and avoid trial at the European Court of Human Rights. Namely, the Criminal Police threatens the defendants' former employees and relatives, performs infinite hearings, the accountant's car and defendants' accounts and property have been arrested, an artificial claim has been submitted for reclaiming the advantages of use." Thus, O.Kotova has explicitly stated that she is aware of the ongoing criminal proceedings and the fact that the investigator has tried to contact her through relatives.

9.      In view of the above circumstances, the Circuit Court agrees with the County Court that O. Kotova was aware of the criminal proceeding but deliberately absconded from it.

According to the circuit court, the probability of absconding from criminal proceedings is increased by the fact that O.Kotova is a United States citizen domiciled in the United States under the suspect interrogation protocol (vol II; file pp 66-71), i.e., the suspect does not have a permanent residence in the Republic of Estonia. Evidence attached to the appeal against the ruling shows that O. Kotova has not been involved with Estonia for many years - her relatives live here, but she studied and worked abroad and currently has her permanent residence in the United States. Thus, the data collected in the criminal matter indicate that O.Kotova has ties and the possibility to leave the Republic of Estonia again in order to avoid justice.

The fact that O. Kotova was offered temporary residence in Estonia during the preliminary investigation does not exclude her leaving Estonia. Also, the risk of absconding from criminal proceedings is not excluded by O. Kotova's good academic results and the positive characteristics regarding her.


Considering the fact that O.Kotova absconded from criminal proceedings for years and has ties and the possibility to leave the Republic of Estonia, according to the judicial panel, there is a reasonable suspicion that O. Kotova may again abscond from criminal proceedings and start hiding in a foreign country.

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

Based on the foregoing, the Circuit Court finds that other means of ensuring the proceedings, other than O.Kotova's arrest, are not sufficient to ensure the effective conduct of criminal proceedings, which is why her arrest is indispensable.

10.    Based on the foregoing and in accordance with § 337 (1) 1) and 390 (3) of the Code of Criminal Procedure, the Circuit Court shall leave the appealed ruling unchanged and dismisses the appeal against the court ruling.

(signed digitally)

Sten Lind        Ivi Kesküla        Urmas Reinola

DIGITAL SIGNATURE CONFIRMATION SHEET

E-SIGNED FILES

FILE NAME        FILE SIZE

11-07-10649 Olga Kotova v.doc 191 K8

SIGNATORIES

no.    NAME

ID-CODE

TIME

1        Sten Lind

137907230220

10.10.201613:21:26 +03:00

VALIDITY OF SIGNATURE

SIGNATURE IS VALID

ROLE/RESOLUTION

LOCATION OF THE SIGNATORY (CITY, COUNTY,  INDEX, COUNTRY)



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

SERIAL NUMBER OF THE CERTIFICATE OF THE SIGNATORY

48647222336681628359632123788014266584


NAME OF THE ISSUER OF THE CERTIFICATE        ISSUER'S KEY IDENTIFICATION

ESTEID-SK 2011 178 6AF2 55 50 5C 88 D9 7A08 87 41 AE FAA2 28 3D 58 57 76


ABBREVIATION OF SIGNATURE MESSAGE

30 31 30 OD 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 60 79AE 24 63 09 83 4F 40 35 2F F8 EO E5 D4 91 6A2F 61 6E CA

36F08A481351C3E28E44E7


| no. | NAME ID-CODE | TIME |
|---|---|---|
| 2. | Urmas Reinola  135709066015 | 10.10.201613:11:34 PM +03:00 |


VALIDITY OF SIGNATURE

SIGNATURE IS VALID

ROLE/RESOLUTION

LOCATION OF THE SIGNATORY (CITY, COUNTY, INDEX, COUNTRY)

SERIAL NUMBER OF THE CERTIFICATE OF THE SIGNATORY


131894266621464344753344150447897505243


NAME OF THE ISSUER OF THE CERTIFICATE      ISSUER'S KEY IDENTIFICATION

ESTEID-SK 2011 178 6AF2 55 50 5C 88 D9 7A08 87 41 AE FAA2 28 3D 58 57 76


ABBREVIATION OF SIGNATURE MESSAGE

30 31 30 OD 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 24 38 D3 EF F8 43 F4 2E 88 83 AF 28 4C 25 E8 DE 99 6E 6D E

1 EA04 E1 DC 78 D8471F93 C5 D6

This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

| no. | NAME | ID-CODE | TIME |
|-----|------|---------|------|
| 3 | Ivi Kesküla | 146304280287 | 10.10.2016 13:25:52 +03:00 |

VALIDITY OF SIGNATURE

SIGNATURE IS VALID

ROLE/RESOLUTION

LOCATION OF THE SIGNATORY (CITY, COUNTY, INDEX, COUNTRY)

SERIAL NUMBER OF THE CERTIFICATE OF THE SIGNATORY

133405536176615985778797852111254464688

NAME OF THE ISSUER OF THE CERTIFICATE        ISSUER'S KEY IDENTIFICATION

ESTEID-SK 2011 178 6AF2 55 50 5C 88 09 7A08 87 41 AE FAA2 28 30 58 57 76

ABBREVIATION OF SIGNATURE MESSAGE

30 31 30 OD 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 80 OF 1AB0 68 BB A2 77 CE 02 DB 2E 73 7AE3 BC 01 77 AD AO 57

28 C3 BC 88 03 F6 5F 73 FC 89 68

An integral part of this confirmation sheet is the presentation of the files listed in the section "Signed Files" on paper.

NOTES



This document has been translated by Unicom Translation Agency (Unicom Tõlkeabüroo OÜ) and corresponds to the original text in Estonian.

 **PROKURATUUR**

Ameerika Ühendriikide pädev õigusasutus          Teie:

                                                  Meie: 23.10.2019 nr PRP-6/19/6783

**Vastus**
**seoses Eesti Vabariigi Prokuratuurile**
**esitatud järelepärimisega**

## I.     Asjaolud ja menetluse käik

12.11.2012.a esitas Põhja Ringkonnaprokuratuuri vanemprokurör Maria Entsik kriminaalasja nr 06730000427 raames Ameerika Ühendriikide pädevale õigusasutusele väljaandmistaotluse Aleksandr Rotko suhtes. Taotlus esitati tuginedes 08.02.2006.a allkirjastatud Eesti Vabariigi valitsuse ja Ameerika Ühendriikide valitsuse vahel väljaandmislepingule.

Taotluse kohaselt paluti Ameerika Ühendriikidel anda Eesti Vabariigile välja Aleksandr Rotko (isikukood 34902270228, sündinud 27.02.1949.a Ukrainas).

18.10.2019.a. esitati Ameerika Ühendriigi pädeva õigusasutuse poolt seoses Aleksandr Rotko väljaandmismenetlusega arupärimine, mille sisu on kokkuvõtvalt järgmine:

- palutakse selgitada, kas Aleksandr Rotko süüdistus on veel aktuaalne ning kas Eesti Vabariik on loobunud tema vastu esitatud kriminaalsüüdistusest 2016. aastal;
- palutakse esitada asjakohaste karistusõiguslike normide tõlked (Karistusseadustiku §-d 201 ja 203);
- palutakse selgitusi selle kohta, et kuna Aleksandr Rotko väitel on kriminaalmenetlus Olga Kotova suhtes lõpetatud, siis kas ja kuidas mõjutab see Aleksandr Rotko süüdistusasja.

## II     Prokuröri selgitused

Mina, Andrei Voronin, olen Eesti Vabariigi kodanik ja olen alates 20.08.1990.a olnud prokurör Eesti Vabariigis. Minu ametiülesanneteks on juhtida kohtueelset kriminaalmenetlust, tagades selle seaduslikkuse ja tulemuslikkuse, ning esindada kohtus riiklikku süüdistust isikute vastu, kes on toime pannud kuriteo Eesti Vabariigi seaduste kohaselt. Vanemprokurör Maria Entsik'u ametisuhe on peatatud ajutiselt seoses lapsehoolduspuhkusega, kuid kõiki kriminaalmenetluse ülesandeid teostavad kuni juhtumi lahendamiseni Põhja Ringkonnaprokuratuuri prokurörid, käesoleval momendil – mina, Andrei Voronin.

Ringkonnaprokurörina olen mina oma tööülesannetega seoses tutvunud kriminaalasja nr 06730000427 materjalidega, mille raames on kogutud tõendid ja milles kahtlustatakse Aleksandr Rotko'd (isikukood 34902270228) selles, et tema koos Olga Kotova'ga (isikukood 47711285211) rikkusid ja hävitasid tahtlikult Eesti Vabariigi omandis olevaid ehitisi ja rajatisi Tallinnas Küti 17 ja 17a territooriumil, millega tekitasid Eesti Vabariigile olulist varalist kahju summas 1 988 260 Eesti krooni. Kriminaalasi on kohtueelse menetluse

**PÕHJA RINGKONNAPROKURATUUR**
Lubja 4 / 10115  TALLINN / 694 4200 / info.pohja@prokuratuur.ee / www.prokuratuur.ee
Registrikood 70000906

staadiumis. Aleksandr Rotko on asunud kriminaalmenetlusest kõrvale hoiduma ning lahkus Eesti Vabariigist.

Vastavalt KrMS § 457 lg 3 koostab välisriigile esitatava taotluse isiku väljaandmiseks kohtueelses menetluses prokuratuur.

Käsitletav väljaandmistaotlus on esitatud Ameerika Ühendriikidele palvega anda välja Eesti Vabariigile kahtlustatav Aleksandr Rotko eesmärgiga esitada talle süüdistus Eesti Vabariigi karistusseadustiku § 201 lg 2 p 4 ja § 203 järgi ning saata Aleksandr Rotko kohtu alla vastutust kandma tema poolt toime pandud kuritegude eest.

<u>Kriminaalmenetluse lõpetamine Olga Kotova suhtes</u>

08.08.2016.a peeti rahvusvaheliselt tagaotsitavana kinni Olga Kotova.

06.10.2016.a kahtlustatavana ülekuulamisel andis Olga Kotova ütlusi, millest tulenevalt oli tema äriühingutes OÜ Agrin Partion (äriregistri kood 10259785, registrist kustutatud 31.07.2013), AS Verest (äriregistri kood 10381687, registrist kustutatud 13.09.2010) ja AS BPV (äriregistri kood 10379236, registrist kustutatud 01.07.2011), juhatuse liige ning Ela Tolli AS-s (äriregistri kood 10712954, registrist kustutatud 21.03.2016) nõukogu liige. Aleksandr Rotko oli AS Verest (kustutatud) ja AS BPV (kustutatud) nõukogu liige ning Ela Tolli AS (kustutatud) juhatuse liige. Lisaks oli Aleksandr Rotko OÜ Ella Kaubanduse (äriregistri kood 10448316, registrist kustutatud 14.08.2012) juhatuse ainuliige ja ainuosanik, milline ettevõte oli omakorda Olga Kotova juhitud OÜ Agrin Partion (kustutatud) ainuosanik. Tema faktilised ülesanded oli sekretäri töö. Äriühingute juhtimist ja praktilise tegevuse suunamist teostas Aleksandr Rotko, kelle palvel kirjutas Olga Kotova alla dokumentidele ning arvetele. Nimetatud asjaolude suhtes on tõendid Ameerika Ühendriikide pädevale õigusasutusele Eesti prokuratuuri poolt esitatud 12.12.2017.a vastusega nr 10/17/7303.

Kriminaalmenetluse seadustiku § 202 lg 1 alusel võib prokuratuur taotleda kohtult kriminaalmenetluse lõpetamist konkreetse isiku suhtes juhul, kui tema personaalne süü ei ole suur ja tema on asunud heastama kuriteoga tekitatud kahju. Juhul kui tegemist on teise astme kuriteoga Karistusseadustiku § 4 lg 3 tähenduses, võib menetluse lõpetada oma määrusega prokuratuur.

Kriminaalasjas kogutud tõendite pinnalt oli Olga Kotova mitmete äriühingute nominaalne juht. Sisulisi otsuseid võttis vastu Aleksandr Rotko, kes oli samuti AS Verest (kustutatud) ja AS BPV (kustutatud) nõukogu liige ning Ela Tolli AS (kustutatud) juhatuse liige. Lisaks oli Aleksandr Rotko OÜ Ella Kaubanduse (kustutatud) juhatuse ainuliige ja ainuosanik, milline ettevõte oli omakorda Olga Kotova juhitud OÜ Agrin Partion (kustutatud) ainuosanik. Teisisõnu, Aleksandr Rotko oli ametiisik, kes kannab vastutust äriühingute tegevuse eest. Faktiliselt oli Olga Kotova Aleksandr Rotko sekretär ning temaga lähedases suhtes olev isik.

Võttes arvesse Olga Kotova reaalset positsiooni ja teisi kriminaalasja asjaolusid, eeskätt tema üksikasjalikke ütlusi Aleksandr Rotko poolt toimepandud kuritegude kohta, otsustasin sõlmida Olga Kotova ja tema kaitsjaga kokkuleppe kriminaalmenetluse lõpetamiseks Kriminaalmenetluse seadustiku § 202 alusel. Kokkuleppe esemeks on prokuratuuri poolt Olga Kotova suhtes kriminaalmenetluse lõpetamine mitterehabiliteeritavatel alustel ning Olga Kotova poolt riigi tuludesse kindla summa 32 000 eurot tasumine. Vastavalt saavutatud kokkuleppele eraldas prokuratuur oma määrusega Olga Kotova süüdistusasja eraldi menetluse (uude toimikusse), mille number on 16230104830, ning lõpetas 08.12.2016.a määrusega kriminaalmenetluse **üksnes Olga Kotova suhtes.**

**Kriminaalmenetlust asjas nr 06730000427 Aleksandr Rotko suhtes jätkati üldistel alustel. Vastavalt Karistusseadustiku §-le 81 juhul, kui kahtlustatav või süüdistatav hoidub kriminaalmenetlusest kõrvale, saabub teise astme kuriteo toimepanemise puhul kriminaalvastutusele võtmise tähtaeg siis, kui kuriteo toimepanemisest on möödunud viisteist aastat. Lähtudes viimase kuriteoepisoodi toimepanemise ajast, saabub Aleksandr Rotko puhul see tähtpäev 06.09.2021. aastal. Selle ajani on võimalik Aleksandr Rotko**

süüdistamine ja kohtu poolt karistamine.


Karistusseadustiku § 201 ja 203 ametlikud tõlked

§ 201. Omastamine

(1) Valduses oleva võõra vallasasja või isikule usaldatud muu võõra vara ebaseaduslikult enda või kolmanda isiku kasuks pööramise eest –
karistatakse rahalise karistuse või kuni üheaastase vangistusega.

(2) Sama teo eest, kui see on toime pandud:
1) isiku poolt, kes on varem toime pannud varguse, röövimise, omastamise, süüteo toimepanemise tulemusena saadud vara omandamise, hoidmise või turustamise, asja tahtliku rikkumise või hävitamise, kelmuse või väljapressimise;
2) suures ulatuses;
3) ametiisiku poolt või
4) grupi poolt, –
karistatakse rahalise karistuse või kuni viieaastase vangistusega.
[RT I, 12.07.2014, 1 - jõust. 01.01.2015]

(3) Käesoleva paragrahvi lõikes 1 või 2 sätestatud teo eest, kui selle on toime pannud juriidiline isik, –
karistatakse rahalise karistusega.
[RT I, 12.07.2014, 1 - jõust. 01.01.2015]

(4) Kohus võib kohaldada käesoleva paragrahvi lõike 2 punktides 2 ja 3 sätestatud kuriteo eest kuriteoga saadud vara laiendatud konfiskeerimist vastavalt käesoleva seadustiku §-s $83^2$ sätestatule.
[RT I, 12.07.2014, 1 - jõust. 01.01.2015]

§ 203. Asja rikkumine ja hävitamine

(1) Võõra asja rikkumise või hävitamise eest, kui sellega on tekitatud oluline kahju, –
karistatakse rahalise karistuse või kuni viieaastase vangistusega.

(2) Sama teo eest, kui selle on toime pannud juriidiline isik, –
karistatakse rahalise karistusega.
[RT I, 23.12.2014, 14 - jõust. 01.01.2015]



### III   Kokkuvõte

Kinnitan, et KarS § 201 ja KarS § 203 (koos kõikide hilisemate redaktsioonidega) alusel on Aleksandr Rotko kriminaalvastutusele võtmine võimalik.

Kinnitan, et minu parima teadmise kohaselt vastab kõik eeltoodu tõele. Aleksandr Rotko süüdistusasi on seni aktuaalne ja prokuratuuri menetluses. Eelkirjeldatut silmas pidades, palun Eesti Vabariigi nimel välja anda Aleksandr Rotko Eesti Vabariigile tema suhtes kriminaalmenetluse läbiviimiseks, süüdistuse esitamiseks ja tema kohtu alla andmiseks.

Olen teinud on parima, et esitada tõendeid ja selgitusi väljaandmistaotluse rahuldamiseks. Juhul, kui USA pädevad ametiasutused vajavad täiendavat inforatsiooni taotluse lahendamiseks, kinnitan kogu lugupidamisega, et olen valmis esitama vajalikku lisainformatsiooni enne otsuse langetamist.

Andrei Voronin
Ringkonnaprokurör

Translation from Estonian



**PROKURATUUR**

Competent judicial authority
of the United States of America

Yours:

Ours: 23 October 2019 No. PRP-6/19/6783

**Response
regarding the inquiry submitted
to the Prosecutor's Office of the Republic of Estonia**

## I.   Facts and proceedings

On 12 November 2012, Senior Prosecutor Maria Entsik of the Northern District Prosecutor's Office filed a request for the extradition of Aleksandr Rotko in the criminal matter No. 06730000427 to the competent judicial authority of the United States of America. The request was made based on the Extradition Treaty between the Government of the Republic of Estonia and the Government of the United States of America signed on 8 February 2006.

According to the request, the United States of America was asked to extradite Aleksandr Rotko (personal identification code 34902270228, born on 27 February 1949 in Ukraine) to the Republic of Estonia.

On 18 October 2019, an inquiry was made by the competent judicial authority of the United States of America regarding the extradition proceedings against Aleksandr Rotko. In summary, the inquiry contained the following:

- a request to provide clarifications as to whether the charges brought against Aleksandr Rotko are still relevant and whether the Republic of Estonia has dropped the criminal charges against him in 2016;
- a request to provide translations of the relevant criminal statutes (sections 201 and 203 of the Penal Code);
- a request to provide clarifications regarding Aleksandr Rotko's claims that the criminal proceedings against Olga Kotova have been terminated, and as to whether and how would this affect Aleksandr Rotko's prosecution.

## II   Explanations of the Prosecutor

I, Andrei Voronin, am a citizen of the Republic of Estonia and a Prosecutor of the Republic of Estonia since 20 August 1990. My function is to direct pre-trial criminal procedure, ensuring the legality and efficiency thereof, and to represent public prosecution in court against persons who have committed a criminal offence under the laws of the Republic of Estonia. The services of Senior Prosecutor Maria Entsik have been temporarily suspended due to maternity leave, but until the final resolution of the case, all duties relating to the criminal proceedings are being performed by the Prosecutors of the Northern District Prosecutor's Office; at the moment, that is I, Andrei Voronin.

**NORTHERN DISTRICT PROSECUTOR'S OFFICE**
Lubja 4/ 10115  TALLINN / +372 694 4200 / info.pohja@prokuratuur.ee / www.prokuratuur.ee
Registry code 70000906

Translation from Estonian

In my duties as a District Prosecutor, I have examined the materials of the criminal matter No. 06730000427, in which evidence has been gathered in and in which Aleksandr Rotko (personal identification code 34902270228) is suspected of the fact that he, together with Olga Kotova (personal identification code 47711285211), intentionally injured and destroyed buildings and constructions belonging to the Republic of Estonia, located on the territory of Küti 17 and 17a, Tallinn, causing significant proprietary damage to the Republic of Estonia in the amount of 1,988,260 Estonian kroons. The criminal matter is currently in the pre-trial phase. Aleksandr Rotko has begun absconding from criminal proceedings and has left the Republic of Estonia.

Pursuant to subsection 457 (3) of the Code of Criminal Procedure, a request for the extradition of a person to be submitted to a foreign state shall be prepared by the prosecutor's office in a pre-trial proceeding.

The extradition request in question has been submitted to the United States of America to extradite the suspect Aleksandr Rotko to the Republic of Estonia for the purpose of charging him under clause 201 (2) 4) and section 203 of the Penal Code of the Republic of Estonia and bringing Aleksandr Rotko before a court to be held liable for the criminal offences committed by him.

Termination of criminal proceedings against Olga Kotova

On 8 August 2016, Olga Kotova was detained as an international fugitive.

During her interrogation as a suspect on 6 October 2016, Olga Kotova gave testimony according to which she was a member of the management board of the companies OÜ Agrin Partion (commercial registry code 10259785, deleted from the register on 31 July 2013), AS Verest (commercial registry code 10381687, deleted from the register on 13 September 2010) and AS BPV (commercial registry code 10379236, deleted from the register on 1 July 2011), as well as a member of the supervisory board of Ela Tolli AS (commercial registry code 10712954, deleted from the register on 21 March 2016). Aleksandr Rotko was a member of the supervisory board of AS Verest (deleted) and AS BPV (deleted) and a member of the management board of Ela Tolli AS (deleted). In addition, Aleksandr Rotko was the sole member of the management board and sole shareholder of the company OÜ Ella Kaubanduse (commercial registry code 10448316, deleted from the register on 14 August 2012) which was in turn the sole shareholder of the company OÜ Agrin Partion (deleted) managed by Olga Kotova. Her factual duties were that of a secretary. The management and directing of the practical operations of the companies was carried out by Aleksandr Rotko, at whose request Olga Kotova signed documents and invoices. Evidence regarding the said facts has been provided to the competent judicial authority of the United States of America by the Prosecutor's Office of the Republic of Estonia in the response No. 10/17/7303 of 12 December 2017.

Pursuant to subsection 202 (1) of the Code of Criminal Procedure, the Prosecutor's Office may request the court to terminate criminal proceedings against a particular person if the guilt of the person is negligible and if he or she has commenced to remedy the damage caused by the criminal offence. In the case of a criminal offence in the second degree within the meaning of subsection 4 (3) of the Penal Code, the proceedings may be terminated by an order of the Prosecutor's Office.

Based on the evidence gathered in the criminal matter, Olga Kotova was the nominal manager of a number of companies. The substantive decisions were made by Aleksandr Rotko, who was also a member of the supervisory board of AS Verest (deleted) and AS BPV (deleted) and a member of the management board of Ela Tolli AS (deleted). In addition, Aleksandr Rotko was the sole member of the management board and sole shareholder of the company OÜ Ella Kaubanduse (deleted) which was in turn the sole shareholder of the company OÜ Agrin Partion (deleted) managed by Olga Kotova. In other words, Aleksandr Rotko was the office-holder responsible for the operations of the companies. Factually, Olga Kotova served as Aleksandr Rotko's secretary and was a person with whom he was in a close relationship.

Translation from Estonia

Taking into account the actual position of Olga Kotova and other circumstances of the case, in particular her detailed statements regarding the criminal offences committed by Aleksandr Rotko, I decided to conclude an agreement with Olga Kotova and her defence counsel to terminate the criminal proceedings under section 202 of the Code of Criminal Procedure. The subject of the agreement was the termination of criminal proceedings against Olga Kotova by the Prosecutor's Office on non-rehabitable grounds and the payment of a fixed sum of 32,000 euros by Olga Kotova to the state revenues. In accordance with the agreement, the Prosecutor's Office, by its order, separated the case against Olga Kotova into a separate proceeding (new criminal file), file No. 16230104830, and terminated the criminal proceedings by an order of 08 December 2016 **solely with regard to Olga Kotova**.

**Criminal proceedings against Aleksandr Rotko in the criminal matter No. 06730000427 were continued on a general basis. Pursuant to section 81 of the Penal Code, if the suspect or accused person absconds from criminal proceedings, the time limit for prosecuting this person for the commission of a criminal offence in the second degree expires in fifteen years after the commission of the said offence. Based on the time of the commission of the last episode of crime, the said time limit in Aleksandr Rotko's case would expire on 6 September 2021. Until then, Aleksandr Rotko can be prosecuted and tried by a court.**

Official translations of sections 201 and 203 of the Penal Code

**§ 201.** Embezzlement

 (1) Illegal converting into his or her use or the use of a third person of movable property which is in the possession of another person or other assets belonging to another person which have been entrusted to the person
is punishable by a pecuniary punishment or up to one year's imprisonment.

 (2) The same act, if committed:
 1) by a person who has previously committed theft, robbery, embezzlement, acquisition, storage or marketing of property received through commission of an offence, intentional damaging or destruction of a thing, fraud or extortion;
 2) on a large-scale basis;
 3) by an official; or
 4) by a group;
is punishable by a pecuniary punishment or up to five years' imprisonment.
[RT I, 12.07.2014, 1 - entry into force 01.01.2015]

 (3) An act provided for in subsection (1) or (2) of this section, if committed by a legal person, is punishable by a pecuniary punishment.
[RT I, 12.07.2014, 1 - entry into force 01.01.2015]

 (4) For criminal offence provided for in clauses (2) 2) and 3) of this section, the court may impose extended confiscation of assets or property acquired by the criminal offence pursuant to the provisions of § 83² of this Code.
[RT I, 12.07.2014, 1 - entry into force 01.01.2015]

**§ 203.** Injuring or destruction of thing

 (1) Injuring or destroying a thing of another, if significant damage is thereby caused, is punishable by a pecuniary punishment or up to five years' imprisonment

EXT-ROTKO-000204

Translation from Estonian

(2) The same act, if committed by a legal person,
is punishable by a pecuniary punishment.
[RT I, 23.12.2014, 14 - entry into force 01.01.2015]

### III    Summary

I confirm that under sections 201 and 203 of the Penal Code (together with all the later wordings thereof) it is possible to bring criminal charges against Aleksandr Rotko.

I confirm that, to the best of my knowledge, all of the information stated above is correct. The case against Aleksandr Rotko is still relevant and under investigation by the Prosecutor's Office. In view of the above, I request on behalf of the Republic of Estonia to extradite Aleksandr Rotko to the Republic of Estonia in order to continue with the criminal proceedings, bring charges against him, and prosecute him in court.

I have done my best to provide evidence and clarifications to ensure that the request for extradition is granted. In case the competent authorities of the United States of America require additional information in order to resolve the request, I assure with all due respect that I am prepared to provide any necessary additional information before the making of the decision.

Andrei Voronin
District Prosecutor

MARTIN KALA
Tõlk
Põhja Ringkonnaprokuratuur
Tõlki on hoiatatud vastutusest
KarS § 318 ja § 321 järgi.

The translator Martin Kala is aware of the diligence and confidentiality obligation pursuant to subsection 161 (6) of the Code of Criminal Procedure and the responsibility pursuant to sections 318 and 321 of the Penal Code. Mkala