IN THE MATTER OF THE
EXTRADITION OF                                    **Case No. 3:19-mc-27-J-39JRK**
ALEKSANDR ROTKO

_____

**O R D E R**

**I.   Status**

The Republic of Estonia seeks to extradite Aleksandr Rotko, who has recently

become a U.S. citizen, to face 2006 charges of using the movable property of another, in

violation of Section 201(2)(4) of the Estonian Penal Code; and damage and destruction of

government property, in violation of Section 203 of the same code.   This extradition

matter, brought pursuant to 18 U.S.C. §§ 3181 et seq. and a treaty between Estonia and

the United States, is before the Court on the issue of whether Mr. Rotko should be released

on bond pending the extradition determination.

There are two motions related to the bond issue: the Government's oral motion for

detention (Doc. No. 9), made during Mr. Rotko's initial appearance on December 3, 2019;

and Mr. Rotko's Motion for Release on Bail and Accompanying Memorandum of Law (Doc.

No. 17), filed December 10, 2019. Both the Government and Mr. Rotko have made a

number of other filings, most of which including voluminous exhibits, in support of their

respective motions.   The Government on December 6, 2019 filed a Memorandum of Law

Regarding Detention Pending Extradition Proceedings (Doc. No. 12).   Mr. Rotko on

December 13, 2019 filed a Supplemental Memorandum of Law in Support of his Motion

for Release on Bond (Doc. No. 24).   The Government on December 22, 2019 filed a

Notice of Filing Additional Materials in Support of Extradition Request (Doc. No. 27), to which letters and correspondence from Estonia are attached. On December 23, 2019, the Government filed a response to Mr. Rotko's Motion for Release on Bail (Doc. No. 28). On January 2, 2020, Mr. Rotko filed a Notice of Procedure (Doc. No. 32) in which he outlines the procedure employed by another division in this District for posting real property to secure a bond (a matter about which the undersigned inquired given that it is rare in this division for bonds to be secured with real property). On January 3, 2020, Mr. Rotko filed a Reply Memorandum in Support of His Motion for Release on Bail (Doc. No. 33).

On January 6, 2020, Mr. Rotko filed a Notice of Filing, to which he attached a January 6, 2020 arbitration filing submitted by the Republic of Estonia in an arbitration under the UNCITRAL arbitration rules and concerning an investment treaty between the Republic of Estonia and the U.S. Government. The arbitration—between one of Mr. Rotko's companies and the Republic of Estonia—is related factually to the instant extradition matter because the arbitration concerns a port in Estonia where Mr. Rotko allegedly committed the crimes for which Estonia seeks to extradite him. In the January 6, 2020 arbitration filing, Estonia makes a number of statements regarding the potential for extradition and bail in this matter. On January 9, 2020, Mr. Rotko filed a Notice of Supplemental Authority (Doc. No. 36), to which he attached cases relating to the Court's authority to scrutinize foreign government materials in extradition proceedings. On January 16, 2020, Mr. Rotko filed another Notice of Supplemental Authority (Doc. No. 39), to which he attached a case from Estonia (in both Estonian and English) that addresses one of the ultimate extradition issues.

The undersigned held a lengthy detention hearing on January 7, 2020, during which both parties made various arguments and Mr. Rotko called Paul Keres, an expert in Estonian law, to testify. <u>See</u> Minute Entry (Doc. No. 35). Mr. Keres's testimony has been transcribed and filed. <u>See</u> Transcript of Excerpt of Detention Hearing (Doc. No. 37), filed January 13, 2020. At the end of the hearing, the undersigned took under advisement the detention issue, stating that a written order would follow. This is that Order. Upon review of all relevant filings and consideration of the applicable legal principles, the undersigned finds that Mr. Rotko is due to be released on bond pending the outcome of this extradition proceeding.

## II. Discussion

There is a presumption against bond in extradition proceedings. The Bail Reform Act[1] does not apply; rather, to obtain a bond, a person facing extradition must establish that he is not a danger to the community, he is not a flight risk, <u>and</u> special circumstances warrant his release. <u>See</u> <u>Wright v. Henkel</u>, 190 U.S. 40, 63 (1903); <u>In re Extradition of Ghandtchi</u>, 697 F.2d 1037, 1038 (11th Cir. 1983) (citations omitted); <u>United States v. Nascimento</u>, No. 6:19-mc-48-Orl-78GJK, 2019 WL 5853874, at *1 (M.D. Fla. Nov. 8, 2019) (unpublished) (citations omitted). Courts vary on the standard of persuasion that should be required—preponderance of the evidence or clear and convincing evidence—but the majority approach requires the person to show by clear and convincing evidence that he is not a danger, he is not a flight risk, and there are special circumstances. <u>See</u> <u>Nascimento</u>, 2019 WL 5853874, at *2 (discussing the variance among courts and majority

---

[1] 18 U.S.C. § 3141 <u>et seq.</u>

approach).   Like the Court in <u>Nascimento</u>, the undersigned will follow the majority approach and require clear and convincing evidence.

Upon review of all relevant matters, the undersigned finds Mr. Rotko has carried his burden of proving by clear and convincing evidence that he is not a flight risk, that he is not a danger, and that there are special circumstances that warrant his release on bond pending these extradition proceedings.   These matters are addressed in turn.

## A.   Risk of Flight

Mr. Rotko, a U.S. Citizen since November 2019, left Estonia about one month after the alleged commission of the offenses (in 2006).   He traveled to the United States, where he had been a permanent resident since 1998.   He explains that he did so because, after protracted litigation with Estonia over the ownership of the Port, Estonia claimed ownership and did so without any compensation to his companies.   (The alleged offenses have to do with items he removed from the Port.)   He has been living openly here ever since.   He denies knowledge of any criminal proceeding at the time he traveled here and for years thereafter (until 2016, when his ex-wife was detained in Finland in connection with similar alleged offenses).   He has no criminal record in the United States, and he has never been convicted of a crime in Estonia.   By all accounts, he has been a law-abiding member of U.S. society for thirteen years.

Mr. Rotko does have substantial equity in properties (between his own properties and properties owned singularly or jointly by others who are willing to pledge on his behalf, there is likely about $1.75 million in equity at his disposal).   The Government contends the equity can fund flight.   But, the undersigned is convinced that there are conditions of release that will sufficiently mitigate the risk of that, including the posting of a substantial

monetary bond that will likely have to be funded through the equity in his and other properties.   Mr. Rotko has carried his burden as to flight.

## B.   Danger to Community

The Government contends Mr. Rotko is essentially an economic danger to the community.   This argument is rejected.   The alleged offenses that took place more than thirteen years in Estonia were related to the civil litigation/proceedings over the Port.   All things considered, including the maximum terms of imprisonment of five years for the alleged offenses, even the alleged crimes themselves are not serious enough to make Mr. Rotko an economic danger to the community here and now.   Again, by all accounts, Mr. Rotko has been a law-abiding member of society for years.   Mr. Rotko has carried his burden as to danger.

## C.   Special Circumstances

"Special circumstances are limited to situations in which the justification for release is pressing as well as plain."   United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996) (quotations, citations, and internal alterations omitted).   Whether special circumstances exist is a determination that is left to the sound discretion of the Court.   Nascimento, 2019 WL 5853874, at *1 (citation omitted).   "Put simply, the determination of whether a potential international extraditee has satisfied their burden to warrant bail is necessarily made on a case-by-case basis."   In re Extradition of Garcia, 761 F. Supp. 2d 468, 472 (S.D. Tex. 2010).   Special circumstances can exist in a number of different ways, "or by virtue of a combination of conditions that taken together create a compelling case for release on bail." Nascimento, 2019 WL 5853874, at *2 (quoting United States v. Valentino, No. 4:18-mj-146, 2018 WL 2187645, at *2 (S.D. Tex. May 11, 2018) (unpublished)).

Mr. Rotko advances quite a few alleged special circumstances, only a handful of which merit discussion. Some courts have found special circumstances when there is a high probability of success on the merits of the ultimate extradition determination. See, e.g., Valentino, 2018 WL 2187645, at *2; see also Kin-Hong, 83 F.3d at 524 (recognizing courts holding that a high probability of success on the merits can rise to a special circumstance, but finding "the record does not establish probability of success one way or another"). Others have found special circumstances when there is a lack of diplomatic necessity for detention. See, e.g., Castaneda-Castillo, 739 F. Supp. 2d at 57-58; In re Extradition of Chapman, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006). Still others find special circumstances when there are particular health concerns or a serious deterioration of health while the individual is in custody. See, e.g., Nascimento, 2019 WL 5853874, at *3 (citing United States v. Taitz, 130 F.R.D. 442, 446 (S.D. Cal. 1990); In re Extradition of Rouvier, 839 F. Supp. 537, 542 (N.D. Ill. 1993)). This list is by no means exhaustive.[2]

First, as to Mr. Rotko's contention that he has a high probability of success on the merits, it is a difficult determination to make at this early stage. The undersigned is convinced, however, that at the very least Mr. Rotko has raised serious challenges to the extradition request that will require detailed analysis. See United States v. Castaneda-Castillo, 739 F. Supp. 2d 49, 56, 61 (D. Mass. 2010) (recognizing as a special circumstance when an "extraditee raises substantial claims showing a high probability of success on the merits," finding at the time that the "court [was] not able to make an assessment as to the merits of these arguments," but stating that "it is clear [the extraditee]

_____

[2] There are other matters that courts have considered as special circumstances, some of which Mr. Rotko advances here, but these others need not be discussed because the undersigned is not persuaded that they would even remotely carry the day here, either singularly or in combination.

has raised serious issues which will require briefing and detailed analysis by the court"). Mr. Rotko's arguments against extradition include whether the applicable statute of limitations for the offenses has run (if the statute of limitations has run, he cannot be extradited pursuant to the treaty), and whether the treaty requires the production of a charging document (which Estonia has not produced). While the undersigned is not finding a high probability of success at this early stage, the substantive arguments Mr. Rotko raises in opposition to extradition—combined with the lack of diplomatic necessity explained below—weigh in favor of finding special circumstances.

Second, regarding Mr. Rotko's argument that there is no diplomatic necessity for the detention, the Government was unable to provide any real explanation as to the serious delays between the alleged commission of the offenses (September 2006), the initial extradition request from Estonia (March 2013), and the years-long dormancy of the request (from 2014 through November 2017). Since October 2006, Mr. Rotko, then a U.S. permanent resident, has been living openly in the United States. These unexplained delays in pursuing extradition, lasting more than a decade after the alleged commission of the offenses and giving rise to a colorable argument that the statute of limitations has run (this argument will be addressed another day), amount to a lack of diplomatic necessity for detention. See, e.g., Castaneda-Castillo, 739 F. Supp. 2d at 57-58 (finding "[t]he most compelling argument in favor of release is the fact that Peru has obviously not actively pursued this twenty-five year old charge, thereby resulting in a very lengthy delay"); In re Extradition of Chapman, 459 F. Supp. 2d at 1027 (finding lack of diplomatic necessity for denying bail when "Mexico has not made prosecution of this offense a priority" and "waited three years before bringing extradition proceedings . . . during which Respondents were

living openly and notoriously, aware of the charges against them in Mexico"). In and of itself, this is a special circumstance.

Third, as to the health concerns, Mr. Rotko is 70 years old and suffers from a number of health issues including very high blood pressure, high cholesterol, high creatinine levels, and pre-cancerous polyps in the colon for which he should be having a follow-up colonoscopy this month. He has submitted a report from Charles J. Haddad, M.D., a privately-hired, evaluating doctor who confirms Mr. Rotko's health issues and opines he is also suffering from "a great deal of situational stress" due to these extradition proceedings (Doc. No. 33-3). Dr. Haddad opines that Mr. Rotko is suffering from severe anxiety and moderately severe depression but with no suicidal ideation or plan. According to Dr. Haddad, the "depression and anxiety have gotten much worse since his incarceration affecting his blood pressure and the development of a right eye hemorrhage." Mr. Rotko's counsel also indicated at the detention hearing that Mr. Rotko's requests for various medical checks have gone unanswered. The undersigned inquired with the U.S. Marshals of these matters, and essentially the jail staff has different accounts of the chronology/requests than Mr. Rotko's. The bottom line on the health concerns is that the detention facility is likely equipped to handle them. However, combined with the other special circumstances, the health issues—that evidently have been exacerbated to a degree since Mr. Rotko's detention—make a stronger case for special circumstances overall.

For all of the foregoing reasons, Mr. Rotko has carried his burden of establishing special circumstances that justify his release on bond pending the ultimate extradition determination.

### III.   Conclusion

After due consideration, it is

**ORDERED:**

1.   The Government's oral motion for detention (Doc. No. 9) is **DENIED**.

2.   Mr. Rotko's Motion for Release on Bail and Accompanying Memorandum of Law (Doc. No. 17) is **GRANTED** to the extent that this matter is set for a hearing on **Wednesday, January 29, 2020 at 11:00 a.m. in Courtroom 5D before the undersigned** so that a bond may be set for Mr. Rotko.   Considering the amount of equity in properties that Mr. Rotko has at his disposal, the bond will be in the amount of **$1.5 million**, and in lieu of posting his properties with the Clerk, **Mr. Rotko will be required to post the full amount into the registry of the Court prior to being released**.[3]   If Mr. Rotko utilizes the services of a bondsman to fund the bond, the bondsman must appear and testify regarding any collateral sources.   In addition to setting the monetary bond, after hearing from the parties, the undersigned will impose both standard and special conditions of release.

**DONE AND ORDERED** at Jacksonville, Florida on January 22, 2020.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

---

[3]      To be clear, this is not meant to be a "policy" against accepting property bonds even though those bonds are rare in this division.   Cf. United States v. James, 674 F.2d 886, 890 (11th Cir. 1982) (acknowledging it would be difficult to uphold a policy of not accepting property bonds given the requirement of releasing defendants pending trial under the least restrictive conditions that are compatible with assuring future appearance).   Rather, considering the unique circumstances of this case and Mr. Rotko's finances, requiring Mr. Rotko to post the full amount of a substantial cash bond—instead of a percentage and/or equity in various properties—is appropriate as further protection against flight.   The undersigned is confident that Mr. Rotko will be able to raise the funds.   If he cannot, he can always seek reconsideration.

kaw
Copies to:
Assistant U.S. Attorney (Corsmeier)
Marcos Daniel Jimenez, Esquire
John Richard Byrne, Esquire
O. David Barksdale, Esquire
Allan F. Brooke, II, Esquire